# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Faculty, Alumni, and Students Opposed to Racial Preferences (FASORP)**, <br><br> Plaintiff, <br><br> v. <br><br> **Northwestern University**; **Hari Osofsky**, in her official capacity as dean of Northwestern University School of Law, **Sarah Lawsky**, **Janice Nadler**, and **Daniel Rodriguez**, in their official capacities as professors of law at Northwestern University; **Dheven Unni**, in his official capacity as editor in chief of the Northwestern University Law Review; **Jazmyne Denman**, in her official capacity as senior equity and inclusion editor of the Northwestern University Law Review, <br><br> Defendants. | Case No. 1:24-cv-05558 |

## COMPLAINT

Faculty hiring at American universities is a cesspool of corruption and lawlessness. For decades, left-wing faculty and administrators have been thumbing their noses at federal anti-discrimination statutes and openly discriminating on account of race and sex when appointing professors. They do this by hiring women and racial minorities with mediocre and undistinguished records over white men who have better credentials, better scholarship, and better teaching ability. This practice, long known as "affirmative action," is firmly entrenched at institutions of higher learning and aggressively pushed by leftist ideologues on faculty-appointments committees and in university DEI offices. But it is prohibited by federal law, which bans universities that accept

federal funds from discriminating on account of race or sex in their hiring decisions. *See* 42 U.S.C. § 2000d (Title VI); 20 U.S.C. § 1681 (Title IX); *see also* 42 U.S.C. § 1981 (prohibiting racial discrimination in the making and enforcement of contracts).

University faculty and administrators think they can flout these anti-discrimination statutes with impunity because they are rarely sued over their discriminatory hiring practices and the Department of Education looks the other way. But now the jig is up. The Supreme Court is no longer willing to indulge affirmative-action exceptions to the unambiguous textual commands of Title VI, Title IX, and 42 U.S.C. § 1981. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 206 (2023). And plaintiff FASORP has organizational standing to sue any university that refuses to adopt colorblind and sex-neutral faculty-hiring practices. FASORP brings suit to enjoin Northwestern's discriminatory faculty-hiring practices and expose the corrupt faculty and administrators who enable and perpetuate these violations of federal law.

## JURISDICTION AND VENUE

1.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.  Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3.  Plaintiff Faculty, Alumni, and Students Opposed to Racial Preferences (FASORP) is a voluntary, unincorporated, non-profit membership organization formed for the purpose of restoring meritocracy in academia and fighting race and sex preferences that subordinate academic merit to so-called diversity considerations. FASORP has members who are ready and able to apply for entry-level and lateral

faculty positions at Northwestern University's law school. FASORP's website is at https://www.fasorp.org.

4.    Defendant Northwestern University is a non-profit educational institution organized under the laws of the state of Illinois. It can be served at its Office of the General Counsel, 633 Clark Street, Evanston, Illinois 60208.

5.    Defendant Hari M. Osofsky is dean of the Northwestern University School of Law. She can be served at 375 East Chicago Avenue, Chicago, Illinois 60611-3069. She is sued in her official capacity as dean.

6.    Defendant Sarah Lawksy is a professor of law at Northwestern University. She can be served at 375 East Chicago Avenue, Chicago, Illinois 60611-3069. She is sued in her official capacity.

7.    Defendant Janice Nadler is a professor of law at Northwestern University. She can be served at 375 East Chicago Avenue, Chicago, Illinois 60611-3069. She is sued in her official capacity.

8.    Defendant Daniel Rodriguez is a professor of law and former dean of the law school at Northwestern University. He can be served at 375 East Chicago Avenue, Chicago, Illinois 60611-3069. He is sued in his official capacity.

9.    Defendant Dheven Unni is editor in chief of the Northwestern University Law Review. He is sued in his official capacity as editor in chief.

10.   Defendant Jazmyne Denman is senior equity and inclusion editor of the Northwestern University Law Review. She is sued in her official capacity as senior equity and inclusion editor.

## BACKGROUND

### I. Northwestern's Use of Race and Sex Preferences In Faculty Hiring

11.   For at least the last twelve years, since the installation of then-Dean Daniel Rodriguez, the leadership of Northwestern Law School has propagated and enforced a mandate to hire as many non-white and non-male faculty candidates as possible.

12.   This hiring mandate, which remains in effect, directs Northwestern Law School to intentionally and consciously discriminate in favor of black, Hispanic, Asian, female, homosexual, and transgender faculty candidates, and against white men who are heterosexual and non-transgender. Candidates with preferred identities are awarded substantial advantages and chosen over white men who have vastly superior publication records and far more impressive educational and professional credentials.

13.   Dean Rodriguez knew that this discriminatory hiring edict was illegal and would expose the university to lawsuits. So he ordered the Northwestern faculty to never discuss candidates for hiring over the faculty listserv, and explicitly mentioned litigation risk as his reason for banning listserv discussions of faculty candidates. Rodriguez's successors as dean, including Kimberly Yuracko and Hari M. Osofsky, have continued his policy of banning listserv discussions of faculty candidates.

14.   As a result of the mandate, Northwestern University School of Law refuses to even consider hiring white male faculty candidates with stellar credentials, while it eagerly hires candidates with mediocre and undistinguished records who check the proper diversity boxes.

