**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES (FASORP), <br><br> Plaintiff, <br><br> v. <br><br> NORTHWESTERN UNIVERSITY; HARI OSOFSKY, in her official capacity as dean of Northwestern University School of Law; SARAH LAWSKY, JANICE NADLER, AND DANIEL RODRIGUEZ, in their official capacities as professors of law at Northwestern University; DHEVEN UNNI, in his official capacity as editor in chief of the Northwestern University Law Review; JAZMYNE DENMAN, in her official capacity as senior equity and inclusion editor of the Northwestern University Law Review, <br><br> Defendants. | Case No. 24-cv-5558 <br><br> District Judge Sara L. Ellis |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    A.    The Parties ................................................................................................2

    B.    Faculty Hiring At The Law School.............................................................4

    C.    Law Review Member And Editor Selection ................................................5

    D.    Law Review Article Selection ....................................................................5

LEGAL STANDARD.............................................................................................................6

ARGUMENT ........................................................................................................................7

I.      FASORP LACKS ARTICLE III STANDING. .................................................7

    A.    FASORP Lacks Standing To Challenge The Law School's Faculty Hiring. ..........7

    B.    FASORP Lacks Standing To Challenge The Law Review's Member- And Editor-Selection Process. ..........................................................................10

    C.    FASORP Lacks Standing To Challenge The Law Review's Article-Selection Process. .................................................................................11

II.     FASORP FAILS TO STATE A CLAIM. ........................................................12

    A.    The Claims Against The Individual Defendants Should Be Dismissed. ..............12

    B.    FASORP Fails To State A Title VI Claim Against Any Defendant.....................13

        1.    FASORP Cannot Bring A Faculty-Hiring Employment Claim Under Title VI.....................................................................13

        2.    FASORP Alleges Insufficient Facts To Support A Race Discrimination Claim In Law Review Member And Editor Selection..............................................................................15

        3.    FASORP Alleges Insufficient Facts To Support A Race Discrimination Claim In Article Selection. .............................17

    C.    FASORP Fails To State A Title IX Claim Against Any Defendant.....................18

        1.    Title VII Precludes FASORP's Title IX Employment Claim...................18

        2.    FASORP Alleges Insufficient Facts To Support A Claim of Gender Discrimination In Member And Editor Selection. ........................19

        3.    FASORP Alleges Insufficient Facts To Support A Claim of Gender Discrimination in Article Selection..............................................20

    D.    FASORP Fails To State A Section 1981 Claim Against Any Defendant.............20

        1.    FASORP Fails To Adequately Allege Multiple Elements Of Its Section 1981 Discrimination Claim Regarding Faculty Hiring................20

        2.    FASORP Alleges Insufficient Facts To Support A Section 1981 Discrimination Claim Based On Member And Editor Selection..............24

i

3. FASORP Alleges Insufficient Facts To Support A Section 1981 Discrimination Claim In Article Selection. ...............................................25

CONCLUSION ...........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Agbefe v. Bd. of Educ. of Chicago*,
    538 F. Supp. 3d 833 (N.D. Ill. 2021) .........................................................................13, 14, 18

*Ahern v. Bd. of Educ. of Chicago*,
    133 F.3d 975 (7th Cir. 1998) ................................................................................14

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
    572 F.3d 440 (7th Cir. 2009) ................................................................................6

*Barnes v. Solo Cup Co.*,
    2013 WL 2156054 (N.D. Ill. May 16, 2013) .......................................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................6

*Bennett v. Roberts*,
    295 F.3d 687 (7th Cir. 2002) .........................................................................20, 23

*Brown v. Ill. Dep't of Hum. Servs.*,
    717 F. App'x 623 (7th Cir. 2018) .........................................................................19

*C.S. v. Couch*,
    843 F. Supp. 2d 894 (N.D. Ind. 2011) .................................................................12

*Carney v. Adams*,
    592 U.S. 53 (2020) .............................................................................................8, 9

*Cieslik v. Board of Educ. of Chicago*,
    2021 WL 1172575 (N.D. Ill. Mar. 29, 2021).................................................14, 15

*Collier v. Rodriguez*,
    1996 WL 535326 (N.D. Ill. Sept. 18, 1996) ........................................................24

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
    589 U.S. 327 (2020).......................................................................................23, 24

*Dixon v. Page*,
    291 F.3d 485 (7th Cir. 2002) ................................................................................7

*Do No Harm v. Pfizer Inc.*,
    646 F. Supp. 3d 490 (S.D.N.Y. 2022), *aff'd on other grounds*, 96 F.4th 106
    (2d Cir. 2024).........................................................................................................8

*Doe on behalf of Doe v. St. Joseph's Hosp. of Ft. Wayne*,
788 F.2d 411 (7th Cir. 1986), *overruled on other grounds by Alexander v.
Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996) ........................13

*Doe v. Columbia Coll.*,
933 F.3d 849 (7th Cir. 2019) ........................19

*Doe v. New York Univ.*,
2024 WL 2847368 (S.D.N.Y. May 30, 2024) (*NYU III*) ........................15

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006)........................24

*E.E.O.C. v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) ........................6

*Ezekiel v. Michel*,
66 F.3d 894 (7th Cir. 1995) ........................6

*FASORP v. Harvard L. Rev. Ass'n*,
2019 WL 3754023 (D. Mass. Aug. 8, 2019) ........................ *passim*

*FASORP v. NYU L. Rev. (NYU II)*,
11 F.4th 68 (2d Cir. 2021) ........................1, 10, 11

*FASORP v. NYU L. Rev. (NYU I)*,
2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020) ........................1, 11, 17

*Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*,
315 F.3d 817 (7th Cir. 2003) ........................19

*Harker v. Meta Platforms, Inc.*,
2024 WL 3990261 (S.D.N.Y. Aug. 29, 2024)........................8

*Houser v. Pritzker*,
28 F. Supp. 3d 222 (S.D.N.Y. 2014)........................9

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977)........................21

*Ivens v. GK N. Childcare Corp.*,
2022 WL 602913 (N.D. Ind. Mar. 1, 2022)........................21, 22

*Jauquet v. Green Bay Area Cath. Educ., Inc.*,
996 F.3d 802 (7th Cir. 2021) ........................19

*Jones v. Michael Reese Hosp.*,
1991 WL 105583 (N.D. Ill. June 7, 1991)........................23

iv

*Lewis v. Indiana Wesleyan Univ.*,
  36 F.4th 755 (7th Cir. 2022) ...................................................................................20

*Ludlow v. Nw. Univ.*,
  125 F. Supp. 3d 783 (N.D. Ill. 2015) .....................................................................19

*McDonald v. Santa Fe Trail Transp. Co.*,
  427 U.S. 273 (1976).................................................................................................20

