**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES (FASORP), <br><br>                         Plaintiff, <br><br>       v. <br><br> NORTHWESTERN UNIVERSITY; HARI OSOFSKY, in her official capacity as dean of Northwestern University School of Law; SARAH LAWSKY, JANICE NADLER, AND DANIEL RODRIGUEZ, in their official capacities as professors of law at Northwestern University; DHEVEN UNNI, in his official capacity as editor in chief of the Northwestern University Law Review; JAZMYNE DENMAN, in her official capacity as senior equity and inclusion editor of the Northwestern University Law Review, <br><br>                         Defendants. | Case No. 24-cv-5558 <br><br> District Judge Sara L. Ellis |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND .................................................................................................................3

    A.    The Parties ................................................................................................3
    B.    Faculty Hiring At The Law School..........................................................3
    C.    Law Review Member And Editor Selection ............................................4
    D.    Law Review Article Selection .................................................................4

LEGAL STANDARD..........................................................................................................5

ARGUMENT ......................................................................................................................6

I.     FASORP LACKS ARTICLE III STANDING. ......................................................6

    A.    FASORP Lacks Standing To Challenge The Law School's Faculty Hiring. ..........6
    B.    FASORP Lacks Standing To Challenge The Law Review's Member And Editor Selection..........................................................................10
    C.    FASORP Lacks Standing To Challenge The Law Review's Article Selection..........................................................................11

II.    FASORP FAILS TO STATE A CLAIM ON THE MERITS. ...............................12

    A.    The Claims Against The Individual Defendants Should Be Dismissed. ...............12
    B.    FASORP Fails To State A Title VI Claim Against Any Defendant.....................13
    C.    FASORP Fails To State A Title IX Claim Against Any Defendant.....................19
    D.    FASORP Fails To State A Section 1981 Claim Against Any Defendant. ............21

CONCLUSION..................................................................................................................25

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abramson v. Bennett*,
707 F. Supp. 13 (D.D.C. 1989) ................................................................20

*Adams v. Bell*,
711 F.2d 161 (D.C. Cir. 1983) ................................................................19

*Agbefe v. Bd. Of Educ. Of Chi.*,
538 F. Supp. 3d 833 (N.D. Ill. 2021) .........................................14, 15, 19

*Ahern v. Bd. Of Educ. Of Chi.*,
133 F.3d 975 (7th Cir. 1998) ............................................................14, 15

*Alameda v. Ass'n of Soc. Work Bds.*,
2024 WL 4302389 (S.D.N.Y. Sept. 25, 2024)........................................24

*Apex Digit., Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) .....................................................................5

*Barnes v. Solo Cup Co.*,
2013 WL 2156054 (N.D. Ill. May 16, 2013) ...........................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................5, 6

*Bennett v. Roberts*,
295 F.3d 687 (7th Cir. 2002) ...................................................................21

*Box v. A & P Tea Co.*,
772 F.2d 1372 (7th Cir. 1985) ...................................................................6

*Brown v. Ferrara Candy Co.*,
2023 WL 6519973 (N.D. Ill. Oct. 5, 2023)..............................................23

*Brown v. Ill. Dep't of Hum. Servs.*,
717 F. App'x 623 (7th Cir. 2018) ............................................................20

*C.S. v. Couch*,
843 F. Supp. 2d 894 (N.D. Ind. 2011) .....................................................13

*Carney v. Adams*,
592 U.S. 53 (2020)..................................................................................6, 7

*Chuang v. Regents of Univ. of Cal.*,
1998 WL 1671745 (E.D. Cal. Oct. 30, 1998), *rev'd on other grounds*, *Chuang
v. Univ. of Cal. Davis, Bd. of Tr.*, 225 F.3d 1115 (9th Cir. 2000) ...........................................15

*Cieslik v. Bd. of Educ. of Chi.*,
2021 WL 1172575 (N.D. Ill. Mar. 29, 2021).........................................................................16

*Collier v. Rodriguez*,
1996 WL 535326 (N.D. Ill. Sept. 18, 1996) ..........................................................................25

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020)...................................................................................................23, 25

*Consolidated Rail Corp. v. Darrone*,
465 U.S. 624 (1984).........................................................................................................15

*Dixon v. Page*,
291 F.3d 485 (7th Cir. 2002) .............................................................................................6

*Do No Harm v. Pfizer Inc.*,
646 F. Supp. 3d 490 (S.D.N.Y. 2022), *aff'd on other grounds*, 96 F.4th 106
(2d Cir. 2024).................................................................................................................9

*Doe v. Columbia. Coll. Chi.*,
933 F.3d 849 ................................................................................................................21

*Doe v. N.Y.U.*,
2024 WL 2847368 (S.D.N.Y. May 30, 2024) (*NYU III*) ...............................................8, 12, 17

*Doe v. St. Joseph's Hosp. of Ft. Wayne*,
788 F.2d 411 (7th Cir. 1986), *overruled on other grounds by Alexander v.
Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996)......................................................13, 14

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006)........................................................................................................25

*E.E.O.C. v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) .............................................................................................5

*Ezekiel v. Michel*,
66 F.3d 894 (7th Cir. 1995) ..............................................................................................5

*FASORP v. Harv. L. Rev. Ass'n*,
2019 WL 3754023 (D. Mass. Aug. 8, 2019) ........................................................1, 10, 12, 18

*FASORP v. N.Y.U. L. Rev.*,
2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020) (*NYU I*), *aff'd*, 11 F.4th 68 (2d
Cir. 2021)..........................................................................................................1, 10, 11, 18

iii

*Gabrielle M. v. Park Forest-Chicago Heights Sch. Dist. 163*,
   315 F.3d 817 (7th Cir. 2003) ................................................21

*Guardians Ass'n of N.Y.C. Police Dep't, Inc. v. Civ. Serv. Comm'n of City of
N.Y.*,
   633 F.2d 232 (2d Cir. 1980), *aff'd*, 463 U.S. 582 (1983) ....................19

*Harker v. Meta Platforms, Inc.*,
   2024 WL 3990261 (S.D.N.Y. Aug. 29, 2024) ...........................6

*Houser v. Pritzker*,
   28 F. Supp. 3d 222 (S.D.N.Y. 2014)......................................8

*Hummel v. St. Joseph Cnty. Bd. of Comm'rs*,
   817 F.3d 1010 (7th Cir. 2016) ..............................................7

*Ibarrola v. Kind, LLC*,
   83 F. Supp. 3d 751 (N.D. Ill. 2015) .......................................26

*Ivens v. GK N. Childcare Corp.*,
   2022 WL 602913 (N.D. Ind. Mar. 1, 2022)..............................22

*Jauquet v. Green Bay Area Cath. Educ., Inc.*,
   996 F.3d 802 (7th Cir. 2021) ................................................21

*Jones v. Michael Reese Hosp.*,
   1991 WL 105583 (N.D. Ill. June 7, 1991) ...............................23

*Koch Ref. v. Farmers Union Cent. Exch., Inc.*,
   831 F.2d 1339 (7th Cir. 1987) ...............................................7

*Lewis v. Ind. Wesleyan Univ.*,
   36 F.4th 755 (7th Cir. 2022) ................................................21