15.   Eugene Volokh is a prolific and internationally renowned legal scholar whose academic works, especially on the First Amendment, are often cited by litigants, courts, and scholars. He served as a law professor at UCLA for 30 years. He is a member of the American Law Institute, a co-founder of one of the most popular legal blogs in the world, and his work has been repeatedly cited by the Supreme Court of the United States. He is also a former law clerk for Justice Sandra Day O'Connor. By

any measurement concerned with academic merit rather than diversity considerations, Professor Volokh would be a highly desirable and sought-after faculty candidate at any law school. His accomplishments exceed those of nearly every professor currently on the Northwestern Law School faculty. Professor Volokh, however, is a white man, and he is neither homosexual nor transgender.[1]

16.    During the 2022–2023 academic year, Professor Volokh contacted Northwestern Law School to express his interest in working there and asked to be considered for an appointment. This is customary practice for applying for a lateral faculty appointment at Northwestern Law School. The idea of appointing Professor Volokh was supported by many of Northwestern's public-law faculty. But the appointments committee that year was chaired by former dean Dan Rodriguez, who repeatedly pushed for race-based hirings as dean and refused to even invite Professor Volokh to interview. Because of Rodriguez's intransigence, Professor Volokh's candidacy was never even presented to the Northwestern faculty for a vote, while candidates with mediocre and undistinguished records were interviewed and received offers because of their preferred demographic characteristics.

17.    Rodriguez's opposition to Professor Volokh had nothing to do with Volokh's merit as a scholar or teacher. Rodriguez opposed Professor Volokh and blocked consideration of his candidacy because Professor Volokh is a white man, and Rodriguez wants to appoint women, racial minorities, homosexuals, or transgender people to the Northwestern faculty—even when they are far less capable and far less accomplished than a white male candidate such as Professor Volokh. Numerous professors at Northwestern, including the current Vice Dean Emily Kadens, openly said that Professor Volokh would have been hired at Northwestern had he been anything other than a white man.

---

1.  None of the professors mentioned in this complaint played any role in initiating this lawsuit, and they provided no information to the plaintiff or its attorneys.

18. Ernie Young is another famous and distinguished legal scholar whom Northwestern refused to hire because he is a white man. Professor Young currently serves as the Alston & Bird Distinguished Professor of Law at Duke Law School, and he was elected to the American Law Institute in 2006. He graduated from Harvard Law School in 1993 and clerked for Judge Michael Boudin on the First Circuit and for Justice David H. Souter on the Supreme Court of the United States. He has authored over 40 law-review articles and published many influential works in the nation's leading law journals. Like Professor Volokh, Professor Young's accomplishments exceed those of nearly every professor currently on the Northwestern Law School faculty.

19. Many on Northwestern's faculty wanted to hire Professor Young. But the Rodriguez-chaired appointments committee blocked him and refused to advance his candidacy to the faculty for a vote, despite his stellar credentials and qualifications. The committee's decision to block Professor Young had nothing to do with his abilities as a scholar or teacher. It was because Professor Young is a white man and Rodriguez and his fellow committee members are determined to appoint women, racial minorities, or homosexual or transgender individuals, even when those candidates are far less accomplished than Professor Young.

20. Professor Ilan Wurman is another victim of Northwestern's unlawful and discriminatory hiring practices. During the 2019–2020 hiring cycle, Northwestern Law School's appointments committee unanimously recommended Wurman for a tenure-track appointment. But then-Associate Dean Sarah Lawsky led the charge to defeat Professor Wurman's appointment when it came to a faculty vote. Lawsky expressly stated at a faculty meeting that she opposed Wurman's appointment to the faculty because he is a white man. Nadav Shoked, another professor on Northwestern's faculty, joined Lawsky in vehemently opposing the hiring of Professor Wurman. Janice Nadler also actively opposed Professor Wurman's appointment because she

wants to hire women and nonwhites rather than white men, and she repeatedly and openly expresses that view to her colleagues.

21.   Northwestern's hiring mandate has led to the hiring of patently unqualified professors. Destiny Peery, a black female who graduated from Northwestern Law School near the bottom of her class, was hired in 2014 as a tenure-track professor at Northwestern Law School—even though the faculty at Northwestern was fully aware of her abysmal academic record as a student at the law school. Several faculty members expressed concerns that Peery was unqualified for an academic appointment and incapable of producing serious scholarship.

22.   But then-Dean Dan Rodriguez, during a faculty meeting, threatened to withhold bonuses from any faculty member who would vote against Peery or attempt to thwart her appointment. At Northwestern, a professor's fixed salary constitutes only 2/3 or 3/4 of his or her total compensation; the remainder is paid as a bonus that is entirely at the discretion of the dean. The opposition to Peery crumbled in response to these threats from the dean.

23.   Peery was hired because she is a black female, as numerous faculty members explicitly stated when discussing her candidacy. Peery would never even have been considered for a faculty appointment at Northwestern if she had been white or a member of a different race, and Peery was hired over white male candidates who were vastly more capable and qualified than she was.

24.   During Peery's time as a law student at Northwestern, two law professors, Janice Nadler and Shari Diamond, pressured other instructors at Northwestern to give Peery higher grades, even though law-school grading at Northwestern is supposed to be blind and exams are graded anonymously. Nadler and Diamond were attempting to groom Peery for a future appointment to the faculty—not because of Peery's abilities but because of her race—and Nadler and Diamond knew that Peery's poor law-school grades could be an obstacle to a future faculty appointment.

25.   Despite the law school's blind grading of exams, professors are permitted to adjust final grades for class participation or other reasons after exam grades are matched with student names. Professors are not required to provide a justification or reason for why they increased or decreased a student's grade, so there is nothing to prevent an ideologically motivated professor from adjusting a student's final grade on account of race.

26.   A candidate with a law-school record like Peery's would not even be considered for a tenure-track position at Northwestern in the absence of racial preferences. White faculty candidates will not be considered by Northwestern unless they graduated near the top of their class from an elite law school. Peery had a below-average academic record at a law school that isn't even ranked in the top 10. Peery received her appointment at Northwestern because she is a black woman, and because Northwestern discriminates in favor of blacks (and women) and against white men when hiring its faculty.

27.   Three years after Peery was hired, she came up for mid-tenure review. Law schools typically conduct this review after an entry-level hire's first three years, and at this point they decide whether the professor should be retained or promoted. The decision whether to award tenure comes a few years later, after an entry-level hire's fifth or sixth year on the job. As part of this process, Peery had to submit all scholarship that she had produced after her initial appointment to the faculty.