*Melendez v. Ill. Bell Tel. Co.*,
  79 F.3d 661 (7th Cir. 1996) ......................................................................................9

*Mojsoski v. Indiana Wesleyan Univ.*,
  2022 WL 17338426 (N.D. Ind. Nov. 30, 2022)......................................................12

*Payne v. Abbott Lab'ys*,
  999 F. Supp. 1145 (N.D. Ill. 1998) .........................................................................21

*Pime v. Loyola Univ. of Chicago*,
  803 F.2d 351 (7th Cir. 1986) ...................................................................................21

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
  2 F.4th 1002 (7th Cir. 2021) ......................................................................................7

*Reynolds v. Sch. Dist. No. 1*,
  69 F.3d 1523 (10th Cir. 1995) .................................................................................14

*Rivera v. Lake Cnty.*,
  974 F. Supp. 2d 1179 (N.D. Ill. 2013) ....................................................................22

*Rizzi v. Calumet City*,
  11 F. Supp. 2d 994 (N.D. Ill. 1998) ..........................................................................6

*Sanchez v. Tootsie Roll Indus., LLC*,
  2021 WL 4936240 (N.D. Ill. May 18, 2021)....................................................23, 24

*Saud v. DePaul Univ.*,
  2019 WL 5577239 (N.D. Ill. Oct. 29, 2019)...........................................................19

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) .....................................................................................6

*Smith v. Metro. Sch. Dist. Perry Twp.*,
  128 F.3d 1014 (7th Cir. 1997) .................................................................................12

*Sow v. Fortville Police Dep't*,
  636 F.3d 293 (7th Cir. 2011) ...................................................................................12

*Students for Fair Admissions v. President & Fellows of Harvard College,*
   600 U.S. 181 (2023)...........................................................................................16

*Summers v. Earth Is. Inst.,*
   555 U.S. 488 (2009)...........................................................................................11

*Thanongsinh v. Bd. of Educ.,*
   462 F.3d 762 (7th Cir. 2006) .............................................................................12

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021).............................................................................................7

*United States ex rel. Suarez v. AbbVie, Inc.,*
   503 F. Supp. 3d 711 (N.D. Ill. 2020) ................................................................22

*Veljkovic v. Bd. of Educ. of Chicago,*
   2020 WL 7626735 (N.D. Ill. Dec. 22, 2020)....................................................13

*Waid v. Merrill Area Pub. Schs.,*
   91 F.3d 857 (7th Cir. 1996), *abrogated on other grounds by Fitzgerald v.*
   *Barnstable Sch. Comm.,* 555 U.S. 246 (2009) ..................................................18

*Washington v. Bd. of Educ. of Chicago,*
   2021 WL 5881682 (N.D. Ill. Dec. 8, 2021).......................................................19

*Yassan v. J.P. Morgan Chase & Co.,*
   708 F.3d 963 (7th Cir. 2013) ...............................................................................6

**STATUTES**

20 U.S.C. § 1681(a) ....................................................................................................18

42 U.S.C.
   § 1981(a)...............................................................................................................20
   § 2000d.................................................................................................................12

**RULES**

Fed. R. Civ. P.
   12(b)(1)...............................................................................................................1, 6
   12(b)(6)...............................................................................................................1, 6

Fed. R. Evid. 201(b)....................................................................................................22

**REGULATIONS**

34 C.F.R. § 100.3(c)....................................................................................................14

## OTHER AUTHORITIES

*ABA-Approved Law Schools: Number of ABA-Approved Law Schools*, Am. Bar.
Ass'n,
https://www.americanbar.org/groups/legal_education/resources/aba_approved
_law_schools.......................................................................................................................22

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss the complaint.

## INTRODUCTION

Faculty, Alumni, and Students Opposed to Racial Preferences ("FASORP") is an organization designed for litigation that has never brought a meritorious case. FASORP's two previous attempts to sue universities on similar grounds were dismissed for lack of standing and failure to state a claim. *See FASORP v. NYU L. Rev.*, 2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020) (*NYU I*), *aff'd*, 11 F.4th 68 (2d Cir. 2021) (*NYU II*); *FASORP v. Harvard L. Rev. Ass'n*, 2019 WL 3754023 (D. Mass. Aug. 8, 2019). Hoping the third time will be the charm, FASORP here sues Northwestern University, and (gratuitously) the dean of its Law School, three law professors, and two law students, alleging violations of Title VI, Title IX, and 42 U.S.C. § 1981.

The third time is not the charm. The bulk of FASORP's complaint is directed at maligning five Black professors at Northwestern as unworthy of their appointments to the law faculty. The grotesque premise of FASORP's suit is that, because those Black professors were hired while white male professors were not, the cause must be discrimination, not merit. FASORP's complaint is deeply flawed and should be dismissed.

FASORP's claims fail out of the gate for lack of Article III standing. FASORP complains about Northwestern Law School's faculty-hiring process, but of the three anonymous white male law professors that FASORP identifies as members—upon which its associational standing necessarily rests—none is alleged to have applied to work at Northwestern or even to have the credentials necessary to do so. At bottom, FASORP's theory is that three unnamed white male professors from unidentified universities, with undisclosed records, who never applied to work at the Law School, were somehow injured because Black professors who did apply were hired. These

1

vague and conclusory allegations are insufficient to establish an Article III injury, and FASORP thus lacks standing.

FASORP's claims regarding the Northwestern Law Review fare no better. FASORP objects to the Law Review's member- and editor-selection processes, but it does not identify a single FASORP member who is a current or former law student, much less one who unsuccessfully applied to the Law Review. FASORP likewise criticizes the Law Review's article-selection process, but it does not allege past injury to any members on account of articles being rejected or any likelihood of future injury on the ground that any member imminently intends to submit an article.

Setting aside standing, FASORP's claims fail on the merits. FASORP sued multiple individual defendants in their official capacities, but Seventh Circuit precedent prohibits as much where, as here, doing so is duplicative of suing the University. Moreover, the individual defendants cannot be sued under Title VI or Title IX, which apply only to federally-funded entities. In addition, Title VI and Title IX do not permit employment discrimination claims except in narrow circumstances not present here, and FASORP's allegations as to all three statutes are entirely conclusory and lack the necessary factual predicates to state a claim.

Ultimately, this Court should see this case for what it is: a poorly conceived, highly offensive piece of propaganda designed to further FASORP's cause—and that of the group backing the suit, America First Legal—not a serious legal document with any place in a court of law.