*Ludlow v. Nw. Univ.*,
   125 F. Supp. 3d 783 (N.D. Ill. 2015) ......................................20

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   935 F.3d 573 (7th Cir. 2019) ................................................26

*McDonald v. Santa Fe Trail Transp. Co.*,
   427 U.S. 273 (1976)...........................................................21

*Melendez v. Ill. Bell Tel. Co.*,
   79 F.3d 661 (7th Cir. 1996) .............................................8, 9

*Meyerson v. State of Ariz.*,
   709 F.2d 1235 (9th Cir. 1983), *judgment vacated*, 465 U.S. 1095 (1984) ......15, 16

*Miller v. Phelan*,
    845 F. Supp. 1201 (N.D. Ill. 1993) ...................................................................................14

*Mojsoski v. Ind. Wesleyan Univ.*,
    2022 WL 17338426 (N.D. Ind. Nov. 30, 2022)...............................................................12

*Monroe v. Columbia Coll. Chi.*,
    990 F.3d 1098 (7th Cir. 2021) ........................................................................................22

*Moxley v. Vernot*,
    555 F. Supp. 554 (S.D. Ohio 1982) ................................................................................15

*NAACP v. Med. Ctr., Inc.*,
    599 F.2d 1247 (3d Cir. 1979)..........................................................................................19

*Nartey v. Franciscan Health Hosp.*,
    2 F.4th 1020 (7th Cir. 2021) ...........................................................................................16

*O'Sullivan v. City of Chi.*,
    478 F. Supp. 2d 1034 (N.D. Ill. 2007) ...........................................................................20

*Onyango v. Nick & Howard, LLC*,
    607 F. App'x 552 (7th Cir. 2015) ...................................................................................24

*Payne v. Abbott Lab'ys*,
    999 F. Supp. 1145 (N.D. Ill. 1998) ................................................................................22

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
    2 F.4th 1002 (7th Cir. 2021) .......................................................................................5, 6

*Riley v. Elkhart Cmty. Sch.*,
    829 F.3d 886 (7th Cir. 2016) ..........................................................................................22

*Sanchez v. Tootsie Roll Indus., LLC*,
    2021 WL 4936240 (N.D. Ill. May 18, 2021) .............................................................23, 24

*Saud v. DePaul Univ.*,
    2019 WL 5577239 (N.D. Ill. Oct. 29, 2019)...................................................................20

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ............................................................................................5

*Small v. Chao*,
    398 F.3d 894 (7th Cir. 2005) ..........................................................................................22

*Smith v. Metro. Sch. Dist. Perry Twp.*,
    128 F.3d 1014 (7th Cir. 1997) ........................................................................................13

v

*Sow v. Fortville Police Dep't*,
 636 F.3d 293 (7th Cir. 2011) ..................................................................................12

*Students for Fair Admissions v. President & Fellows of Harvard Coll.*,
 600 U.S. 181 (2023) .....................................................................................17, 18

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009) ......................................................................................5, 12

*Thanongsinh v. Bd. Of Educ.*,
 462 F.3d 762 (7th Cir. 2006) ................................................................................12

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ...............................................................................................6

*Veljkovic v. Bd. Of Educ. Of Chi.*,
 2020 WL 7626735 (N.D. Ill. Dec. 22, 2020) .......................................................13

*Washington v. Bd. of Educ. of Chi.*,
 2021 WL 5881682 (N.D. Ill. Dec. 8, 2021) .........................................................20

*Yassan v. J.P. Morgan Chase & Co.*,
 708 F.3d 963 (7th Cir. 2013) ..................................................................................5

## STATUTES

20 U.S.C. § 1681(a) ....................................................................................................19

42 U.S.C.
 § 1981........................................................................................................*passim*
 § 1981(a) ...........................................................................................................21
 § 2000d...............................................................................................................13

## RULES

Fed. R. Evid. 201(b)......................................................................................................9

## REGULATIONS

34 C.F.R. § 100.3(c)....................................................................................................16

## OTHER AUTHORITIES

*ABA-Approved Law Schools: Number of ABA-Approved Law Schools*, Am. Bar.
 Ass'n,
 https://www.americanbar.org/groups/legal_education/resources/aba_approved
 _law_schools (last visited Oct. 24, 2024) ..............................................................9

Northwestern University (Pritzker), U.S. News & World Report,
     https://www.usnews.com/best-graduate-schools/top-law-
     schools/northwestern-university-03050 (last visited Oct. 24, 2024) ........................................9

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss Plaintiff's First Amended Complaint ("FAC"), Dkt. No. 25.

## INTRODUCTION

Faculty, Alumni, and Students Opposed to Racial Preferences ("FASORP") is an organization designed for litigation that has never brought a meritorious case. FASORP's two previous attempts to sue universities on similar grounds were dismissed for lack of standing and failure to state a claim. *See FASORP v. N.Y.U. L. Rev.*, 2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020) (*NYU I*), *aff'd*, 11 F.4th 68 (2d Cir. 2021) (*NYU II*); *FASORP v. Harv. L. Rev. Ass'n*, 2019 WL 3754023 (D. Mass. Aug. 8, 2019). Hoping the third time will be the charm, FASORP here sues Northwestern University and (gratuitously) the Dean of its Law School, three law professors, and two law students, alleging violations of Title VI, Title IX, and 42 U.S.C. § 1981.

The third time is not the charm. The bulk of the FAC is directed at maligning six Black law professors as unworthy of their appointments to the law faculty or unworthy to publish in the Northwestern University Law Review ("Law Review"). FASORP accuses some of these faculty members and authors of plagiarism and denigrates the credentials of others. The grotesque premise of FASORP's suit is that, because those Black professors were hired or published while certain white male professors were not, the cause must be discrimination, not merit. Despite spilling much ink on its attacks on these Black professors, none of FASORP's plagiarism allegations or other vilifications advance its claims. The FAC is deeply flawed and should be dismissed.

FASORP's claims fail out of the gate for lack of standing. Although FASORP amended its complaint to add snippets of information about its members—the three anonymous white male professors it claims were not hired, and on which its claim to associational standing rests—the amendments only underscore the deficiencies of its claims. FASORP now contends some (but not all) of those professors applied for entry-level positions (at undisclosed times), and expressed

1

"interest" in lateral appointments (in some undisclosed manner and again at undisclosed times) to some undisclosed Northwestern faculty member. And FASORP still fails to offer an adequate account of its members' qualifications, including basic details such as where they currently teach. These vague and conclusory allegations are insufficient to establish Article III injury.

FASORP's claims regarding the Law Review fare no better. FASORP objects to the member- and editor-selection processes, but it does not identify any FASORP member who is a current or former law student, much less one who unsuccessfully applied to the Law Review. FASORP also criticizes the article-selection process, but fails to provide sufficient detail regarding its members' submissions, such as when they were made or their subject matter. And FASORP's new allegation that the Law Review rejected the "vast majority" of its three members' submissions implicitly concedes that at least one of their articles was accepted, undercutting the allegation that past rejections were based on race and showing that any risk of future rejection is speculative.