28.   Janice Nadler, of all people, was appointed to chair the promotion committee that would review Peery's scholarship and issue a recommendation to the faculty. Nadler is the professor who had pressured her colleagues to give Peery higher grades during her time as a law student in the hopes of facilitating Peery's future appointment to the faculty. *See supra*, at paragraph 24.

29.   Peery (unsurprisingly) had written almost nothing during her first three years as a tenure-track professor. Yet when Nadler presented Peery's case to the faculty,

she falsely claimed that Peery had produced several new publications since she had been hired. It turned out that all but one of these "new" papers had been written *before* Peery's appointment at Northwestern, and consisted mostly of chapters from Peery's Ph.D. dissertation. Peery's initial appointment to Northwestern had already been based on that work, and pre-appointment work cannot be considered or used to justify retention or promotion. When Nadler's colleagues on the faculty learned of her deception, they were incensed.

30.　Nadler knew that she was misrepresenting Peery's publication record to her faculty colleagues. Yet she did this because Peery is black and Nadler wanted a black female promoted to associate professor despite Peery's failure to produce adequate scholarship. Nadler would never have inflated or intentionally misled her colleagues about the publication record of a white male professor seeking promotion.

31.　After Nadler was confronted with her dishonest portrayal of Peery's publication record, Nadler changed her tune and tried to excuse Peery's failure to produce scholarship by claiming that Peery was too busy doing institutional work. Nadler also blamed then-Dean Dan Rodriguez for inviting Peery to participate in too many panels and presentations. At the faculty meeting on Peery's promotion, several faculty members, including Dean Rodriguez, said that Peery had received so many invitations to panels and presentations because the law school desperately needed Peery to serve as the token black participant at these events, which left Peery with no time to write. The faculty then voted to promote Peery to associate professor, even though she had written almost nothing since her initial appointment to the faculty.

32.　Two years after her promotion to associate professor, Peery still failed to produce any scholarship that could warrant a tenured appointment. At this time, Peery was gently told that she should not seek tenure. Peery then had the chutzpah to accuse Northwestern of racism for denying her tenure, pretending that she was a

victim of race and sex discrimination when racial preferences were the very reason she was hired in the first place.

33.   Peery failed to obtain an academic appointment elsewhere after departing Northwestern, despite the overwhelming discriminatory preferences that black women receive on the academic hiring market.

34.   In 2015, one year after the hiring of Peery, the Northwestern faculty hired another unqualified black woman named Candice Player, who (like Peery) failed to obtain tenure after proving herself incapable of producing scholarship that could justify a tenured appointment. Player also struggled in the classroom, and admitted to colleagues that she did not understand the material she was teaching and couldn't handle the students' questions. In one of her classes, Player gave a final exam in which she had plagiarized an exam hypothetical from another source, because Player was too lazy to write her own exam question. Some (but not all) of the students in this class were already familiar with this hypothetical because Player had taken it from a publicly available source, giving those students an undeserved advantage and undermining the integrity of the curved exam. This exam fiasco contributed to Player's departure from the law school in 2019.

35.   Player, like Peery, failed to obtain another academic appointment after leaving Northwestern, despite the overwhelming discriminatory preferences that black women receive on the academic hiring market.

36.   Player, like Peery, was hired only because of her race, and then-Dean Rodriguez (as with Peery) ramrodded Player's appointment through the faculty by threatening to withhold bonuses from any professor who had the temerity to question the wisdom or legality of the appointment. Player would never even have been considered for a faculty appointment at Northwestern if she had been white or a member of a different race, and Player was hired over white male candidates who were vastly more capable and qualified than she was.

37. During the 2019–2020 academic year, Northwestern extended an offer to Paul Gowder, a black professor from the University of Iowa. Although Gowder had produced scholarship and obtained tenure from Iowa in 2017, he was hired by Northwestern because he is black, and it was made clear to the faculty throughout the hiring process that only a black person would be considered for the position that Gowder was chosen for. If Gowder had been white, he would not have been considered for any type of faculty appointment at Northwestern.

38. During the 2019–2020 academic year, then-Dean Kimberly A. Yuracko wanted to hire both Gowder and Heidi Kitrosser from the University of Minnesota. Kitrosser is married to Northwestern law professor David Dana, yet she had been twice rejected by the Northwestern faculty for an appointment despite her marriage to Dana. Yuracko is close friends with both Kitrosser and Dana, and she wanted to bring up Kitrosser for a third time and get her approved. So she offered a bargain to Professor Steve Calabresi, a conservative and co-founder of the Federalist Society who was serving on the lateral-appointments committee during the 2019–2020 hiring cycle. Dean Yuracko told Calabresi that if he would support the lateral appointments of Gowder and Kitrosser, despite the racial preferences and nepotism surrounding their candidacies, then Yuracko would support an entry-level appointment for Ilan Wurman, a Federalist Society member supported by Professor Calabresi. Professor Wurman is a white male but also gay, so his appointment would not have offended Northwestern's diversity hiring directive.

39. Dean Yuracko (of course) had the faculty vote on Gowder and Kitrosser before Wurman. Both Gowder and Kitrosser were approved for lateral appointments with Calabresi's support. But when Yuracko brought up Professor Wurman for a vote, his appointment was torpedoed by then-Associate Dean Sarah Lawsky, who stated at the faculty meeting that she did not want a white male. Dean Yuracko did not lobby her colleagues to support Professor Wurman's appointment and worked behind the

scenes to sabotage it, despite her promise to Professor Calabresi and despite the appointment committee's unanimous endorsement of Professor Wurman's candidacy.