## BACKGROUND

### A.    The Parties

FASORP is a membership organization that advocates against "diversity considerations" in academia. Dkt. 1 ¶ 3. The complaint does not allege that FASORP has any members who are

current students at, or alumni of, the Law School. Instead, FASORP alleges that it has "members who are ready and able to apply for entry-level and lateral faculty positions" at the Law School, and members who have submitted articles to the Law Review in the past and are "ready and able" to do so in the future. *Id.* ¶¶ 3, 59.

The complaint does not identify any of its members. It does *refer* to three members by pseudonym—Individuals A, B, and C—and allege they are white, heterosexual, cisgender men who currently serve as tenured or tenure-track law professors at (unnamed) ABA-accredited law schools. *Id.* ¶¶ 60-65. FASORP alleges that these men are "able and ready to apply" for a faculty appointment at the Law School, *id.* ¶¶ 61, 63, 65, but does not allege whether they applied previously, whether they have any concrete plans to apply in the foreseeable future, whether the Law School has a hiring need in the subject areas they teach—or even what those areas are—or any other information on their qualifications and credentials beyond the fact that one has a Ph.D. in Political Science. *Id.* ¶¶ 60-65. In addition, FASORP alleges that these three men "have submitted articles" to the Law Review "in the past and stand able and ready to submit additional manuscripts" in the future. *Id.* ¶ 67. But the complaint does not say whether those prior submissions were accepted or rejected, nor does it provide any details on the proposed future submissions, such as the stage of their drafting process or their subject matter. *Id.*

Northwestern University is a premier educational institution. *Id.* ¶ 4. Defendant Hari M. Osofsky is the dean of the Law School, and Defendants Sarah Lawsky, Janice Nadler, and Daniel Rodriguez are professors (and Rodriguez a former dean) there. *Id.* ¶¶ 5-8. Defendant Dheven Unni is a student at the Law School and the Law Review's editor in chief, and Defendant Jazmyne Denman is a student as well and the Law Review's senior equity and inclusion editor. *Id.* ¶¶ 9-10. The individual defendants are named in their official capacities only.

B.      **Faculty Hiring At The Law School**

FASORP describes the Law School's efforts to include more candidates from underrepresented backgrounds in the pool of applicants for tenure-track positions as a "mandate to hire as many non-white and non-male faculty candidates as possible." *Id.* ¶ 11. FASORP acknowledges that the Law School interviews and extends offers to white, heterosexual, cisgender men. *Id.* ¶¶ 45-48. Nevertheless, FASORP contends that the Law School "intentionally and consciously discriminate[s] in favor of black, Hispanic, Asian, female, homosexual, and transgender faculty candidates, and against white men who are heterosexual and non-transgender." *Id.* ¶ 12.

The complaint focuses largely on comparing the credentials of three white male professors who were not hired by the Law School with the credentials of five Black professors—four women and one man, although FASORP devotes most of its agita to the women—who were hired. *Id.* ¶¶ 15-42. These three white male professors are not alleged to be Individuals A, B, and C, and FASORP acknowledges they did not "play[] any role in initiating this lawsuit." *Id.* ¶ 15 n.1. FASORP makes conclusory assertions that the race and gender of these three professors was the reason they were not hired. *Id.* Conversely, FASORP alleges that the Black professors were hired due to their race and (as to the women) gender. *Id.* ¶¶ 22-42. As noted, FASORP does not allege that Individual A, B, or C—or any of its members—applied for a position at the Law School. *Id.* ¶¶ 60-65.

Finally, FASORP alleges that the search for a new dean of the Law School in 2022 was "rigged … to ensure that no man would be chosen for the job." *Id.* ¶¶ 50-51. FASORP does not allege that any of its members, let alone Individual A, B, or C, applied, or would have been competitive, for the job. *Id.* ¶¶ 50-51, 60-65.

### C. Law Review Member And Editor Selection

FASORP alleges that "[t]he student editors" of the Law Review rely on "discriminatory preferences … when selecting their members and editors." *Id.* ¶ 53. FASORP concedes that Law Review policy explicitly states that it "'does not discriminate on the basis of race, ethnicity, religion, socioeconomic background, disability, nationality, sexual orientation, gender orientation and identity, or ideological perspective.'" *Id.* ¶ 54. Nevertheless, FASORP alleges that the Law Review uses applicants' "personal statements" "to discriminate against white men and in favor of women, racial minorities, homosexuals, and transgender people." *Id.*

FASORP does not allege that any of its members applied, or are ready and able to apply, for membership on the Law Review, let alone for any specific editorial or leadership position. Instead, FASORP alleges that in 2021, the Law Review rejected the membership application of "a white male student who had a first-year grade point average of over 4.0, while accepting female and minority students with much lower first-year grades." *Id.* ¶ 55. The complaint does not allege that this student is Individual A, B, or C, or even that he is a FASORP member. *Id.* FASORP provides no additional information regarding the credentials, including their performance on the Law Review's writing competition, of the students referenced in the complaint.

### D. Law Review Article Selection

FASORP further claims that the Law Review discriminates on the basis of race, gender, gender identity, and sexual orientation in article selection. *Id.* ¶ 56. FASORP alleges that Individuals A, B, and C submitted articles to the Law Review "in the past," but it does not allege when those articles were submitted or whether they were accepted or rejected—much less allege facts supporting an inference of discrimination. *Id.* ¶ 67. Instead, FASORP relies primarily on the allegation that the Law Review published a single issue that "consist[ed] only of articles written by black women." *Id.* ¶ 56. FASORP concedes that this issue was not expressly limited to articles

written by Black women, but claims that the Law Review nevertheless secretly applied discriminatory criteria. *Id.* FASORP does not allege that any of its members, let alone Individual A, B, or C, submitted articles for consideration in that particular issue. *Id.* ¶¶ 56, 67.

## LEGAL STANDARD

When a court is presented with a motion to dismiss that argues both lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6), it is procedurally proper to address the Rule 12(b)(1) challenge first. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013); *Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998).

On a Rule 12(b)(1) motion, the plaintiff bears the burden of showing that subject matter jurisdiction exists. *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Where, as here, the defendants make a facial challenge to standing,[1] the "district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a Rule 12(b)(6) motion, the court must determine (1) whether the complaint "describe[s] the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests,'" and (2) whether the allegations "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level,'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). "[A]ll

---

[1] Because FASORP does not identify Individual A, B, or C by name, Defendants are limited to a facial challenge to FASORP's standing. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If this suit is not dismissed, Defendants will seek the names of Individuals A, B, and C in order to evaluate whether to bring a factual challenge to FASORP's standing, which allows the court to "look beyond the pleadings" and consider extrinsic evidence regarding those persons. *Id.*

statements of fact in the complaint are taken as true and all reasonable inferences must be drawn in favor of [the plaintiff]." *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002).