Setting aside standing, FASORP's claims fail on the merits. FASORP sues several individual defendants in their official capacities, but Seventh Circuit precedent prohibits that where, as here, doing so is duplicative of suing the University. Moreover, the individual defendants cannot be sued under Title VI or Title IX, which apply only to federally-funded entities. In addition, Title VI and Title IX do not permit employment discrimination claims except in narrow circumstances not present here, and FASORP's allegations are entirely conclusory and lack the necessary factual predicates to state a Title VI, Title IX, or Section 1981 claim.

Ultimately, this Court should see this case for what it is: a poorly conceived, highly offensive piece of propaganda brought to hurl improper attacks against Black faculty and to further FASORP's cause—and that of the group backing the suit, America First Legal—not a serious legal document belonging in a court of law.

2

## BACKGROUND

### A.    The Parties

FASORP is a membership organization that advocates against "diversity considerations" in academia. Dkt. 25 ¶ 3. The FAC does not allege that FASORP has any members who are current students at, or alumni of, the Law School. Nor does the FAC identify any FASORP member by name. It instead refers to three members by pseudonym—Individuals A, B, and C—and alleges that they are white, heterosexual, cisgender men who currently serve as tenured or tenure-track law professors at unnamed ABA-accredited law schools. *Id.* ¶¶ 100-116.

Northwestern University is a premier educational institution. *Id.* ¶ 4. Defendant Hari M. Osofsky is the Dean of the Law School, and Defendants Sarah Lawsky, Janice Nadler, and Daniel Rodriguez are professors (and Rodriguez a former dean) there. *Id.* ¶¶ 5-8. Defendant Dheven Unni is a student at the Law School and the Law Review's editor-in-chief, and Defendant Jazmyne Denman is a student as well and the Law Review's senior equity and inclusion editor. *Id.* ¶¶ 9-10.

### B.    Faculty Hiring At The Law School

FASORP describes the Law School's efforts to include more candidates from underrepresented backgrounds in the pool of applicants as a "mandate to hire as many non-white and non-male faculty candidates as possible." *Id.* ¶ 11. FASORP acknowledges that the Law School interviews and extends faculty offers to white, heterosexual, cisgender men. *Id.* ¶¶ 45-48. Nevertheless, FASORP contends that the Law School "intentionally and consciously discriminate[s] in favor of black, Hispanic, Asian, female, homosexual, and transgender faculty candidates, and against white men who are heterosexual and non-transgender." *Id.* ¶ 12.

The FAC focuses largely on comparing the credentials of three white male professors who were not hired with the credentials of five Black professors—four women and one man, although FASORP devotes most of its agita to the women—who were hired. *Id.* ¶¶ 15-42. These three white

male professors are *not* alleged to be Individuals A, B, and C or FASORP members, and FASORP acknowledges they did not "play[] any role in initiating this lawsuit." *Id.* ¶ 15 n.1. Regarding its actual members, FASORP alleges that Individuals A and C previously applied for the faculty, but does not say when and provides only the barest of details as to their qualifications. *Id.* ¶¶ 109, 111.

Finally, FASORP alleges that the search for a Law School dean in 2022 was "rigged … to ensure that no man would be chosen for the job." *Id.* ¶¶ 50-51. FASORP does not allege that any of its members applied, or would have been competitive, for the job. *Id.* ¶¶ 99-105, 107, 160-165.

### C.    Law Review Member And Editor Selection

FASORP alleges that "[t]he student editors" of the Law Review rely on "discriminatory preferences … when selecting their members and editors." *Id.* ¶ 79. FASORP concedes that the Law Review's policy explicitly states that it "does not discriminate on the basis of race, ethnicity, religion, socioeconomic background, disability, nationality, sexual orientation, gender orientation and identity, or ideological perspective." *Id.* ¶ 80. Nevertheless, FASORP alleges that the Law Review uses applicants' "personal statements" "to discriminate against white men and in favor of women, racial minorities, homosexuals, and transgender people." *Id.* FASORP does not allege that any of its members applied, or are ready and able to apply, for Law Review membership or for any specific editorial position, or even that they are or were Northwestern law students.

### D.    Law Review Article Selection

FASORP claims that the Law Review discriminates on the basis of race, gender, gender identity, and sexual orientation in article selection. Dkt. 25 ¶ 84. FASORP makes conclusory assertions that *some* of Individual A, B, and C's prior submissions were rejected on the basis of race, while implicitly conceding at least one of their articles was accepted. *Id.* ¶¶ 84, 112, 114-116. The sole factual allegation FASORP offers to support that claim is that the Law Review published a single issue that "consist[ed] only of articles written by black women." *Id.* ¶ 84. FASORP

concedes that this issue was not expressly limited to articles written by Black women, but claims the Law Review nevertheless secretly applied discriminatory criteria. *Id.* FASORP does not allege that Individual A, B, or C submitted articles for this issue. *Id.* ¶¶ 84, 112, 114-116.

## LEGAL STANDARD

When a court is presented with a motion to dismiss that argues both lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6), the Rule 12(b)(1) challenge should be addressed first. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013).

On a Rule 12(b)(1) motion, the plaintiff bears the burden of showing that subject matter jurisdiction exists. *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Where, as here, the defendants make a facial challenge to standing,[1] the "district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citations omitted).

To survive a Rule 12(b)(6) motion, the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a Rule 12(b)(6) motion, the court must determine (1) whether the complaint "describe[s] the claim in sufficient detail to give the defendant 'fair notice of what the … claim is and the grounds upon which it rests,'" and (2) whether the allegations "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level,'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496

---

[1] Because FASORP does not identify Individual A, B, or C by name, Defendants are limited to a facial challenge to its standing. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If this suit is not dismissed, Defendants will seek their names to bring a possible factual challenge to standing, which allows the court to "look beyond the pleadings" and consider extrinsic evidence. *Id.* (citation omitted); *see also Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021) (citing cases that read *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), "to expressly require names for associational standing on the pleadings").

F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). "[A]ll statements of fact in the complaint are taken as true and all reasonable inferences must be drawn in favor of [the plaintiff]." *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002) (citation omitted).

## ARGUMENT

The FAC suffers from numerous flaws that independently warrant dismissal. FASORP lacks Article III standing, improperly directs claims against individual defendants, and fails to allege facts sufficient to state a Title VI, Title IX, or Section 1981 claim.

## I.    FASORP LACKS ARTICLE III STANDING.

To allege associational standing, FASORP must identify at least one member who has standing to sue in his own right. *Prairie Rivers Network*, 2 F.4th at 1010. A member has standing if he can show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant[s]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citations omitted). FASORP fails to make that showing.

### A.    FASORP Lacks Standing To Challenge The Law School's Faculty Hiring.

FASORP lacks standing to challenge the Law School's faculty hiring process.

*First*, FASORP pleads insufficient facts regarding the status of Individual A, B, or C's, or any other member's, efforts to join the faculty. FASORP conspicuously fails to allege that Individual B ever applied. Nor does FASORP allege he has taken any concrete steps toward applying. Merely stating that Individual B "wants to be, and would apply to be," a professor is not enough. *Carney v. Adams*, 592 U.S. 53, 60-61 (2020); *see Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) (plaintiff must "do more than show she had a general interest"); *Harker v. Meta Platforms, Inc.*, 2024 WL 3990261, at *3 (S.D.N.Y. Aug. 29, 2024).