40.  In 2022, Northwestern Law hired Jamelia Morgan, a black woman, from a low-ranked school (UC-Irvine), who had no competing offers from any schools ranked higher than Northwestern. Morgan was only in her fourth year of teaching, barely tenured, with past appointments at the University of Connecticut (three years) and one year at UC-Irvine. To attract Morgan, the dean gave her a $900,000 budget to start a new center at Northwestern Law School called "the Center for Racial and Disability Justice." No other faculty hire in the recent history of Northwestern Law School has ever received a budget of this sort. Northwestern Law School has far more accomplished scholars than Jamelia Morgan on its faculty, and none of them have ever been offered a $900,000 center to run. Morgan received this money only because she is a black affirmative-action hire. Morgan would never have been considered for an appointment at Northwestern if she had been white, and Morgan was hired over white male candidates who are vastly more capable and qualified than she is.

41.  Since Morgan was hired in 2022, her Center for Racial and Disability Justice has hosted a grand total of two events. One of those was its "Launch Event" on November 16, 2022, which consisted of nothing more than a one-hour video in which Dean Hari Osofsky read from a binder and asked softball questions to Morgan. *See* http://bit.ly/4cGSyCD. The only other event occurred on June 3, 2023, after the spring semester had concluded and Northwestern's students were gone for the summer. *See* http://bit.ly/3XMKtYS [https://perma.cc/ED2C-7QJQ]. The event was entitled "Accessible Public Safety Global Social Impact Conference," and no scholars were listed as participants. The Center conducted no events during the 2023–2024 academic year. And the Center has no future events scheduled. The "Events" link on the Center's website leads to a blank page, although it graciously invites viewers to "Please check back again for future events." *See* Events, http://bit.ly/45NZgV2

[https://perma.cc/4KTK-DSQS]. In two years, Morgan's $900,000 center has made no contributions whatsoever to academic life at Northwestern University. Yet Northwestern continues to waste money on this useless center to pander to an affirmative-action hire who never deserved her appointment in the first place.

42.  In 2024, Northwestern Law extended an offer to Myriam Gilles, a black law professor at Cardozo Law School. It was made clear to the Northwestern faculty that the law school had to hire a black woman for this position, and that if they did not vote to approve the appointment of Gilles then the law school would have to hire a black woman later who would almost certainly be worse. Gilles would not have been considered for a faculty appointment at Northwestern if she had been white or a member of a different race, and Gilles was hired over white male candidates who had records demonstrating that they were vastly more capable and qualified than she was.

43.  This regime of illegal race and sex preferences is perpetuated and enforced by Northwestern's law-school deans and its faculty appointments committee. The appointments committee has complete control over which candidates will be brought in for interviews or voted upon by the faculty, and its members are chosen each year by the dean with no formal input from the faculty. Northwestern's law-school deans ensure that faculty members who are known to oppose discriminatory race and sex preferences are never selected for the appointments committee.

44.  The appointments committee makes sure that white men are blocked from further consideration at the committee stage, so that the faculty has no chance to vote on them. The appointments committee, for example, nixed any consideration of Eugene Volokh by refusing even to interview him even though he had expressed a strong interest in Northwestern and was supported by many on the faculty. The appointments committee also refused to allow the faculty to vote on whether to hire Ernie Young.

45.   Of course, the appointments committee will occasionally allow some white men to proceed to the interview stage, because if the committee never allowed any white men to interview then that would create a strong inference of discriminatory motive. But white men who proceed to the interview stage are never hired unless they are in a high-demand and low-supply field (such as tax or empirical work), where it is difficult or impossible to find female or minority scholars. White men who write and teach in public law, such as Eugene Volokh and Ernie Young, will not be hired at Northwestern no matter how stellar their scholarship and credentials are.

46.   The following charts show how Northwestern has conducted its interviews and hiring decisions over the last three academic years:

### Year 2023–2024

| | demographic | white man | woman (any race) | non-white (any sex) | offer made | offer to white man | offer to anyone other than white man |
|---|---|---|---|---|---|---|---|
| Haley Proctor | woman | | 1 | | | | |
| Monica Haymond | woman | | 1 | | 1 | | 1 |
| James Hicks | white man | 1 | | | | | |
| Daniel Rauch | white man | 1 | | | | | |
| Kate Redburn | white non-binary | | 1 | | 1 | | 1 |
| Emily Chertoff | woman | | 1 | | 1 | | 1 |
| Omavi Shukur | black man | | | 1 | | | |
| Edwin Hu | asian man | | | 1 | 1 | | 1 |
| Ela Leshem | woman | | 1 | | | | |
| Emmauel Mauleón | latino man | | | 1 | | | |
| Chika Okafor | black man | | | 1 | 1 | | 1 |
| Eisha Jain | asian woman | | 1 | 1 | | | |
| Peter Conti-Brown | white man | 1 | | | | | |
| Myriam Gilles | black woman | | 1 | 1 | 1 | | 1 |
| Lisa Washington | black woman | | 1 | 1 | | | |
| Jonathan Choi | asian man | | | 1 | | | |
| | | | | | | | |
| Total | | 3 | 8 | 8 | 6 | 0 | 6 |

6 offers made in 2023–24 hiring cycle; 0 to white men.

## Year 2022–2023

| name | demographic | white man | woman (any race) | nonwhite (any sex) | offer made | offer to white man | offer to anyone other than white man |
|---|---|---|---|---|---|---|---|
| Christopher Yoo | asian man | | | 1 | 1 | | 1 |
| Ernie Young | white man | 1 | | | | | |
| Stephanie Didwania | white woman | | 1 | | 1 | | 1 |
| Jill Horwitz | white woman | | 1 | | 1 | | 1 |
| Kyle Rozema | white man | 1 | | | 1 | 1 | |
| Kate Shaw | white woman | | 1 | | 1 | | 1 |
| Rachel Sachs | white woman | | 1 | | | | |
| Craig Konnoth | black man, LGBT | | | 1 | | | |
| Kristin Johnson (talk cancelled by her) | black woman | | 1 | 1 | | | |
| Elizabeth Katz | white woman | | 1 | | | | |
| Shirin Bakshay | asian woman | | 1 | 1 | | | |
| Dhruv Aggraval | asian man | | | 1 | 1 | | 1 |
| Vince Buccola | white man | 1 | | | | | |
| Hanna Shaffer | white woman | | 1 | | 1 | | 1 |
| Chris Havasy | white man | 1 | | | | | |
| Jose Argueta Funes | hispanic man | | | 1 | 1 | | 1 |
| Diana Reddy | white woman | | 1 | | 1 | | 1 |
| Michael Francus | white man | 1 | | | | | |
| Michael Morse | latino man | | | 1 | | | |
| Alex Zhang | asian man | | | 1 | | | |
| Caley Petrucci | white woman | | 1 | | | | |
| | | | | | | | |
| Total | | 5 | 10 | 8 | 9 | 1 | 8 |
| | | | | | | | |
| Note: refused to interview Eugene Volokh | | | | | | | |