## ARGUMENT

FASORP's complaint suffers from numerous flaws that independently warrant dismissal. First, FASORP lacks Article III standing because it does not allege that it has student members and because it does not plead facts sufficient to establish a non-speculative, concrete, and imminent injury to its members who serve on the faculty at other law schools. Second, FASORP's claims against the individual defendants should be dismissed because they are duplicative of its claims against the University, and individuals cannot be sued under Titles VI and IX in any event. Third, FASORP fails to allege facts sufficient to state a Title VI, Title IX, or Section 1981 claim.

## I.      FASORP LACKS ARTICLE III STANDING.

To allege associational standing, FASORP must identify at least one member who has standing to sue in his own right. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1010 (7th Cir. 2021). A member has standing if he can show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant[s]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). FASORP fails to make that showing.

### A.      FASORP Lacks Standing To Challenge The Law School's Faculty Hiring.

FASORP lacks standing to challenge the Law School's faculty-hiring process. FASORP does not allege that Individual A, B, or C—or any of its members—applied to teach at the Law School and was rejected. Although FASORP identifies and touts the credentials of three *other* white male professors who applied and were not hired, those professors are not alleged to be FASORP members and thus cannot establish standing for FASORP. Dkt. 1 ¶ 15 n.1 ("None of the professors mentioned in this complaint played any role in initiating this lawsuit … ."). Instead,

FASORP contends only that Individuals A, B, and C "stand[] able and ready to apply for a faculty appointment" at some unspecified point in the future, *id.* ¶¶ 61, 63, 65, and that "FASORP has members who are ready and able to apply for entry-level and lateral faculty positions" at the Law School, *id.* ¶¶ 3, 59. Those conclusory allegations do not suffice to show standing.

*First*, FASORP pleads no facts regarding the status of Individual A, B, or C's, or any other member's, application to join the Law School's faculty. FASORP does not allege, for example, that Individual A, B, or C, or any of its members, has prepared application materials, is actively applying to peer schools, or has taken any other steps conveying that the member would apply to Northwestern absent its alleged discriminatory practices. Merely stating that its members "want[] to be, and would apply to be," professors at Northwestern is not enough. *Carney v. Adams*, 592 U.S. 53, 60-61 (2020). In *Carney*, the Supreme Court held that the plaintiff's mere assertion that he *wanted* to be a judge—"without reference to an anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence"—was insufficient to show he was "able and ready" to apply for a judgeship, and thus insufficient to show standing. *Id.* at 63; *see also Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 506 (S.D.N.Y. 2022) (dismissing Section 1981 challenge to fellowship program where plaintiff organization provided "very little facts showing that the members—from undisclosed universities, with unnamed majors or courses of study, with little to no details about their career and educational goals, employment history, or interests—were ready and able to apply"), *aff'd on other grounds*, 96 F.4th 106 (2d Cir. 2024); *Harker v. Meta Platforms, Inc.*, 2024 WL 3990261, at *3 (S.D.N.Y. Aug. 29, 2024) (same where plaintiff "never applied or otherwise expressed his interest in being considered" for the job).

*Second*, FASORP provides no details that would enable this Court to determine whether Individual A, B, or C, or any other member, is qualified to apply for any open positions at the Law School. To establish standing, FASORP must adequately allege that Individual A, B, or C is not only "ready" to apply, but also "able" to do so. *Carney*, 592 U.S. at 60. As the Seventh Circuit has explained, this means that a plaintiff must allege that he was "qualified for the position sought." *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996); *see also Houser v. Pritzker*, 28 F. Supp. 3d 222, 236-37 (S.D.N.Y. 2014) (collecting cases holding that "to establish an injury-in-fact," the "plaintiff must at least demonstrate that he met the minimum qualifications for the position ultimately denied"). "The basis for this qualification requirement is apparent. Absent direct evidence showing that a plaintiff was not hired or promoted because of a discriminatory employment practice, we assume that an unqualified plaintiff was not hired or promoted for the obvious reason—that he was unqualified." *Melendez*, 79 F.3d at 668. Despite this requirement, FASORP fails to allege any injury in fact because the complaint says almost nothing about Individuals A, B, and C's relevant qualifications, including their areas of expertise; where they currently teach; where they earned their J.D. (or Ph.D., if applicable); their academic record and class ranking; how many publications they have and in which law reviews; or whether they have been offered lateral positions at any peer schools.

The absence of this critical information is particularly striking given that the complaint is premised on the baseless assertion that certain Black law professors that Northwestern hired were unqualified based on the ranking of the law school they attended and their academic and publication records. Dkt. 1 ¶¶ 21, 23, 26, 34, 36, 37, 40, 42. Because FASORP's "threadbare" allegations that its members are able to apply, without any details regarding their qualifications, are insufficient to establish an Article III injury, FASORP's faculty-hiring claim should be

dismissed. *See Harvard L. Rev. Ass'n*, 2019 WL 3754023, at *5-8 (dismissing for lack of standing FASORP's claims against Harvard Law Review because the complaint alleged only that a student member "intend[ed] to apply," but did not provide any details showing the student's qualifications, such as the student's "academic background" and "test scores").

### B. FASORP Lacks Standing To Challenge The Law Review's Member- And Editor-Selection Process.

FASORP identifies no student members, and any contention that its faculty members were harmed by the Law Review's member and editor selection is too speculative to support standing.

FASORP does not allege that any of its members are or were students at Northwestern—much less that they "applied for, or were rejected from, the Law Review[]." *NYU II*, 11 F.4th at 77. That alone is sufficient to dismiss any claims regarding member selection. While FASORP points to one white male student who allegedly was not accepted onto the Law Review, that student is not alleged to be a FASORP member. Dkt. 1 ¶ 55. And FASORP does not identify any student—whether or not a FASORP member—who experienced any alleged discrimination in the selection of any specific editorial position, such as Articles Editor.

In a prior case challenging the NYU Law Review's member- and editor-selection processes, FASORP contended that it had standing because "the articles that FASORP members submit to the Law Review are judged by less-capable students" given that "the Law Review has subordinated academic merit to diversity considerations when selecting its members and editors." *NYU II*, 11 F.4th at 73. Both the district court and the Second Circuit concluded that this (highly offensive) argument failed to establish an injury-in-fact, reasoning "there is no legal right to have one's articles reviewed or published by a student-run academic law journal," much less a right to have them reviewed by the "most 'capable' students." *NYU I*, 2020 WL 1529311, at *5-6; *see NYU*

*II*, 11 F.4th at 77 ("uncertain future action … would need to occur before" FASORP's members suffered injury). For the same reasons, FASORP lacks standing here.