Although FASORP alleges that Individuals A and C applied as entry-level candidates and "informed at least one person on Northwestern's law faculty of their interest in a lateral faculty appointment," Dkt. 25 ¶¶ 107-108, neither allegation suffices for standing. Critically, FASORP does not allege when Individuals A and C applied as entry-level candidates or when they "informed" a faculty member of their "interest" in a lateral appointment, including whether any purported applications would have been considered at the same time as those of the Black faculty discussed in the complaint. As for the lateral-hiring process specifically, FASORP does not allege facts sufficient to establish standing even under its own description of the informal application process. FASORP conspicuously fails to allege to whom or in what manner they expressed their interest, including whether Individuals A or C provided CVs, research agendas, writing samples, recommendations, or other materials to support their candidacy. These allegations are insufficient. *See Carney*, 592 U.S. at 60-61 (merely stating plaintiff "wants to be" a judge was not enough).

Further, the FAC asserts that lateral candidates must "convince intermediaries [on the faculty] to convince the appointments committee to recruit" them. Dkt. 25 ¶ 108. But even accepting that premise, FASORP alleges only that Individuals A and C "informed" someone on the faculty of their "interest"; it does not allege they actually asked, let alone convinced, any faculty member to intercede with the appointments committee. Absent any such allegation, FASORP does not allege that the appointments committee or Dean was aware of their interest, much less that they rejected their "application." FASORP thus cannot show that Defendants caused any injury. *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1340 (7th Cir. 1987) (plaintiffs lacked standing because they failed to show a direct injury resulting from defendant's conduct).

FASORP's vague allegation that Individuals A and C plan to express "interest" in future years, Dkt. 25 ¶ 108, is also insufficient to show a "substantial risk" of harm. *Hummel v. St. Joseph*

*Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016). FASORP acknowledges that Northwestern has interviewed and hired white male professors, Dkt. 25 ¶¶ 45-48, underscoring that there is no race- or gender-based bar. Instead, FASORP simply asserts, without supporting factual allegations, that the Black professors attacked in the FAC were hired because of their race (and sometimes their gender). *Id.* ¶¶ 21-42. These conclusory allegations do not establish a "substantial risk" that Individual A or C will be discriminated against in the future. *See Doe v. N.Y.U.*, 2024 WL 2847368, at *5 (S.D.N.Y. May 30, 2024) (*NYU III*) ("[C]onsidering the lack of any well-pleaded allegations of a discriminatory selection process, [plaintiff's] purported injury likewise rests on nothing more than speculation and conjecture.").

*Second*, Individuals A, B, and C lack standing for the independent reason that they fail to plausibly allege they were qualified to teach at Northwestern. As the Seventh Circuit has explained, to plead standing, a plaintiff must allege he was "qualified for the position sought." *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996) (citation omitted); *see also Houser v. Pritzker*, 28 F. Supp. 3d 222, 236-37 (S.D.N.Y. 2014) (collecting cases holding that "to establish an injury-in-fact," the "plaintiff must at least demonstrate that he met the minimum qualifications for the position ultimately denied") (citation omitted). "The basis for this qualification requirement is apparent. Absent direct evidence showing that a plaintiff was not hired or promoted because of a discriminatory employment practice, we assume that an unqualified plaintiff was not hired or promoted for the obvious reason—that he was unqualified." *Melendez*, 79 F.3d at 668.

FASORP fails to allege injury in fact because the FAC says little about Individual A, B, or C's qualifications. FASORP amended its complaint to include minimal information, including that Individual A "published more than 15 scholarly articles and one book"; that Individual B "published more than 30 scholarly articles," has "20 years of experience," and once "served as a

visiting professor at a top-five law school"; and that Individual C "published more than 50 scholarly articles or book chapters and one book," has "20 years of experience," and once "served as a visiting professor at a top-five law school." Dkt. 25 ¶¶ 109-111. But these vague amendments are insufficient to support a plausible allegation that they were "qualified for the position sought." *Melendez*, 79 F.3d at 668 (citation omitted). Indeed, FASORP does not allege their areas of expertise; where they earned their J.D.s (or Ph.D., if applicable); their academic record and class ranking; what law reviews they published in, how frequently they have been cited, or any other indication of scholarly impact; or whether they have been offered lateral positions at any peer schools. The FAC does not even allege where they currently teach, stating only they teach at "ABA-accredited law school[s]." Dkt. 25 ¶¶ 100, 102, 104. But there are 197 ABA accredited law schools,[2] and Northwestern is ranked ninth.[3] FASORP's allegations thus fall short of what is required to show they are qualified to teach at the Law School and thus to plead standing. *See Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 506 (S.D.N.Y. 2022) (dismissing Section 1981 challenge to fellowship program on standing grounds where plaintiff provided "very little facts showing that [its] members—from undisclosed universities, with unnamed majors or courses of study, with little to no details about their career and educational goals, employment history, or interests—were ready and able to apply"), *aff'd on other grounds*, 96 F.4th 106 (2d Cir. 2024).

---

[2] *ABA-Approved Law Schools: Number of ABA-Approved Law Schools*, Am. Bar. Ass'n, https://www.americanbar.org/groups/legal_education/resources/aba_approved_law_schools (last visited Oct. 24, 2024). The Court may take judicial notice of this fact because it is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

[3] Northwestern University (Pritzker), U.S. News & World Report, https://www.usnews.com/best-graduate-schools/top-law-schools/northwestern-university-03050 (last visited Oct. 24, 2024). The Court may take judicial notice of this fact for the reasons stated above. *See supra* at 9 n.2.

The absence of basic information regarding Individuals A, B, and C is particularly striking given that the FAC is premised on the baseless assertion that certain Black law professors Northwestern hired were unqualified based on the ranking of the law school they attended and their academic and publication records. Dkt. 25 ¶¶ 21, 23, 26, 34, 36, 37, 40, 42. Because FASORP's "threadbare" allegations are insufficient to establish an Article III injury, its claim should be dismissed. *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at \*5-8 (dismissing FASORP's claims against Harvard Law Review because FASORP alleged only that a member "intend[ed] to apply," but did not provide details on the member's "academic background," "test scores," or other qualifications).

### B. FASORP Lacks Standing To Challenge The Law Review's Member And Editor Selection.

FASORP lacks standing to challenge the Law Review's member- and editor- selection process because it does not allege that any of its members are or were students at Northwestern— much less that they "applied for, or were rejected from, the Law Review[]." *NYU II*, 11 F.4th at 77. That alone is sufficient to dismiss any claims regarding member selection. While FASORP points to one white male student whose Law Review application was rejected despite having high grades, that student is not alleged to be a FASORP member. Dkt. 25 ¶ 83. And FASORP does not identify any student—whether or not a FASORP member—who was denied a specific editorial position, such as Articles Editor, on allegedly discriminatory grounds.