9 offers made in 2022–23 hiring cycle; only 1 to white man (Kyle Rozema)

### Year 2021-2022

| Name | demographic | white man | woman (any race) | nonwhite (any gender) | offer made | offer to white man | offer to anyone other than white man |
|------|-------------|-----------|------------------|----------------------|------------|--------------------|--------------------------------------|
| Neja Jain | asian woman | | 1 | 1 | 1 | | 1 |
| Jamelia Morgan | black woman | | 1 | 1 | 1 | | 1 |
| Nicole Summers | white woman | | 1 | | 1 | | 1 |
| Kathleen Claussen | white woman | | 1 | | 1 | | 1 |
| Ari Glogower | white man | 1 | | | 1 | 1 | |
| Jacob Goldin | white man | 1 | | | 1 | 1 | |
| Angela Onwuachi-Willig | black woman | | 1 | 1 | | | |
| Bennett Capers | black man | | | 1 | | | |
| Daria Roithmayr | white woman | | 1 | | | | |
| Osagie Obasogie | black man | | | 1 | | | |
| Julie Suk | asian woman | | 1 | 1 | | | |
| Veronica Root Martinez | black woman | | 1 | 1 | | | |
| Kristin Hickman | white woman | | 1 | | | | |
| Nyamagaga Gondwe | black woman | | 1 | 1 | | | |
| Eric Hovenkamp | white man | 1 | | | | | |
| India Thusi | black woman | | 1 | 1 | | | |
| Ralf Michaels | white man | 1 | | | | | |
| | | | | | | | |
| Total | | 4 | 11 | 9 | 6 | 2 | 4 |

6 offers made in 2021–22 hiring cycle; only 2 to white men,
both in a high-demand, low-supply field (tax law).

47.   The 2021–22 hiring cycle was unusual because *two* white men received offers to join the faculty. But the offer that Northwestern extended to Jacob Goldin was a sham. Goldin was already a tenured professor at Stanford Law School and had received a lateral offer from the University of Chicago. There was zero chance that Goldin would accept a lateral offer from Northwestern, which is ranked significantly below both Chicago and Stanford. The Northwestern faculty knew full well that Goldin would reject their offer. But they extended him an offer for the sole purpose of making their policy of discriminating against white men seem somewhat less obvious to someone who simply examines the numbers. Ari Glogower, the other white

man who received an offer during the 2021–22 academic year, was hired only because Northwestern was desperate to hire a tax scholar and there are very few women or minorities in that field.

48.   The only other white man to even receive an *offer* from Northwestern in the last three hiring cycles was Kyle Rozema. Rozema was a truly unique case because he served as a post-doctoral fellow at Northwestern Law School from 2015–2017, so everyone on the faculty already knew him and he was well-liked during his time there. Rozema also co-authored a study claiming that race and sex preferences on student-run law reviews increase citations, which delighted the affirmative-action devotees and leftist ideologues on Northwestern's faculty and enabled him to earn their support despite his status as a white man. *See* Adam Chilton, et al., *Assessing Affirmative Action's Diversity Rationale*, 122 Colum. L. Rev. 331, 337 (2022). Finally, Rozema is an empiricist, a field in which it is very difficult to find female or minority scholars.

49.   Apart from these one-off situations, no other white man was even given an offer during the last three hiring cycles, while superstar academics like Eugene Volokh and Ernie Young were rejected in favor of candidates with mediocre and undistinguished records.

## II. Northwestern's 2022 Law-School Dean Search

50.   In 2022, Northwestern needed to appoint a new dean. The chair of the dean's search committee rigged the process to ensure that no man would be chosen for the job because she wanted another woman to succeed then-Dean Kimberly Yuracko.

51.    The chair of the dean's search committee conducted the search in extreme secrecy and excluded her faculty colleagues from the process of selecting finalists. In the past, dean candidates were always brought in and interviewed with the entire faculty. The chair changed this process so that she could more easily nix male dean candidates. The rest of the law-school faculty learned of finalists for the dean's job only

through committee leaks. The faculty learned of two finalists through leaks from the dean's search committee and (of course) both were women: Angela Onwuachi-Willig, a black critical race theorist, and Hari Osofsky, who wound up getting the job. Several members of Northwestern's law faculty protested to the university provost and complained that the chair was operating the dean's search committee in violation of school rules. The provost ignored all of their concerns.

### III. Race and Sex Discrimination On Northwestern's Law Review

52.   The student editors of the Northwestern University Law Review also discriminate on account of race and sex, in violation of Title VI, Title IX, and 42 U.S.C. § 1981.

53.   The student editors of the Northwestern University Law Review give discriminatory preferences to women, racial minorities, homosexuals, and transgender people when selecting their members and editors—a practice that violates the unequivocal commands of Title VI and Title IX. The student editors of the Northwestern University Law Review also give discriminatory preferences to articles written by women, racial minorities, homosexuals, or transgender people, while rejecting far better articles written by white men. This violates not only Title VI and Title IX but also 42 U.S.C. § 1981, because law reviews enter into contracts with the authors of articles that they publish.