### C. FASORP Lacks Standing To Challenge The Law Review's Article-Selection Process.

FASORP also lacks standing to challenge the Law Review's article-selection process. FASORP alleges only that "Individuals A, B, and C have submitted articles to the … Law Review in the past and stand able and ready to submit additional manuscripts" in the future. Dkt. 1 ¶ 67; *see also id.* ¶ 59. But FASORP does not allege whether those past submissions were accepted or rejected, and it provides no specifics on any future submissions, such as whether the articles are already drafted, when its members plan to submit them, and what subject matters they cover. Moreover, while FASORP alleges that the editors of Volume 118 published an issue "consist[ing] only of articles written by black women," *id.* ¶ 56, FASORP does not allege that its members submitted articles to that issue and received rejections on the basis of their race or gender.

Like FASORP's previous attempts to challenge law review article-selection processes, its claims here fail to allege sufficient injury to establish standing. As the Second Circuit explained in FASORP's case against the NYU Law Review—in which FASORP similarly alleged that its membership includes "faculty members or legal scholars who have submitted articles to the Law Review in the past, and who intend to continue submitting their scholarship to the Law Review in the future"—such allegations of past injury do not suffice without specific details on when its members submitted their prior articles, much less whether they were rejected. *NYU II*, 11 F.4th at 76 (quoting FASORP's complaint) (internal quotation marks omitted). And allegations of future injury do not suffice "[w]ithout any 'description of concrete plans'" because such allegations exhibit only "the kind of 'some day intentions' that cannot 'support a finding of [] actual or imminent injury.'" *Id.* at 77 (quoting *Summers v. Earth Is. Inst.*, 555 U.S. 488, 496 (2009))

(alterations in original). Said otherwise, as the District of Massachusetts explained in dismissing FASORP's similar claim against the Harvard Law Review, "[w]ithout additional detail, there is no way to discern whether [any FASORP member] either had an article rejected in the past (suggesting actual harm) or is preparing to submit an article in the reasonably foreseeable future (suggesting imminent harm)." *Harvard L. Rev. Ass'n*, 2019 WL 3754023, at *7 (emphasis omitted).

## II. FASORP FAILS TO STATE A CLAIM.

Even if FASORP had standing, the complaint fails to state a claim.

### A. The Claims Against The Individual Defendants Should Be Dismissed.

FASORP sues the individual defendants in their official capacities only. Dkt. 1 ¶¶ 5-10. Those claims should be dismissed for two independent reasons.

*First,* as the Seventh Circuit has explained, "an official capacity suit is another way of pleading an action against an entity of which the [individual] is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). For that reason, official-capacity claims are typically treated as redundant of claims against the institution and dismissed. *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 771 & n.7 (7th Cir. 2006) (affirming dismissal of official-capacity claim as "synonymous with [the] claim against the public entity itself"); *Mojsoski v. Ind. Wesleyan Univ.*, 2022 WL 17338426, at *11 (N.D. Ind. Nov. 30, 2022) ("[C]ourts have consistently held that in discrimination-based civil rights actions, a defendant's employees cannot be sued in their official capacity because doing so would be redundant of suing the employer itself."). This Court should do the same here, as FASORP's claims against the individual defendants are entirely duplicative of its claims against Northwestern.

*Second*, because Title VI and Title IX "only protect[] against discrimination" by federally funded entities, Title VI and Title IX claims "can only be brought against a grant recipient and not

an individual." *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997) (Title IX); *see C.S. v. Couch*, 843 F. Supp. 2d 894, 905 n.14 (N.D. Ind. 2011) (Title VI). FASORP's Title VI and IX claims against the individual defendants should be dismissed on this ground as well.

### B. FASORP Fails To State A Title VI Claim Against Any Defendant.

Title VI provides that "[n]o person … shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Binding Seventh Circuit precedent prohibits plaintiffs from bringing employment claims under Title VI, and FASORP's conclusory allegations regarding race-based discrimination in Law Review member, editor, and article selection fail to state a claim.

### 1. FASORP Cannot Bring A Faculty-Hiring Employment Claim Under Title VI.

FASORP's faculty-hiring claim fails because FASORP falls outside Title VI's zone of interests and, in any event, because Title VI does not provide a remedy for employment discrimination under the facts alleged here.

#### a. *FASORP Falls Outside Title VI's Zone of Interests.*

FASORP's hiring claim fails because FASORP falls outside the zone of interests that Title VI protects. "[T]o bring a private action under Title VI[,] 'the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program.'" *Doe on behalf of Doe v. St. Joseph's Hosp. of Ft. Wayne*, 788 F.2d 411, 418-19 (7th Cir. 1986), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996). Consistent with this principle, courts routinely dismiss Title VI claims brought by teacher plaintiffs who were neither the intended beneficiaries of, nor participants in, the federally funded program. *See, e.g.*, *Veljkovic v. Bd. of Educ. of Chicago*, 2020 WL 7626735, at \*4 (N.D. Ill. Dec. 22, 2020); *Agbefe*

13

*v. Bd. of Educ. of Chicago*, 538 F. Supp. 3d 833, 839 (N.D. Ill. 2021). This Court should do the same, as the complaint does not allege that Individual A, B, or C is an intended beneficiary of, or a participant in, a federally funded program.

> b.    *Title VI Does Not Cover FASORP's Employment Claim.*

Even if FASORP was within the zone of interests protected by Title VI, its hiring claim fails for an independent reason: "Title VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." *Ahern v. Bd. of Educ. of Chicago*, 133 F.3d 975, 978 (7th Cir. 1998). The reason for this rule is to maintain the separation between Title VI and Title VII, the primary statute governing employment discrimination. *See Agbefe*, 538 F. Supp. 3d at 838. Neither exception to that rule applies here.

*First*, FASORP does not allege that the primary objective of Northwestern's federal funding is to provide employment. "That failure is enough to sink [its] claim." *Id.*; *see Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1531-32 (10th Cir. 1995) (affirming dismissal for failure to allege that the primary objective of the education funding was to provide employment); *Harvard Law Rev. Ass'n*, 2019 WL 3754023, at *9 (similar). Nor can FASORP cure this omission by amendment. With a few narrow exceptions not applicable here, the primary purpose of most education funding is to support students, not hire faculty. *See Agbefe*, 538 F. Supp. 3d at 838-39 (recognizing this as to Title I of the Elementary and Secondary Education Act); 34 C.F.R. § 100.3(c) (providing narrow list of statutes with primary purpose of providing employment).