FASORP nonetheless contends that it has standing because its members' "submissions [of articles] will be judged by students with lower academic credentials" given that the Law Review has "subordinate[d] academic merit" to "race and sex preferences." *Id.* ¶ 113. FASORP made this same dubious argument in the Southern District of New York and the Second Circuit, and both courts rejected it. *NYU II*, 11 F.4th at 73, 77; *NYU I*, 2020 WL 1529311, at \*5-6. After all, "there

10

is no legal right to have one's article reviewed or published by a student-run academic law journal," much less a right to have them reviewed by the "most 'capable' students." *NYU I*, 2020 WL 1529311, at \*5-6; *see NYU II*, 11 F.4th at 77. FASORP likewise lacks standing here.

### C. FASORP Lacks Standing To Challenge The Law Review's Article Selection.

The FAC confirms that FASORP lacks standing to challenge the Law Review's article-selection process. FASORP contends that Individuals A, B, and C submitted articles to the Law Review at some point and that the "vast majority were rejected." Dkt. 25 ¶¶ 114-116. FASORP thus implicitly concedes that at least one of their articles was accepted. Regarding the allegedly rejected articles, FASORP does not say when they were rejected or whether they were accepted elsewhere, much less at a peer journal. Finally, while the FAC alleges that the editors of Volume 118 published an issue "consist[ing] only of articles written by black women," *id.* ¶ 84, FASORP does not allege that its members submitted articles to that issue and were rejected.

FASORP's allegations regarding its members' submissions are impossible to square with its allegations that the Law Review applied race-restrictive criteria, as FASORP alleges no facts suggesting that its members' race and gender were the reason that some (but not all) of their articles were rejected. Absent any such allegation, FASORP cannot show a past injury. FASORP similarly fails to show an imminent risk of future injury. FASORP alleges that Individuals A, B, and C are preparing articles to submit between February 2025 and February 2026, but it provides no other information regarding these plans, such as the subject matter of the articles or range of law reviews to which they will be submitted. *Id.* at ¶¶ 114-16. FASORP also alleges no facts supporting the claim that the Law Review is likely to discriminate based on race or gender if its members ever actually submit articles in the future—indeed, the facts alleged indicate otherwise, as the FAC acknowledges the Law Review's non-discrimination policy and implicitly concedes that at least

one member had an article accepted. Dkt. 25 ¶¶ 80, 115; *see NYU III*, 2024 WL 2847368, at *4-5 (dismissing for lack of standing because alleged harm was too conclusory); *NYU II*, 11 F.4th at 76 (affirming dismissal of FASORP's challenge to NYU Law Review's article-selection process); *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *7 (same for Harvard Law Review).

Finally, while FASORP contends that Individuals A, B, and C are a "representative sample" and it has other members who have suffered harm, Dkt. 25 ¶ 118, it cannot rely on unidentified members for standing. *See Summers*, 555 U.S. at 498 (requiring "specific allegations establishing that at least one identified member had suffered or would suffer harm").

## II.     FASORP FAILS TO STATE A CLAIM ON THE MERITS.

Even if FASORP has standing, its claims should be dismissed on the merits.

### A.     The Claims Against The Individual Defendants Should Be Dismissed.

The claims against individual defendants, brought against them solely in their official capacities, should be dismissed for two independent reasons.

*First,* as the Seventh Circuit has explained, "an official capacity suit is another way of pleading an action against an entity of which the [individual] is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citation omitted). For that reason, official-capacity claims are typically treated as redundant of claims against the institution and dismissed. *See Thanongsinh v. Bd. Of Educ.*, 462 F.3d 762, 771 & n.7 (7th Cir. 2006) (affirming dismissal of official-capacity claim as "synonymous with [the] claim against the public entity itself"); *Mojsoski v. Ind. Wesleyan Univ.*, 2022 WL 17338426, at *11 (N.D. Ind. Nov. 30, 2022) ("[C]ourts have consistently held that in discrimination-based civil rights actions, a defendant's employees cannot be sued in their official capacity because doing so would be redundant of suing the employer itself."). This Court should therefore dismiss the claims against the individual defendants.

*Second*, because Title VI and Title IX "only protect[] against discrimination" by federally-funded entities, Title VI and Title IX claims "can only be brought against a grant recipient and not an individual." *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997); *see C.S. v. Couch*, 843 F. Supp. 2d 894, 905 n.14 (N.D. Ind. 2011). These claims should be dismissed for that reason, too.

### B. FASORP Fails To State A Title VI Claim Against Any Defendant.

Title VI prohibits racial discrimination in federally-funded programs. *See* 42 U.S.C. § 2000d. Seventh Circuit precedent prohibits FASORP from bringing a faculty hiring claim under Title VI, and FASORP's conclusory allegations regarding race-based discrimination in faculty hiring and Law Review member, editor, and article selection fail to state a Title VI claim.

### 1. FASORP Cannot Bring An Employment Claim Under Title VI.

FASORP's faculty hiring claim fails because FASORP falls outside Title VI's zone of interests and Title VI does not provide a remedy for employment discrimination here.

#### a. *FASORP Falls Outside Title VI's Zone of Interests.*

FASORP falls outside the zone of interests that Title VI protects. "[T]o bring a private action under Title VI[,] 'the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program.'" *Doe v. St. Joseph's Hosp. of Ft. Wayne*, 788 F.2d 411, 418-19 (7th Cir. 1986) (citation omitted), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996). Courts routinely dismiss Title VI claims brought by teacher plaintiffs who were neither intended beneficiaries of, nor participants in, a federally-funded program. *See, e.g.*, *Veljkovic v. Bd. Of Educ. Of Chi.*, 2020 WL 7626735, at *4

13

(N.D. Ill. Dec. 22, 2020); *Agbefe v. Bd. Of Educ. Of Chi.*, 538 F. Supp. 3d 833, 839 (N.D. Ill. 2021).

FASORP asserts that its members are intended beneficiaries of, and participants in, a federally-funded program simply because they are faculty members at *other* universities that receive federal research grants. Dkt. 25 ¶¶ 125, 127. Even assuming (incorrectly) that would suffice to sue *those* universities, it does not suffice to sue *Northwestern*. *See Ahern v. Bd. Of Educ. Of Chi.*, 133 F.3d 975, 976 (7th Cir. 1998) (considering whether *the defendant* received federal financial assistance). To conclude otherwise would make any entity liable under Title VI whenever someone happens to apply to that entity *from* any institution receiving federal funds.

Alternatively, FASORP contends that its members are "applicants" for a federally-funded program simply because they applied to Northwestern's faculty. Dkt. 25 ¶ 125. Even if FASORP had sufficiently alleged that any member applied for the faculty, *see supra* 6-10, they would be "applicants" not to a federally-funded program, but rather to an institution that happens to receive federal funds. If merely applying for a position at a university that receives federal funds could bring a plaintiff within Title VI's zone-of-interests, then every applicant for every university job could sue under Title VI. That is not the law. *See Doe*, 788 F.2d at 420 (physician-employee not within Title VI zone-of-interests where no allegation that physicians are intended beneficiaries of any federally-funded program of the employee's hospital); *Miller v. Phelan*, 845 F. Supp. 1201, 1207 (N.D. Ill. 1993) (rejecting Title VI claim of applicant to municipal transportation authority board because "the most likely beneficiaries [of federal funding] … are the riders").

     b.     *Title VI Does Not Cover FASORP's Employment Claim.*

Even if FASORP members fell within Title VI's zone-of-interests, its hiring claim fails for an independent reason: "Title VI does not provide a judicial remedy for employment

14

discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." *Ahern*, 133 F.3d at 978 (citation omitted). This rule maintains the separation between Title VI and Title VII, the primary statute governing employment discrimination. *See Agbefe*, 538 F. Supp. 3d at 838. Neither exception to that rule applies here.