54.   On its website, the Northwestern University Law Review claims that it "does not discriminate on the basis of race, ethnicity, religion, socioeconomic background, disability, nationality, sexual orientation, gender orientation and identity, or ideological perspective." *See Diversity and Inclusion*, Northwestern University Law Review, http://bit.ly/3wcxzIx [https://perma.cc/RZC9-QQ2U]. That is false. The Northwestern University Law Review discriminates on the basis of race, sex, sexual orientation, and gender identity by using affirmative action to select its members, editors, and articles. Rather than choosing its members based on law-school grades

and a blind-graded writing competition, the Law Review solicits "personal statements" from student applicants. Students are encouraged to use these personal statements to signal their race, sexual orientation, and gender identity, and the Law Review editors use these personal statements to discriminate against white men and in favor of women, racial minorities, homosexuals, and transgender people.

55.    In 2021, the Law Review rejected an application for membership from a white male student who had a first-year grade point average of over 4.0, while accepting female and minority students with much lower first-year grades. If the rejected student with the over 4.0 grade point average had been a woman, racial minority, homosexual, or transgender individual, he would have been accepted for law-review membership. The Law Review will continue these discriminatory and unlawful membership-selection practices until a court enjoins it from doing so.

56.    The Law Review also engages in race and sex discrimination when deciding which articles it will publish. The editors of Volume 118, which was published during the 2023–2024 school year, decided that they would publish an entire issue that would consist only of articles written by black women. No articles written by men or by any non-black person would even be considered for publication in that issue. Even the student note published in that issue (Issue 3) was written by a black female who had recently graduated from the law school. Issue 3 does not disclose that only articles written by black women were considered for publication, making it appear as though the normal selection process was used and that these authors earned their placement in the Northwestern University Law Review by writing better scholarship than the articles that were rejected. The student editors and members on the Law Review were told that this was done intentionally to promote the careers of these black women academics because of their race and sex.

57.   The Northwestern University Law Review discriminates on account of race and sex even apart from Issue 3 of Volume 118, and it consistently gives discriminatory preferences to articles written by women, racial minorities, homosexuals, or transgender people over better articles written by white men. The Law Review will continue these discriminatory and unlawful article-selection practices until a court enjoins it from doing so.

### IV.   FASORP

58.   Plaintiff FASORP is a voluntary membership organization founded in 2018. FASORP seeks to restore meritocracy in academia and eliminate the corrupt and unlawful race and sex preferences that subordinate academic merit to so-called diversity considerations.

59.   FASORP has members who are ready and able to apply for entry-level and lateral faculty positions at Northwestern University's law school. FASORP also has members who have submitted articles to the Northwestern University Law Review, who are ready and able to submit articles to the Northwestern University Law Review, and who intend to submit their future scholarship to the Northwestern University Law Review.

60.   Individual A is a member of FASORP. He is a tenure-track law professor at an ABA-accredited law school and holds a J.D. and a Ph.D. in political science. Individual A is a white man and is neither homosexual nor transgender.

61.   Individual A stands able and ready to apply for a faculty appointment at Northwestern University's law school. *See Carney v. Adams*, 592 U.S. 53, 60 (2020); *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003); *Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993). But the pervasive and ongoing use of race and sex preferences at Northwestern prevents Individual A from competing with other applicants for faculty positions on an equal basis. Specifically, Individual A is unable to compete on an equal basis with faculty

candidates who are women, racial minorities, homosexuals, or individuals who engage in gender-nonconforming behavior or identify with a gender that departs from their biological sex. This inflicts injury in fact. *See Gratz*, 539 U.S. at 261–62; *Jacksonville*, 508 U.S. at 666.

62. Individual B is a member of FASORP. He is a tenured law professor at an ABA-accredited law school. Individual B is a white man and is neither homosexual nor transgender.

63. Individual B stands able and ready to apply for a faculty appointment at Northwestern University's law school. *See Carney*, 592 U.S. at 60; *Gratz*, 539 U.S. at 261; *Jacksonville*, 508 U.S. at 666. But the pervasive and ongoing use of race and sex preferences at Northwestern prevents Individual B from competing with other applicants for faculty positions on an equal basis. Specifically, Individual B is unable to compete on an equal basis with faculty candidates who are women, racial minorities, homosexuals, or individuals who engage in gender-nonconforming behavior or identify with a gender that departs from their biological sex. This inflicts injury in fact. *See Gratz*, 539 U.S. at 261–62; *Jacksonville*, 508 U.S. at 666.

64. Individual C is a member of FASORP. He is a tenured law professor at an ABA-accredited law school. Individual C is a white man and is neither homosexual nor transgender.

65. Individual C stands able and ready to apply for a faculty appointment at Northwestern University's law school. *See Carney*, 592 U.S. at 60; *Gratz*, 539 U.S. at 261; *Jacksonville*, 508 U.S. at 666. But the pervasive and ongoing use of race and sex preferences at Northwestern prevents Individual C from competing with other applicants for faculty positions on an equal basis. Specifically, Individual C is unable to compete on an equal basis with faculty candidates who are women, racial minorities,

homosexuals, or individuals who engage in gender-nonconforming behavior or iden-tify with a gender that departs from their biological sex. This inflicts injury in fact. *See Gratz*, 539 U.S. at 261–62; *Jacksonville*, 508 U.S. at 666.

66.   All of these Article III injuries are fairly traceable to the allegedly unlawful conduct of defendants Northwestern University, as well as defendants Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez, who are discriminating on ac-count of race and sex in violation of 42 U.S.C. § 1981, Title VI, and Title IX. And all of these injuries will be redressed the requested relief, which will enjoin Northwestern from continuing these discriminatory policies and require it to adopt colorblind and sex-neutral faculty-hiring practices.