*Second*, FASORP does not allege that the Law School's hiring practices have had a discriminatory effect on the Law School's students—the primary beneficiaries of the federal aid. To the extent FASORP suggests that the Law School's hiring practices have resulted in hiring

"less capable" professors to teach the students, Dkt. 1 ¶ 17; *see id.* ¶¶ 23, 36, 40, 42, that does not allege any racially discriminatory effect on students. In *Cieslik v. Bd. of Educ. of Chicago*, 2021 WL 1172575, at *3 (N.D. Ill. Mar. 29, 2021), this Court rejected the argument that Title VI applied to employment discrimination claims because Chicago students received an "inferior education" due to discrimination against their teachers. As the Court explained, even if the argument's premise (students were receiving an inferior education) were true, that "chain of reasoning does not explain how students would be discriminated against on the basis of their race, color, or national origin." *Id.* The same holds here, as FASORP does not allege that race discrimination in faculty hiring has led to discrimination on the basis of race against the Law School's students.

In sum, because FASORP's Title VI hiring claim does not fall within either narrow exception to the rule that Title VI does not permit employment claims, it should be dismissed.

### 2. FASORP Alleges Insufficient Facts To Support A Race Discrimination Claim In Law Review Member And Editor Selection.

FASORP does not identify any discriminatory policy in the selection of Law Review members and editors. FASORP concedes that the Law Review represents that it "does not discriminate on the basis of race, ethnicity, religion, socioeconomic background, disability, nationality, sexual orientation, gender orientation and identity, or ideological perspective." Dkt. 1 ¶ 54 (quoting the Law Review's website). Nevertheless, FASORP contends that the Law Review uses "personal statements" to select new members based on their protected characteristics. *Id.* But FASORP does not plead any specific facts necessary to support this conclusory assertion—a flaw that recently led a court to dismiss a materially identical claim against another law review. *See Doe v. New York Univ.*, 2024 WL 2847368, at *6 (S.D.N.Y. May 30, 2024) (*NYU III*). As the court explained, "[a]lthough [the plaintiff] alleges that the Law Review 'is using … statements of interest and résumés to give preferential treatment to [select minority groups]' … he offers no factual

15

allegations in support of that assertion." *Id.* (third alteration in original). The same is true here, as FASORP does not back up its conclusory assertions with specific factual allegations.

Indeed, the only remotely specific fact that FASORP alleges is that, in 2021, the Law Review rejected "a white male student who had a first-year grade point average of over 4.0, while accepting female and minority students with much lower first-year grades." Dkt. 1 ¶ 55. Even if true, that allegation, standing alone, does not state a discrimination claim. As FASORP expressly admits, the Law Review selects new members based on not just grades, but also performance on a writing competition and personal statements. *Id.* ¶ 54. And FASORP does not allege that the white male student performed better, or even the same as, his female and minority colleagues on the writing competition. Thus, FASORP does not plausibly allege he was rejected based on race.[2]

Moreover, the mere fact that the Law Review solicits personal statements does not itself suffice to state a discrimination claim. In *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) *(SFFA)*, the Supreme Court was emphatic that considering such statements remains permissible: "[N]othing in this opinion should be construed as prohibiting universities from considering an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise," so long as "the student [is] treated based on his or her experiences as an individual." *Id.* at 230-31. Simply inviting applicants to explain their unique background, how it impacted their life and first year of law school, and how it can enhance their contributions to the Law Review is entirely permissible under *SFFA. Id.* If claims attacking

---

[2] Regardless, as explained above, this unnamed individual is neither a plaintiff nor alleged to be a FASORP member. *See supra* at 10. Accordingly, even if the complaint plausibly stated an injury as to this person, it still would not state an injury as to FASORP. In addition, this allegation relates to conduct occurring before *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) (*SFFA*). Accordingly, FASORP cannot rely on this example to prove discrimination under the Supreme Court's new legal framework, as it does not allege that the Law Review's pre-*SFFA* member-selection criteria remain the same post-*SFFA*.

16

the use of personal statements could be a predicate for a Title VI claim, then "every education program or activity receiving Federal financial assistance that (a) uses personal essays or [résumés] as part of a selection or admission process, and (b) has made a general statement of interest in or commitment to diversity—criteria which likely encompass a vast majority of the nation's universities, colleges, private schools, and other educational institutions—could be subjected to the costly and burdensome prospect of discovery." *Harvard L. Rev. Ass'n*, 2019 WL 3754023, at *8 n.16 (cleaned up). The law does not permit, let alone demand, that result.

Finally, as with member selection, FASORP's complaint provides no specific facts that could support a claim of discrimination in editor selection. The complaint offers no details on the selection process for specific editorial roles, such as Articles Editor. And FASORP does not allege that any student suffered discrimination in applying for a specific editorial role.

For all these reasons, FASORP's Title VI claim regarding Law Review member and editor selection should be dismissed.

### 3. FASORP Alleges Insufficient Facts To Support A Race Discrimination Claim In Article Selection.

FASORP's conclusory allegations regarding race discrimination in article selection are likewise insufficient to state a Title VI claim. FASORP does not allege that the Law Review rejected any specific article based on the author's race, and as FASORP concedes, the Law Review expressly represents that it "does not discriminate on the basis of race" or other protected characteristics. Dkt. 1 ¶ 54 (quoting Law Review's website). FASORP's conclusory allegation—unsupported by any facts—that the Law Review "gives discriminatory preferences to articles written by women, racial minorities, homosexuals, or transgender people," *id.* ¶ 57, is not sufficient to state a claim, as courts have recognized in other FASORP cases. *See NYU I*, 2020 WL 1529311, at *7 ("FASORP fails to proffer any factual allegation describing the Law Review's

17

article-selection process other than alleging that the Law Review receives background information of the authors and asserting in a conclusory way that the process is discriminatory, which is fatal to its article selection claim."); *Harvard L. Rev. Ass'n*, 2019 WL 3754023, at *9 ("The complete absence of 'factual material' … is fatal to the plaintiffs' claim of discriminatory article selection.").

Again, FASORP has only one even remotely specific factual allegation: that in the 2023-2024 academic year, the editors of Volume 118 published an issue "consist[ing] only of articles written by black women." Dkt. 1 ¶ 56. But FASORP does not allege that the Law Review rejected any otherwise publication-worthy articles by authors of other races. Moreover, FASORP admits that the Law Review did not announce a policy of selecting only articles written by Black women for that issue. *Id.* In the absence of any specific factual allegation suggesting the Law Review denied publication opportunities based on race, FASORP fails to state a Title VI claim.[3]

### C.     FASORP Fails To State A Title IX Claim Against Any Defendant.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). FASORP's Title IX faculty-hiring claim is precluded by Title VII, and FASORP's conclusory allegations with respect to member, editor, and article selection fail to state a Title IX claim.

#### 1.     Title VII Precludes FASORP's Title IX Employment Claim.

FASORP's Title IX claim related to faculty hiring fails as a matter of law because Title VII precludes it. "Title VII precludes other causes of actions for employment discrimination to the extent that Title VII would provide an equivalent remedy." *Agbefe*, 538 F. Supp. 3d at 840 (citing

---

[3] As noted, FASORP does not allege that any of its members submitted articles for this particular issue, and thus fails to allege sufficient injury to establish standing. *See supra* at 11.

*Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862 (7th Cir. 1996), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009)). Because FASORP does not allege that Title IX would provide it (or its members) any remedy unavailable under Title VII, Title VII precludes its Title IX employment discrimination claim.

That conclusion is consistent with the Seventh Circuit's repeated admonition that "*all* employment-discrimination claims must be brought under Title VII." *Brown v. Ill. Dep't of Hum. Servs.*, 717 F. App'x 623, 625-26 (7th Cir. 2018) (emphasis added). It is also supported by the wall of cases dismissing Title IX employment claims as precluded by Title VII. *See, e.g.*, *Washington v. Bd. of Educ. of Chicago*, 2021 WL 5881682, at *4 (N.D. Ill. Dec. 8, 2021); *Saud v. DePaul Univ.*, 2019 WL 5577239, at *5 (N.D. Ill. Oct. 29, 2019) (collecting cases); *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 785 (N.D. Ill. 2015). Accordingly, FASORP's Title IX hiring claim should be dismissed.

### 2. FASORP Alleges Insufficient Facts To Support A Claim of Gender Discrimination In Member And Editor Selection.

As with Title VI, FASORP's conclusory allegations regarding discrimination in the selection of Law Review members and editors do not suffice to state a Title IX claim. The Seventh Circuit has repeatedly affirmed dismissal of Title IX claims when they are "too vague and conclusory." *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 811 (7th Cir. 2021); *see also Doe v. Columbia Coll.*, 933 F.3d 849. 854 (7th Cir. 2019); *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003). So, too, here. FASORP identifies no specific facts supporting its claim of discrimination, with the exception of a single allegation about a "white male student who had a first-year grade point average of over 4.0" who was not accepted onto the Law Review and whose performance on the writing competition and personal statement remains unknown. Dkt. 1 ¶ 55. That vague assertion—about a person with no

relationship to this litigation, and with no allegation regarding how he performed on the writing competition or personal statement—is not enough.

### 3. FASORP Alleges Insufficient Facts To Support A Claim of Gender Discrimination in Article Selection.

Again, as with Title VI, FASORP's conclusory allegations regarding discrimination in Law Review article selection do not suffice to state a Title IX claim. FASORP does not identify any specific male author whose article submission was rejected, much less any facts suggesting any rejection was on the basis of gender. *See supra* at 17-18. This claim should thus be dismissed.

### D. FASORP Fails To State A Section 1981 Claim Against Any Defendant.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *see McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976) ("§ 1981 is applicable to racial discrimination in private employment against white persons."). FASORP fails to state a claim under this statute.

### 1. FASORP Fails To Adequately Allege Multiple Elements Of Its Section 1981 Discrimination Claim Regarding Faculty Hiring.

FASORP fails to state a Section 1981 claim as to faculty hiring for multiple independent reasons. "The legal analysis for discrimination claims under Title VII and § 1981 is largely identical," with the exception of the more stringent but-for causation requirement described below that Section 1981 claimants must also meet. *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). Under either statute, to bring a failure-to-hire claim based on indirect evidence of discrimination, a plaintiff must plead "(1) he is a member of a protected class; (2) he applied for, and was qualified for, an open position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained vacant." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). FASORP fails

to adequately allege that Individual A, B, or C—or any other FASORP member—applied or was qualified for any open position. In addition, FASORP fails to plausibly allege that race was the reason its members were not hired.

a.    *FASORP Does Not Allege That Any Member Applied To Any Position At The Law School.*

FASORP's Section 1981 hiring claim fails for the simple reason that it does not allege that any of its members applied to a faculty position at the Law School. Courts in this Circuit routinely dismiss Section 1981 claims for failure to meet this application requirement. *See, e.g.*, *Payne v. Abbott Lab'ys*, 999 F. Supp. 1145, 1152 (N.D. Ill. 1998) (granting motion to dismiss because complaint failed to allege "specific instances or facts regarding when plaintiffs applied for promotions"); *Ivens v. GK N. Childcare Corp.*, 2022 WL 602913, at *2 (N.D. Ind. Mar. 1, 2022) (same). Absent allegations regarding Individual A, B, or C, or any other FASORP member, applying and being rejected, FASORP cannot show that any member was not hired due to race— especially when the Law School has interviewed, extended offers to, and hired white male candidates over the years in question. Dkt. 1 ¶¶ 45-48.

To the extent FASORP seeks to invoke the futility exception to the application requirement, FASORP does not plead sufficient facts to make that showing. Although a Section 1981 plaintiff generally must show that he applied, the Supreme Court has held that "[w]hen a [plaintiff's] desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture[,] he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977). But the futility of the application must be "obvious." *Pime v. Loyola Univ. of Chicago*, 803 F.2d 351, 353 n.1 (7th Cir. 1986). And FASORP makes no such allegation— to the contrary, it concedes that Northwestern hires white male applicants. Dkt. 1 ¶¶ 45-48.

Moreover, FASORP does not allege facts showing that Individual A, B, or C, or any other member, would have applied to Northwestern absent the challenged conduct. FASORP does not allege, for instance, that Individual A, B, or C, or any other member, is actively seeking lateral appointments at other peer institutions, or has taken any steps to prepare applications for any other school, let alone for Northwestern. *See supra* at 7-10. Absent such allegations, FASORP does not sufficiently plead that its members would have applied for an appointment at the Law School absent its alleged discriminatory practices.

b.  *FASORP Does Not Allege Its Members Were Qualified.*

FASORP also does not plausibly allege that Individual A, B, or C, or any other member, was qualified for any faculty position at the Law School. All FASORP states is that Individuals A, B, and C currently teach at "ABA-accredited law school[s]." Dkt. 1 ¶¶ 60, 62, 64. But there are 197 ABA-accredited law schools,[4] and Northwestern is currently ranked ninth by U.S. News & World Report.[5] Yet, FASORP does not state where Individuals A, B, and C are teaching or whether those schools are top-tier or 197th-ranked, or provide any other details regarding their qualifications. *See id.* ¶¶ 60-65. Absent such details, it is impossible to tell whether Individual A, B, or C would have been qualified for appointment at the Law School.

---

[4] *ABA-Approved Law Schools: Number of ABA-Approved Law Schools*, Am. Bar. Ass'n, https://www.americanbar.org/groups/legal_education/resources/aba_approved_law_schools. The Court may take judicial notice of this fact because it is "not subject to reasonable dispute" and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see United States ex rel. Suarez v. AbbVie, Inc.*, 503 F. Supp. 3d 711, 721 (N.D. Ill. 2020) (taking notice of blogs discussing subject of suit); *Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1187 (N.D. Ill. 2013) (taking notice of New York Times article).