*First*, FASORP does not plausibly allege that the primary objective of Northwestern's federal funding is to provide employment. Without identifying a single specific grant received by Northwestern, FASORP contends that the primary purpose of federal research grants generally is "to employ university faculty." Dkt. 25 ¶ 129. Courts have consistently rejected this argument. *See, e.g.*, *Meyerson v. State of Ariz.*, 709 F.2d 1235, 1237 (9th Cir. 1983) ("[P]roviding employment was not one of the primary objectives of the instructional and research grants made by the government to the University."), *judgment vacated*, 465 U.S. 1095 (1984)[4]; *Chuang v. Regents of Univ. of Cal.*, 1998 WL 1671745, at *14 (E.D. Cal. Oct. 30, 1998) (same, noting that many professors "already have fully-funded teaching or research positions independent of any federal grants"), *rev'd on other grounds*, *Chuang v. Univ. of Cal. Davis, Bd. of Tr.*, 225 F.3d 1115 (9th Cir. 2000); *Moxley v. Vernot*, 555 F. Supp. 554, 559-60 (S.D. Ohio 1982) (purpose of federal funding was to support research on toxic gases, not to provide employment). As the Ninth Circuit explained, the primary purpose of such grants is to "further scientific research and assist in the

---

[4] The Ninth Circuit's decision in *Meyerson* was vacated and remanded in light of *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 631-37 (1984), which held that plaintiffs could bring Rehabilitation Act claims for employment discrimination without showing that the federal funding's primary purpose was to provide employment, as they must under Title VI. *Consolidated Rail* did not call into question *Meyerson*'s reasoning that providing employment is not the primary purpose of federal research grants.

training" of students. *Meyerson*, 709 F.2d at 1237. Any "minimal and incidental effect on employment" is not enough to satisfy the "primary objective" requirement; if it were, almost any federal assistance would qualify since "almost all federal assistance results in an increase of at least some employment." *Id.*; *see also* 34 C.F.R. § 100.3(c) (providing narrow list of statutes with primary purpose of providing employment). For these reasons, FASORP fails to show the Law School received aid for which providing employment is a primary objective.

*Second*, FASORP does not allege that the Law School's hiring practices have had a discriminatory effect on its students, who are the primary beneficiaries of the federal aid. FASORP suggests that the Law School's hiring practices have resulted in its hiring "less capable" professors, Dkt. 25 ¶ 17; *see id.* ¶¶ 23, 36, 40, 42, but does not allege that the presence of those supposedly less capable professors causes discrimination against students based on their race—an argument that would fail in any event. *See Cieslik v. Bd. of Educ. of Chi.*, 2021 WL 1172575, at *3 (N.D. Ill. Mar. 29, 2021) (rejecting argument that Title VI applied to employment discrimination claims because Chicago students received an "inferior education" due to discrimination against teachers because, even if there were such discrimination, that "chain of reasoning does not explain how students would be discriminated against on the basis of their race, color, or national origin").

Finally, even if FASORP could bring a Title VI suit, the faculty hiring allegations in the FAC are too nonspecific and conclusory to state a claim for the reasons discussed *supra* at 6-10. *See Nartey v. Franciscan Health Hosp.*, 2 F.4th 1020, 1023 (7th Cir. 2021) (affirming dismissal of Title VI claim due to conclusory allegations of discrimination).

### 2. FASORP Alleges Insufficient Facts To Support A Title VI Claim Regarding Law Review Member And Editor Selection.

FASORP does not identify any discriminatory policy in the selection of Law Review members or editors. FASORP concedes that the Law Review represents that it "does not

discriminate on the basis of race, ethnicity, religion, socioeconomic background, disability, nationality, sexual orientation, gender orientation and identity, or ideological perspective." Dkt. 25 ¶ 80. Nevertheless, FASORP contends that the Law Review uses "personal statements" to select new members based on their protected characteristics. *Id.* ¶¶ 81-82. But FASORP does not plead any specific facts necessary to support this conclusory assertion—a flaw that recently led a court to dismiss a materially identical claim against another law review. *See NYU III*, 2024 WL 2847368, at *6. As the court explained, "[a]lthough [plaintiff] alleges that the Law Review 'is using … statements of interest and résumés to give preferential treatment to [select minority groups]' … he offers no factual allegations in support of that assertion." *Id.* (third alteration in original). The same is true here: FASORP does not back up its conclusory assertions with specific allegations.

Indeed, the closest FASORP comes to a specific allegation is that, in 2021, the Law Review rejected "a white male student who had a first-year grade point average of over 4.0, while accepting female and minority students with much lower first-year grades." Dkt. 25 ¶ 83. Even if true, that allegation does not support a discrimination claim. As FASORP expressly admits, the Law Review selects new members based not just on grades, but also performance on a writing competition and personal statements. *Id.* ¶¶ 80-81. And FASORP does not allege that the white male student performed better, or even the same as, his female and minority colleagues on the writing competition. Thus, FASORP does not plausibly allege he was rejected based on race.

Moreover, the mere fact that the Law Review solicits personal statements does not itself suffice to state a discrimination claim. In *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023), the Supreme Court made clear that the law does not "prohibit[] universities from considering an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise," so long as "the student [is] treated

based on his or her experiences as an individual." *Id.* at 230-31. If claims attacking the use of personal statements could predicate Title VI claims, then every federally-funded program that uses personal statements and has expressed an interest in diversity "could be subjected to the costly and burdensome prospect of discovery." *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *8 n.16 (cleaned up). The law does not permit, let alone demand, that result.

### 3. FASORP Alleges Insufficient Facts To Support A Title VI Claim Regarding Article Selection.

FASORP's conclusory allegations regarding race discrimination in article selection are likewise insufficient to state a Title VI claim. FASORP does not allege that the Law Review rejected any specific article based on the author's race, and as FASORP concedes, the Law Review expressly represents that it "does not discriminate on the basis of race." Dkt. 25 ¶ 83. FASORP's charge—unsupported by any facts—that the Law Review "gives discriminatory preferences to articles written by women, racial minorities, homosexuals, or transgender people," *id.* ¶ 97—is not sufficient to state a claim, as FASORP has been told in its other cases. *See NYU I*, 2020 WL 1529311, at *7 ("FASORP fails to proffer any factual allegation describing the Law Review's article-selection process other than alleging that the Law Review receives background information of the authors and asserting in a conclusory way that the process is discriminatory"); *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *9 ("The complete absence of 'factual material' … is fatal to [FASORP's] claim of discriminatory article selection.").