67.   Individuals A, B, and C have submitted articles to the Northwestern Uni-versity Law Review in the past and stand able and ready to submit additional manu-scripts to the Northwestern University Law Review for publication in future volumes. *See Carney*, 592 U.S. at 60; *Gratz*, 539 U.S. at 261; *Jacksonville*, 508 U.S. at 666. But the pervasive and ongoing use of race and sex preferences at the Northwestern Uni-versity Law Review prevents Individuals A, B, and C from competing with other au-thors who submit articles to the law review on an equal basis. Specifically, Individuals A, B, and C are unable to compete on an equal basis with authors who are women, racial minorities, homosexuals, or individuals who engage in gender-nonconforming behavior or identify with a gender that departs from their biological sex. This inflicts injury in fact. *See Gratz*, 539 U.S. at 261; *Jacksonville*, 508 U.S. at 666.

68.   All of these Article III injuries are fairly traceable to the allegedly unlawful conduct of defendants Northwestern University, as well as defendants Dheven Unni and Jazmyne Denman, who are discriminating on account of race and sex in violation of 42 U.S.C. § 1981, Title VI, and Title IX. And all of these injuries will be redressed by the requested relief, which will enjoin the Northwestern University Law Review

and its editors from continuing these discriminatory policies and require them to adopt colorblind and sex-neutral article-selection practices.

69.   FASORP has additional members who are suffering injuries in fact similar or identical to those suffered by Individuals A, B, and C. These individuals are only a representative sample and not an exclusive list of the members of FASORP who would have standing to sue the defendants if they sued as individuals.

70.   The interests that FASORP seeks to protect in the litigation are germane to the organization's purpose. FASORP seeks to restore meritocracy at American universities by eliminating the use of race and sex preferences, as stated on its website. *See* FASORP, https://fasorp.org.

71.   Neither the claims asserted by FASORP nor the relief requested in this litigation requires the participation of the organization's individual members.

### IV.   Legal Background

72.   42 U.S.C. § 1981 prohibits Northwestern from engaging in racial discrimination in the making and enforcement of contracts, which include contracts between Northwestern University and its faculty members, as well as contracts between the Northwestern University Law Review and the authors of the articles that it publishes.

73.   Title VI and Title IX prohibit Northwestern from discriminating on the basis of race or sex. Title VI states that "No person in the United States shall, on the ground of race, color, or national origin, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title IX states that "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance," subject to exceptions not relevant here. 20 U.S.C. § 1681(a).

74.   Northwestern receives federal financial assistance. It is therefore subject to Title VI's and Title IX's prohibitions.

75.   Faculty hiring decisions are, like college admissions decisions, "zero-sum." *Students for Fair Admissions*, 600 U.S. at 218. Northwestern considers race and sex positive factors for some faculty applicants and therefore necessarily negative factors for others. *See id.*

76.   FASORP brings this suit under Title VI, Title IX, 42 U.S.C. § 1981, and any other law that might supply a cause of action for the requested relief.

## CLAIMS

## Count One: Violation of Title VI (42 U.S.C. § 2000d)

77.   Northwestern University and defendants Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez are violating Title VI by discriminating in favor of minority faculty candidates and against whites.

78.   Northwestern University and defendants Dheven Unni and Jazmyne Denman are violating Title VI by discriminating in favor of racial minorities and against whites when selecting articles for publication in the Northwestern University Law Review.

79.   Northwestern University and its law school and law review are all "program[s] or activit[ies]" that "receive[] Federal financial assistance" within the meaning of Title VI.

80.   FASORP therefore seeks declaratory and injunctive relief that prohibits defendant Northwestern University, along with defendants Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez, their successors in office, and anyone in active concert or participation with them, from discriminating on account of race in the appointment, promotion, and compensation of faculty, and that compels the Northwestern University and its officers and employees to appoint, promote, and compensate their faculty in a colorblind manner.

81.   FASORP also seeks declaratory and injunctive relief that prohibits defendant Northwestern University, along with defendants Dheven Unni and Jazmyne Denman, their successors in office, and anyone in active concert or participation with them, from discriminating on account of race in the Northwestern University Law Review's selection of members, editors, and articles, and that compels them to select the Law Review's members, editors, and articles in a colorblind manner.

82.   FASORP seeks this relief under the implied right of action that the Supreme Court has recognized to enforce Title VI, *see Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979), and any other law that might supply a cause of action for the requested relief.

### Count Two: Violation of Title IX (20 U.S.C. § 1681(a))

83.   Northwestern University and defendants Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez are violating Title IX by discriminating in favor of female faculty candidates and against men. They are also violating Title IX by discriminating in favor of homosexual or transgender faculty candidates and against faculty candidates who are heterosexual and identify and act in accordance with their biological sex. *See Bostock v. Clayton County*, 590 U.S. 644, 669 (2020).

84.   Northwestern University and defendants Dheven Unni and Jazmyne Denman are further violating Title IX by discriminating in favor of female, homosexual, and transgender authors when selecting articles for publication in the Northwestern University Law Review.

85.   Northwestern University and its law school and law review are all "education program[s] or activit[ies]" that "receive[] Federal financial assistance" within the meaning of Title VI.

86.   FASORP therefore seeks declaratory and injunctive relief that prohibits defendant Northwestern University, along with defendants Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez, their successors in office, and anyone in active

concert or participation with them, from discriminating on account of sex in the appointment, promotion, and compensation of faculty, and that compels the Northwestern University and its officers and employees to appoint, promote, and compensate their faculty in a sex-neutral manner. The Court should also restrain these defendants from discriminating in favor or homosexual or transgender faculty or faculty candidates, which constitutes discrimination on the basis of sex. *See Bostock v. Clayton County*, 590 U.S. 644 (2020).

87.   FASORP also seeks declaratory and injunctive relief that prohibits defendant Northwestern University, along with defendants Dheven Unni and Jazmyne Denman, their successors in office, and anyone in active concert or participation with them, from discriminating on account of race in the Northwestern University Law Review's selection of members, editors, and articles. The Court should also restrain these defendants from discriminating in favor or homosexual or transgender candidates for law-review membership, editorial positions, or article placement, which constitutes discrimination on the basis of sex. *See Bostock v. Clayton County*, 590 U.S. 644 (2020).