[5] Northwestern University (Pritzker), U.S. News & World Report, https://www.usnews.com/best-graduate-schools/top-law-schools/northwestern-university-03050. The Court may take judicial notice of this fact for the reasons stated above. *See supra* at 22 n.4.

Numerous courts have dismissed employment discrimination claims for exactly this reason. *See, e.g.*, *Ivens*, 2022 WL 602913, at *2 (plaintiff "offer[ed] no facts … as to her experience or qualifications for th[e] job to make her claims of discrimination plausible"); *Barnes v. Solo Cup Co.*, 2013 WL 2156054, at *3 (N.D. Ill. May 16, 2013) (plaintiff failed to allege that he was "similarly situated to, or more qualified than," an employee of a different race who received the promotion); *Jones v. Michael Reese Hosp.*, 1991 WL 105583, at *3 (N.D. Ill. June 7, 1991) (plaintiff "fail[ed] to allege that she was qualified" for the job); *see also Bennett*, 295 F.3d at 696 ("[A]lthough Ms. Bennett contends that she was qualified for nineteen positions that were filled while her name was in the database, she provides us with no indication as to the specific hiring criteria for these positions."). The Court should do the same here.

### c. *FASORP Fails To Adequately Allege But-For Causation.*

Finally, FASORP fails to adequately allege but-for causation. A Section 1981 plaintiff must "plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see Sanchez v. Tootsie Roll Indus., LLC*, 2021 WL 4936240, at *5 (N.D. Ill. May 18, 2021) ("Even at the pleading stage, the causation requirement is robust."). Section 1981 imposes a higher causation burden on plaintiffs than does Title VII. Under Title VII, a plaintiff may plead causation by alleging that race was a "motivating factor" in the defendant's decision, even if it was not the but-for cause and even if the defendant would have made the same decision regardless of the plaintiff's race. *Comcast*, 589 U.S. at 336-37. By contrast, to satisfy Section 1981's but-for causation requirement, a plaintiff must plausibly allege that the defendant would have made a different decision had the plaintiff been a different race. *Id.*

FASORP does not plead *any* facts suggesting that Individual A, B, or C, or any other member, would have been hired but for their race. On the contrary, even if Individual A, B, or C,

or any other member, had applied, they may not have been hired because they teach in an area of scholarship that Northwestern faculty already cover; because they lack the adequate academic, teaching, or publication record; or because of any number of other things. Absent any allegations supporting FASORP's claim that any member would have been hired but for their race, FASORP's Section 1981 faculty-hiring claim should be dismissed. *See Sanchez v. Tootsie Roll Indus.*, LLC, 2021 WL 4936240, at \*6 (N.D. Ill. May 18, 2021) (dismissing complaint where plaintiff failed to allege that race was the but-for cause of the challenged decision).

### 2. FASORP Alleges Insufficient Facts To Support A Section 1981 Discrimination Claim Based On Member And Editor Selection.

FASORP fails to state a Section 1981 claim as to the selection of student members and editors of the Law Review. *First*, FASORP alleges no contractual relationship between the members and editors, on the one hand, and the Law Review, on the other. "Any claim brought under § 1981 … must initially identify an impaired 'contractual relationship,' [] under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (citations omitted). Because FASORP fails to do so, its claim should be dismissed. *See Collier v. Rodriguez*, 1996 WL 535326, at \*3 (N.D. Ill. Sept. 18, 1996) (dismissing Section 1981 claim because "no contracts are at issue here").

*Second*, even if FASORP identified a contractual relationship, as explained above, FASORP's Section 1981 claim still fails as the complaint offers only a single specific allegation to support a race discrimination claim: that an unnamed "white male student who had a first-year grade point average of over 4.0" was not accepted onto the Law Review. Dkt. 1 ¶ 55. But FASORP alleges no facts suggesting this student was rejected based on his race, much less that his race was the but-for cause of his rejection. *See Comcast*, 589 U.S. at 341. In any case, this student is neither a plaintiff nor alleged to be a FASORP member.

24

3.       **FASORP Alleges Insufficient Facts To Support A Section 1981 Discrimination Claim In Article Selection.**

For similar reasons, FASORP's conclusory allegations regarding discrimination in article selection are insufficient to state a Section 1981 claim. FASORP does not allege that any of its members' articles were rejected because of their race. Nor does FASORP allege that the Law Review imposes any race-based qualifications on article submissions. As explained above, the most FASORP alleges is that Volume 118 had an issue "consist[ing] only of articles written by black women." Dkt. 1 ¶ 56. But FASORP does not allege that the Law Review rejected any otherwise publication-worthy articles by authors of other races for this issue, let alone that FASORP members were deprived of any opportunity to enter a contract with the Law Review based on their race. Absent any specific factual allegations, FASORP fails to state a claim.

## CONCLUSION

FASORP's complaint is wholly without merit. It serves only as a vehicle to baselessly malign individual professors due to their race and gender and to advance the political agenda of the organization and those behind it. Because the law requires more to maintain an action in federal court, this Court should dismiss the complaint.

Dated: September 9, 2024                    Respectfully submitted,


                                           By: */s/ Danielle Conley*
_____

                                           Danielle Conley (*admitted pro hac vice*)
                                           Jude Volek (*pro hac vice pending*)
                                           Christine C. Smith (*pro hac vice pending*)
                                           Jasmine D. Benjamin (*pro hac vice pending*)
                                           LATHAM & WATKINS LLP
                                           555 Eleventh Street, NW, Suite 1000
                                           Washington, D.C. 20004-1304
                                           Phone: (202) 637-2200
                                           Facsimile: (202) 637-2201
                                           danielle.conley@lw.com
                                           jude.volek@lw.com
                                           christine.smith@lw.com
                                           jasmine.benjamin@lw.com

                                           Sean Berkowitz (ARDC No. 6209701)
                                           LATHAM & WATKINS LLP
                                           330 North Wabash Avenue, Suite 2800
                                           Chicago, Illinois 60611-3695
                                           Telephone: (312) 876-7700
                                           Facsimile: (312) 993-9767
                                           sean.berkowitz@lw.com

                                           *Counsel for Defendants Northwestern
                                           University, Hari Osofsky, Sarah Lawsky,
                                           Janice Nadler, Daniel Rodriguez, Dheven
                                           Unni, and Jazmyne Denman*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2024, I filed the foregoing with the Clerk of Court by using the CM/ECF system and sent via electronic transmission to all parties of record.


/s/ *Danielle Conley*
Danielle Conley (*admitted pro hac vice*)

27