Again, FASORP makes only one even remotely specific allegation: that in the 2023-2024 academic year, the editors of Volume 118 published an issue "consist[ing] only of articles written by black women." Dkt. 25 ¶ 84. But FASORP does not allege that the Law Review rejected any otherwise publication-worthy articles by authors of other races; to the contrary, FASORP admits that the Law Review did not announce a policy of selecting only articles written by Black women

for that issue. *Id.* Nor does FASORP allege that any of its members submitted articles for this issue. *See supra* at 11. And FASORP's newly-added plagiarism allegations regarding an accepted article are irrelevant, as they do nothing to demonstrate that the articles in Volume 118 were chosen as a result of discrimination. Absent any specific allegation suggesting the Law Review denied publication opportunities based on race, FASORP fails to state a Title VI claim.

### C. FASORP Fails To State A Title IX Claim Against Any Defendant.

Title IX prohibits discrimination on the basis of sex in federally-funded programs. *See* 20 U.S.C. § 1681(a). FASORP's Title IX faculty hiring claim should be dismissed because it is precluded by Title VII, and FASORP's conclusory allegations regarding faculty hiring and Law Review member, editor, and article selection fail to state a Title IX claim.

### 1. Title VII Precludes FASORP's Title IX Employment Claim.

FASORP's faculty hiring Title IX claim fails as a matter of law because Title VII precludes it. "Title VII precludes other causes of actions for employment discrimination to the extent that Title VII would provide an equivalent remedy." *Agbefe*, 538 F. Supp. 3d at 840.

FASORP asserts that its Title IX claim is not precluded because Title VII would not provide an equivalent remedy to what it seeks here—*i.e.*, "an injunction that restrains Northwestern University from accepting any federal funds" until it meets certain conditions FASORP wants to see imposed. Dkt. 25 ¶ 131. But "[o]nly the federal agencies providing the funds are expressly authorized to effect such a termination" of funding. *Guardians Ass'n of N.Y.C. Police Dep't, Inc. v. Civ. Serv. Comm'n of City of N.Y.*, 633 F.2d 232, 258 (2d Cir. 1980), *aff'd*, 463 U.S. 582 (1983); *NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1255 n.27 (3d Cir. 1979) (private plaintiff may not "invoke[e] the executive's power to terminate funds"); *Adams v. Bell*, 711 F.2d 161, 190 (D.C. Cir. 1983) ("[C]ourts that imply private suits against fund recipients generally will not enjoin payment of federal funds."). FASORP thus cannot obtain an injunction under Title IX

to force federal agencies to stop funding Northwestern. Nor can it seek to prevent Northwestern from receiving federal funds, as such a remedy would "encroach upon the powers of Congress and the President," *Abramson v. Bennett*, 707 F. Supp. 13, 16 (D.D.C. 1989). Moreover, at bottom, FASORP's demand just seeks an injunction to stop the alleged discrimination, which is available under Title VII, too. *See O'Sullivan v. City of Chi.*, 478 F. Supp. 2d 1034, 1039 (N.D. Ill. 2007) (noting that, where discrimination is found, Title VII has long "provided for injunctions to bar like discrimination in the future") (internal quotation marks omitted).

The conclusion that Title VII precludes FASORP's Title IX claim follows from the Seventh Circuit's repeated admonition that "*all* employment-discrimination claims must be brought under Title VII." *Brown v. Ill. Dep't of Hum. Servs.*, 717 F. App'x 623, 625-26 (7th Cir. 2018) (emphasis added) (citations omitted). It is also supported by the wall of cases dismissing Title IX employment claims as precluded by Title VII. *E.g.*, *Washington v. Bd. of Educ. of Chi.*, 2021 WL 5881682, at *4 (N.D. Ill. Dec. 8, 2021); *Saud v. DePaul Univ.*, 2019 WL 5577239, at *5 (N.D. Ill. Oct. 29, 2019) (collecting cases); *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 785 (N.D. Ill. 2015).

Finally, even if FASORP theoretically could bring a Title IX suit, the FAC's faculty hiring allegations are too vague and conclusory to state a claim for the reasons discussed *supra* at 6-10. *See infra* at 20-21 (collecting cases dismissing Title IX claims as "too vague and conclusory").

> **2.      FASORP Alleges Insufficient Facts To Support A Claim of Gender Discrimination In Member, Editor, And Article Selection.**

As with Title VI, FASORP's conclusory allegations regarding discrimination in the selection of Law Review members, editors, and articles do not suffice to state a Title IX claim. The Seventh Circuit has repeatedly affirmed dismissal of Title IX claims that are "too vague and conclusory." *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 811 (7th Cir. 2021); *see also Doe v. Columbia. Coll. Chi.*, 933 F.3d 849. 854 (7th Cir. 2019); *Gabrielle M. v. Park Forest-*

20

*Chicago Heights Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003). As explained above, FASORP's vague assertions about a single male student who is not a party and a single Law Review issue to which none of its members are alleged to have submitted articles are insufficient to show sex discrimination. *See supra* at 10-11. Accordingly, these claims should be dismissed.

### D. FASORP Fails To State A Section 1981 Claim Against Any Defendant.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *see McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976). FASORP fails to state a Section 1981 claim.

### 1. FASORP Fails To Adequately Allege A Section 1981 Discrimination Claim Regarding Faculty Hiring.

FASORP fails to state a Section 1981 claim as to faculty hiring for two independent reasons. "The legal analysis for discrimination claims under Title VII and § 1981 is largely identical," with the exception of the more stringent but-for causation requirement that Section 1981 claimants must meet. *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). Under either statute, to bring a failure-to-hire claim based on indirect evidence of discrimination, a plaintiff must plead "(1) he is a member of a protected class; (2) he applied for, and was qualified for, an open position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained vacant." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). FASORP fails to adequately allege that Individual A, B, or C—or any other FASORP member—applied or was qualified for any open position. In addition, FASORP fails to plausibly allege that race was the but-for cause of its members not being hired—as required under Section 1981.

a.  *FASORP Does Not Plausibly Allege That Any Member Applied To, Or Was Qualified For, Any Position At The Law School*

FASORP's Section 1981 hiring claim fails because it does not adequately allege that any of its members applied to and were qualified for a Law School position. Courts routinely dismiss Section 1981 claims for failure to meet this pleading requirement. *See, e.g.*, *Payne v. Abbott Lab'ys*, 999 F. Supp. 1145, 1152 (N.D. Ill. 1998) (dismissing complaint for failure to allege "specific instances or facts regarding when plaintiffs applied for promotions"); *Ivens v. GK N. Childcare Corp.*, 2022 WL 602913, at \*2 (N.D. Ind. Mar. 1, 2022) (same). Absent adequate allegations regarding FASORP members applying and being rejected despite being qualified, FASORP cannot show that any member was not hired due to race—especially when the Law School has interviewed, extended offers to, and hired white male candidates over the years in question. Dkt. 25 ¶¶ 45-48.