88.   FASORP seeks this relief under the implied right of action that the Supreme Court has recognized to enforce Title IX, *see Cannon v. University of Chicago*, 441 U.S. 677, 703 (1979), and any other law that might supply a cause of action for the requested relief.

### Count Three: Violation of 42 U.S.C. § 1981

89.   42 U.S.C. § 1981(a) guarantees individuals the same right to make and enforce contracts without regard to race. *See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens").

90.   42 U.S.C. § 1981(a) protects whites on the same terms that it protects "underrepresented" racial minorities. *See McDonald v. Santa Fe Trail Transportation Co.*,

427 U.S. 273, 295 (1976) ("[T]he Act was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.").

91.   Northwestern University and defendants Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez are violating 42 U.S.C. § 1981(a) by discriminating in favor of racial minorities and against whites in faculty hiring. White faculty candidates do not enjoy the "same right . . . to make and enforce contracts" that minority faculty candidates enjoy at Northwestern University.

92.   Northwestern University and defendants Dheven Unni and Jazmyne Denman are also violating 42 U.S.C. § 1981(a) by discriminating in favor of racial minorities and against whites when selecting articles for publication in the Northwestern University Law Review. White authors who submit articles to the Northwestern University Law Review do not enjoy the "same right . . . to make and enforce contracts" that minority authors who submit articles to the Northwestern University Law Review enjoy.

93.   FASORP therefore seeks declaratory and injunctive relief that prohibits defendant Northwestern University, along with defendants Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez, their successors in office, and anyone in active concert or participation with them, from discriminating on account of race in the appointment, promotion, and compensation of faculty, and that compels the Northwestern University and its officers and employees to appoint, promote, and compensate their faculty in a colorblind manner.

94.   FASORP also seeks declaratory and injunctive relief that prohibits defendant Northwestern University, along with defendants Dheven Unni and Jazmyne Denman, their successors in office, and anyone in active concert or participation with them, from discriminating on account of race in the Northwestern University Law Review's selection of members, editors, and articles.

95.   FASORP seeks this relief under the implied right of action that the Supreme Court has recognized to enforce 42 U.S.C. § 1981(a), and any other law that might supply a cause of action for the requested relief. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975).

## DEMAND FOR RELIEF

96.   FASORP respectfully requests that the court:

a.      declare that defendants Northwestern University, Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez are violating Title VI, Title IX, and 42 U.S.C. § 1981 by discriminating in favor of women, racial minorities, homosexuals, and transgender people and against white heterosexual and non-transgender men in the appointment of faculty;

b.      declare that defendants Northwestern University, Dheven Unni, and Jazmyne Denman are violating Title VI, Title IX, and 42 U.S.C. § 1981 by discriminating in favor of women, racial minorities, homosexuals, and transgender people and against white heterosexual and non-transgender men in the selection of articles, editors, and members for the Northwestern University Law Review;

c.      permanently enjoin defendants Northwestern University, Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez, their successors in office, and anyone in concert or participation with them, from considering race, sex, sexual orientation, or gender identity in the appointment, promotion, retention, or compensation of its faculty;

d.      permanently enjoin defendants Northwestern University, Hari Osofsky, Sarah Lawsky, Janice Nadler, and Daniel Rodriguez, their successors in office, and anyone in concert or participation with them, from

soliciting any information about a faculty candidate's race, sex, sexual orientation, or gender identity;

e. permanently enjoin defendant Northwestern University from allowing defendants Sarah Lawsky, Janice Nadler or Daniel Rodriguez to vote upon or influence faculty-hiring decisions at the university;

f. permanently enjoin defendants Northwestern University, Dheven Unni, and Jazmyne Denman, their successors in office, and anyone in concert or participation with them, from considering race, sex, sexual orientation, or gender identity in the selection of articles, editors, and members for the Northwestern University Law Review;

g. permanently enjoin defendants Northwestern University, Dheven Unni, and Jazmyne Denman, their successors in office, and anyone in concert or participation with them, from soliciting any information about the race, sex, sexual orientation, or gender identity of any person seeking or applying for authorship, membership, or an editorial position in the Northwestern University Law Review;

h. order Northwestern University to establish a new faculty-selection policy that is based entirely on academic and scholarly merit and that explicitly disavows any consideration of race, sex, sexual orientation, or gender identity or expression, and to submit that revised policy to this Court for its review and approval within 30 days of judgment;

i. order the Northwestern University Law Review to establish new policies for selecting its articles, editors, and members that is based entirely on academic and scholarly merit and that explicitly disavows any consideration of race, sex, sexual orientation, or gender identity or expression, and to submit that revised policy to this Court for its review and approval within 30 days of judgment;

j.    appoint a court monitor to oversee all decisions relating to the appointment, promotion, and compensation of faculty at Northwestern University, as well as all decisions relating to the Northwestern University Law Review's selection of articles, editors, and members, to ensure that these decisions are free from race and sex discrimination;

k.    appoint a court monitor to oversee all diversity offices at Northwestern University to ensure that they do not aid or abet violations of the nation's civil-rights laws;

l.    award costs and attorneys' fees;

m.    grant all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

_/s/ Jonathan F. Mitchell_

JUDD E. STONE II*                      JONATHAN F. MITCHELL
CHRISTOPHER D. HILTON*                 Mitchell Law PLLC
ARI CUENIN*                            111 Congress Avenue, Suite 400
Stone | Hilton PLLC                    Austin, Texas 78701
1115 West Slaughter Lane               (512) 686-3940 (phone)
Austin, Texas 78748                    (512) 686-3941 (fax)
(737) 465-3897 (phone)                 jonathan@mitchell.law
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com

GENE P. HAMILTON*
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

* *pro hac vice* application forthcoming

Dated: July 2, 2024                    *Counsel for Plaintiffs*