Although FASORP amended its complaint to state that Individuals A and C (but not B) applied, those allegations are insufficient for the reasons described above. FASORP alleges they applied for entry-level positions, but fails to allege when or whether those applications overlapped with those of the Black professors identified in the FAC. FASORP's claims based on entry-level applications are also likely time-barred.[5] Nor do FASORP's claims that Individuals A and C expressed "interest" in lateral positions to unnamed faculty at some unspecified time suffice. *See*

---

[5] FASORP alleges, for instance, that Individual C has been teaching for 20 years, Dkt. 25 ¶ 111, so any entry-level application by him falls well outside Section 1981's four-year statute of limitations. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891 (7th Cir. 2016); *see also Monroe v. Columbia Coll. Chi.*, 990 F.3d 1098, 1099-1100 (7th Cir. 2021) (two-year statute of limitations for Title VI); *Small v. Chao*, 398 F.3d 894, 898-99 (7th Cir. 2005) (same for Title IX).

*supra* at 7-8 (noting lack of sufficient detail regarding how and when Individuals A and C allegedly applied).

Similarly, FASORP does not plausibly allege that any of its members were qualified. *See supra* at 8-10 (summarizing missing information regarding qualifications). Courts routinely dismiss Section 1981 employment discrimination claims that fail to adequately allege the plaintiff's qualifications. *See, e.g.*, *Barnes v. Solo Cup Co.*, 2013 WL 2156054, at *3 (N.D. Ill. May 16, 2013) (plaintiff failed to allege he was "similarly situated to, or more qualified than," an employee of a different race who was promoted); *Jones v. Michael Reese Hosp.*, 1991 WL 105583, at *3 (N.D. Ill. June 7, 1991) (plaintiff "fail[ed] to allege that she was qualified" for the job); *Brown v. Ferrara Candy Co.*, 2023 WL 6519973, at *9 (N.D. Ill. Oct. 5, 2023) (plaintiff "d[id] not elaborate on his qualifications for the job"). The Court should do the same here.

> b.    *FASORP Fails To Adequately Allege But-For Causation.*

FASORP also fails to adequately allege but-for causation. A Section 1981 plaintiff must "plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see Sanchez v. Tootsie Roll Indus., LLC*, 2021 WL 4936240, at *5 (N.D. Ill. May 18, 2021) ("Even at the pleading stage, the causation requirement is robust."). To satisfy Section 1981's but-for causation requirement, a plaintiff must plausibly allege the defendant would have made a different decision had the plaintiff been a different race. *Comcast*, 589 U.S. at 336-37.

FASORP does not plead *any* facts suggesting that Individual A, B, or C would have been hired but for their race. As noted above, FASORP fails to adequately allege when or how Individuals A and C actually applied. *See supra* at 7-8. Even if it had, their applications could have been denied for any number of legitimate reasons, including that they did not teach in a subject area where faculty were needed, did not teach at a sufficiently highly ranked school, or did not

otherwise have an adequate publication or academic record. FASORP thus cannot satisfy Section 1981's but-for causation requirement. *See Onyango v. Nick & Howard, LLC*, 607 F. App'x 552, 555 (7th Cir. 2015) (rejecting Section 1981 claim because plaintiff failed to "plausibly allege" that defendant's action and plaintiff's injury were "causally connected"); *Sanchez*, 2021 WL 4936240, at *6 (dismissing Section 1981 claim for failure to allege race was the but-for cause of termination). Nor do FASORP's irrelevant and invidious charges of plagiarism against one newly hired Black professor somehow help FASORP establish that race was the reason its members were not hired.

Finally, FASORP points to charts allegedly showing "how Northwestern has conducted its interviews and hiring decisions over the last three academic years," ostensibly to establish but-for causation through statistics. Dkt. 25 ¶ 46. In doing so, FASORP pleads itself out of court, as its statistics discredit any suggestion of but-for causation. *See id.* (showing white applicants received a majority of all offers and at least half of offers each year, and white interviewees had a higher offer rate than non-white interviewees). And no matter how they are sliced, FASORP's statistics fall far short of being "of a level that makes other plausible non-discriminatory explanations very unlikely." *Alameda v. Ass'n of Soc. Work Bds.*, 2024 WL 4302389 (S.D.N.Y. Sept. 25, 2024) (dismissing Section 1981 claim grounded in statistics for failing "to plausibly plead the intentional discrimination necessary") (internal quotation marks omitted).

Absent allegations supporting but-for causation, FASORP's Section 1981 hiring claim should be dismissed.

### 2. FASORP Alleges Insufficient Facts To Support A Section 1981 Discrimination Claim Regarding Law Review Member, Editor, Or Article Selection.

FASORP fails to state a Section 1981 claim as to the selection of student members and editors of the Law Review. *First*, FASORP alleges no contractual relationship between the student members and the Law Review. "Any claim brought under § 1981 … must initially identify an

24

impaired 'contractual relationship,' [] under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (citations omitted). Because FASORP fails to do so, its claim should be dismissed. *See Collier v. Rodriguez*, 1996 WL 535326, at *3 (N.D. Ill. Sept. 18, 1996) (dismissing Section 1981 claim because "no contracts are at issue here"). *Second*, even if FASORP identified a contractual relationship, FASORP's Section 1981 claim still fails, as it does not sufficiently allege race was the but-for cause of any student's rejection from the Law Review, let alone a FASORP member's rejection. *See Comcast*, 589 U.S. at 341; *supra* at 10-11.

Finally, FASORP's conclusory allegations regarding discrimination in article selection are insufficient to state a Section 1981 claim. FASORP does not allege that the Law Review imposes any race-based qualifications on articles. As noted above, the most FASORP alleges is that Volume 118 had an issue "consist[ing] only of articles written by black women." Dkt. 25 ¶ 84. But FASORP does not adequately allege that the Law Review rejected any publication-worthy articles by authors of other races for this issue—or any other issue—let alone that FASORP members were deprived of any opportunity to enter a contract with the Law Review based on their race.

## CONCLUSION

The FAC lacks merit. It serves only as a vehicle to baselessly malign professors due to their race and gender and to advance the political agenda of FASORP and the organizations behind it. Because the law requires more to maintain an action in federal court, this Court should dismiss the complaint, either without leave to amend if dismissed for lack of standing, or with prejudice if dismissed on the merits. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). FASORP has already had one opportunity to amend its complaint following a motion to dismiss, and having failed to cure its core deficiencies, it should not be given a third bite at the apple. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015) (citing cases dismissing FACs with prejudice).

Dated: October 28, 2024                    Respectfully submitted,


By: */s/ Danielle Conley*

Danielle Conley (*admitted pro hac vice*)
Jude Volek (*admitted pro hac vice*)
Christine C. Smith (*admitted pro hac vice*)
Jasmine D. Benjamin (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Phone: (202) 637-2200
Facsimile: (202) 637-2201
danielle.conley@lw.com
jude.volek@lw.com
christine.smith@lw.com
jasmine.benjamin@lw.com

Sean Berkowitz (ARDC No. 6209701)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611-3695
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
sean.berkowitz@lw.com

*Counsel for Defendants Northwestern University, Hari Osofsky, Sarah Lawsky, Janice Nadler, Daniel Rodriguez, Dheven Unni, and Jazmyne Denman*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I filed the foregoing with the Clerk of Court by using the CM/ECF system and sent via electronic transmission to all parties of record.

/s/ *Danielle Conley*
Danielle Conley (*admitted pro hac vice*)