**IN THE UNITED STATED DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES (FASORP),

Plaintiff,

v.

NORTHWESTERN UNIVERSITY; HARI OSOFSKY, in her official capacity as dean of Northwestern University School of Law; SARAH LAWSKY, JANICE NADLER, and DANIEL RODRIGUEZ, in their official capacities as Professors of law at Northwestern University; DHEVEN UNNI, in his official capacity as editor in chief of the Northwestern Law Review; JAZMYNE DENMAN, in her official capacity as senior equity and inclusion editor of the Northwestern Law Review,

Defendants.

Case No. 24-cv-5558

District Judge Sara Ellis

**BRIEF OF *AMICI CURIAE* PROFESSORS MYRIAM GILLES AND PAUL GOWDER IN SUPPORT OF DEFENDANTS**

## Table of Contents

INTERESTS OF AMICI CURIAE ........ 1

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 5

Background of the Lawsuit ........ 5

The Smear Campaign Against Black Legal Academics ........ 6

1. Professor Paul Gowder ........ 6
2. Professor Jamelia Morgan ........ 7
3. Professor Myriam Gilles ........ 8
4. Professor Norrinda Brown ........ 11

ARGUMENT ........ 12

The Court Should Order FASORP to Show Cause Why Sanctions Should Not Be Imposed Under Fed. R. Civ. P. 11(b)(1) and 11(c)(3) ........ 12

CONCLUSION ........ 14

## Table of Authorities

### Cases

*Collins v. Daniels*,
916 F.3d 1302 (10th Cir. 2019)........13

*FASORP v. Harvard Law Review Ass'n,*
2019 WL 3754023 (D. Mass. Aug. 8, 2019) ........ 4, 14

*FASORP v. NYU Law Review,*
2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020), *aff'd,* 11 F.4th 68 (2d Cir. 2021), *cert. denied* 142 S.Ct. 2813 (2022) ........ 4, 14

*Huon v. Denton*,
841 F.3d 733 (7th Cir. 2016) ........ 6

*King v. Whitmer*,
556 F. Supp. 3d 680 (E.D. Mich. 2021)........13

*Lake v. Fontes*,
No. CV-22-00677-PHX-JJT, 2023 U.S. Dist. LEXIS 122594 (D. Ariz. July 14, 2023)........13

*Lowery v. Texas A&M Univ.*,
No. 23-20481, 2024 U.S. App. LEXIS 27565 (5th Cir. Oct. 30, 2024) ........ 4, 14

*Mullins v. Direct Dig., Ltd. Liab. Co.*,
795 F.3d 654 (7th Cir. 2015) ........ 10

*Rawls v. Kegerise*,
No. 1:13-cv-2867, 2014 U.S. Dist. LEXIS 179764 (M.D. Pa. Aug. 25, 2014)........14

*Students for Fair Admissions v. President & Fellows of Harvard College*,
600 U.S. 181 (2023) ........ 5

*Teno v. Iwanski*,
464 F. Supp.3d 924 (E.D. Tenn. 2020)........ 13

*Trump v. Clinton*,
653 F. Supp. 3d 1198 (S.D. Fla. 2023), *appeal dismissed*, 2023 U.S. App. LEXIS 12279, 2023 WL 3477967 (11th Cir. Apr. 6, 2023)........ 1, 2, 4, 14

### Other Authorities

An Historian, *Rufo, Plagiarism and the Strange Death of US News Media*, MEDIUM, Dec. 22, 2023 .......... 11

Brian Leiter's Law School Reports, Sept. 4, 2018 .......... 9, 10

Laura Meckler & Susan Svrluga, Northwestern's Law School Is Biased Against White Men in Hiring, WASH. POST, July 2, 2024 .......... 3, 7

Karen Sloan, *Northwestern Law School Sued for Discrimination Against White Men in Faculty Hiring*, REUTERS, July 3, 2024 .......... 4,5

Karissa Waddick, *Harris' Campaign Rebuts Plagiarism Claims*, USA TODAY, Oct. 16, 2024 .......... 11

Kathryn Rubino, *Top Law School in Turmoil as Allegations Of 'Toxic' Environment Surface*, ABOVE THE LAW, Mar. 14, 2024 .......... 5

## INTERESTS OF AMICI CURIAE

*Amicus curiae* Myriam E. Gilles ("Professor Gilles") is the Paul R. Verkuil Chair in Public Law at the Benjamin N. Cardozo School of Law in New York City. *Amicus curiae* Paul Gowder ("Professor Gowder") is a Professor at the Northwestern Pritzker School of Law in Chicago. Amici support the motion to dismiss filed by defendant Northwestern Law School in all respects, including that the Amended Complaint fails to state a claim upon which relief can be granted. While the legal issues are straightforward, as set forth in Northwestern's motion, Amici believe the Court will benefit from consideration of the interests of current and future Black academics, whose reputations and professional prospects suffer when FASORP is able, without consequence, to further its political agenda by publishing allegations, couched as facts, to the effect that Black law professors are unqualified for the positions they hold.

## PRELIMINARY STATEMENT

The Amended Complaint is a white grievance polemic dressed up as a federal lawsuit. Like other litigation emanating from FASORP, its parent organization America First Legal, and their co-venturers, this "case should never have been brought. Its inadequacy as a legal claim was evident from the start. No reasonable lawyer would have filed it. Intended for a political purpose, none of the counts of the amended complaint state[] a cognizable legal claim." *Trump v. Clinton*, 653 F. Supp. 3d 1198 (S.D. Fla. 2023) (imposing Rule 11 sanctions on the plaintiff), *appeal dismissed*, 2023 U.S. App. LEXIS 12279, 2023 WL 3477967 (11th Cir. Apr. 6, 2023).

Social media platforms like X or Truth Social are the more natural home for a race-baiting diatribe that begins "Faculty hiring at American universities is a cesspool of corruption and lawlessness," AC ¶ 1, and which then proceeds to attack every Black scholar recently hired by Northwestern Law School as unworthy of their positions. But the publication of such remarks on the internet would expose the speaker to liability for defamation—and defamation per se at that. A lawsuit, by contrast, affords the libeler absolute immunity. Hence this case.

Winning a discrimination lawsuit is not FASORP's objective. It clearly lacks standing and fails to state a claim, as defendant Northwestern has shown. FASORP's objective, rather, is to sow fear in law school hiring committees and push back against the inclusion of Black scholars within the rarefied ranks of elite law faculties. And more than that, FASORP seeks to destroy the reputation of Amici and other Black scholars. As in *Trump v. Clinton*, numerous individuals here "were needlessly harmed in order to dishonestly advance a political narrative." 653 F. Supp. 3d at 1207.

FASORP barely hides its agenda. It seeks to denigrate the achievements of even the most objectively accomplished Black law professors, blithely asserting that every one of them "was hired over white male candidates who are vastly more capable and qualified." AC ¶¶ 23, 36, 40, 42. It aims to humiliate Black scholars and undermine their standing in the academy, asserting they "would not have been considered for a faculty appointment at Northwestern if [they] had been white." AC ¶¶ 23, 36, 40. Scholars whose work is widely respected—like Jamelia Morgan, a recognized pioneer in the study of Race and Disability, or Paul Gowder, a prolific

scholar who was elected to the American Law Institute for his work at the intersection of democratic theory and racial equality, or Myriam Gilles, who is among the five most cited civil procedure scholars in the U.S.—are attacked as undeserving "affirmative action hires." AC ¶ 40 and p. 18. Another Black scholar is smeared as "lazy." AC ¶ 34.

In its bid to discredit Black academics, FASORP leans heavily on "weaponized plagiarism" allegations—a tactic increasingly popular in racially charged political confrontations.[1] Practitioners of this dark art begin by running an author's body of work through powerful AI-enabled software products. They then locate and highlight instances where the author has employed commonly used phrases to describe uncontroversial background facts, or to make mundane preliminary points. As deployed in recent years against Kamala Harris, former Harvard President Claudine Gay, Representative Jamaal Bowman and other prominent Black professionals, weaponized plagiarism does not ask whether ideas are taken without attribution, as would be the concern in a real plagiarism inquiry. Rather, weaponized plagiarism leverages advanced technology to present inconsequential similarities of the type that can easily be found in legal scholarship.

The plaintiff's litigation history shows that it well understood, at the time it filed this lawsuit, that its complaint lacks legal merit. Its similar attacks on the NYU and Harvard law reviews were both dismissed on standing grounds and for failure to

---

[1] Laura Meckler & Susan Svrluga, *Northwestern's Law School Is Biased Against White Men in Hiring*, WASH. POST, July 2, 2024, available at https://wapo.st/4htcvAb.

state a claim. *See FASORP v. NYU Law Review,* 2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020), *aff'd,* 11 F.4th 68 (2d Cir. 2021), *cert. denied* 142 S.Ct. 2813 (2022); *FASORP v. Harvard Law Review Ass'n,* 2019 WL 3754023 (D. Mass. Aug. 8, 2019); *see generally*, Defs' Br., Doc. 33, at 10-12. And just last week, the Fifth Circuit affirmed the decision of District Judge Charles Eskridge dismissing a hiring discrimination claim against Texas A&M—a claim very similar to the claim here—which was also brought by FASORP's Jonathan Mitchell and America First Legal. *Lowery v. Texas A&M Univ.*, No. 23-20481, 2024 U.S. App. LEXIS 27565, at *1 (5th Cir. Oct. 30, 2024).

Nonetheless, as in *Trump v. Clinton*, plaintiff here was undeterred by the lack of legal merit because "[t]he Complaint and Amended Complaint were drafted to advance a political narrative; not to address legal harm caused by any Defendant." 653 F. Supp. 3d at 1211. And FASORP intends to continue its campaign of bringing meritless litigation in order to chill faculty hiring committees. Indeed, FASORP counsel Jonathan Mitchell has announced that this case is only the "first of many lawsuits."[2]

Accordingly, Amici respectfully suggest that the Court consider, of its own accord, directing FASORP under Fed. R. Civ. P. 11(c)(3) "to show cause why" its pleadings in this case are "not being presented for any improper purpose," within the meaning of Rule 11(b)(1).

[2] Karen Sloan, *Northwestern Law School Sued for Discrimination Against White Men in Faculty Hiring*, REUTERS, July 3, 2024, available at https://reut.rs/4fvlCyp.

## FACTUAL BACKGROUND

***Background of the Lawsuit***

On June 30, 2023, America First Legal "sent a demand letter to the deans of" some 200 law schools, demanding that they overhaul their "faculty hiring, and law-review membership and article selection" processes to comport with the Supreme Court's decision in *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023).[3] The letters were sent one day after the Court released its decision, the latest in a line of Supreme Court cases grappling specifically with the permissible use of racial considerations in university admissions processes.

America First Legal and its client organization, FASORP, then initiated the instant case against Northwestern, billing it as the "first of many lawsuits" challenging faculty hiring practices at U.S. law schools.[4] Northwestern presented an easy target for America First and FASORP's intimidation campaign. With a faculty famously riven by the culture wars,[5] America First and FASORP could reasonably expect to find sympathizers at Northwestern willing to share their own distorted accounts of private meetings and confidential committee records in a bid to embarrass their colleagues. And they did. The Amended Complaint includes anonymous (and dubious) accounts of numerous closed-door meetings (see, e.g., AC ¶¶ 20, 22, 23, 31, 37, 39) and the contents of confidential committee logs. *Id.*, ¶ 46. The message from

---

[3] America First Legal, available at https://bit.ly/Am_First_Legal.

[4] Sloan, *supra* note 2.

[5] *See e.g.*, Kathryn Rubino, *Top Law School in Turmoil as Allegations Of 'Toxic' Environment Surface*, ABOVE THE LAW, Mar. 14, 2024, available at https://bit.ly/NW_Toxic.

America First and FASORP to law school hiring committees nationwide is a clear one: 'We have fellow travelers among your ranks and we will obtain their slanted accounts of your most private hiring conversations until you adopt our preferred hiring criteria and racial norms.'

***The Smear Campaign Against Black Legal Academics***

Beyond seeking to intimidate hiring committees, the Amended Complaint aims to humiliate and denigrate Black law professors. Every Black professor associated with or offered a position by Northwestern Law School is, on the telling of America First and FASORP, "mediocre," and "undistinguished," AC ¶¶ 14, 16, 49, and each "was hired over white male candidates who are vastly more capable and qualified," and each "would not have been considered for a faculty appointment at Northwestern if [he or she] had been white." AC ¶¶ 23, 36, 37, 40, 42.

If FASORP's pronouncements as to the Amici here had been made outside the judicial arena, they would be actionable—not because they are offensive, but because they meet the elements of defamation per se under applicable law. See *Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016). Their defamatory nature is clear from even a cursory look at the professors whose professional competence FASORP maligns. We discuss them here in the order in which they appear in the Amended Complaint.

**1. *Professor Paul Gowder***

FASORP has very little to say about Professor Paul Gowder, except to state that he "produced scholarship and obtained tenure from Iowa in 2017" before being

"hired by Northwestern because he is black." AC ¶ 37. FASORP's denigration of Professor Gowder is shocking in its blitheness. Professor Gowder, who earned his Ph.D. in political science at Stanford and his law degree at Harvard, is the author of roughly forty published articles and three vibrant and original books.[6] The winner of distinguished awards and honors in recognition of his scholarship,[7] Professor Gowder is a gifted and prolific legal academic. Plainly, Northwestern scored a great coup in hiring Professor Gowder away from Iowa—an excellent law school itself. As Professor Gowder said to Washington Post reporters who contacted him for comment after FASORP filed the complaint and its American First allies amplified it on social media: "My record speaks for itself. I would gleefully put it up against the records of any of the people who were supposedly passed over."[8]

**2. *Professor Jamelia Morgan***

Jamelia Morgan is a Professor of Law at Northwestern University Law School and the nation's leading scholar focused on issues at the intersection of race, disability, and the criminal justice system. She is the founder of the Center for Racial and Disability Justice, which actively and regularly provides programming around race, disability and criminal justice issues.[9] Professor Morgan is the author of

[6] Professor Gowder's curriculum vitae is available at https://gowder.io/#cv. *See also* https://bit.ly/Gowder_Pubs.

[7] Among other honors, Professor Gowder was awarded the 2022 Dorothy Ann and Clarence L. Ver Steeg Distinguished Research Fellowship Award in recognition of his scholarly contributions, as well as a $100,000 Knight Foundation grant to support his research. *Id.*

[8] Meckler & Svrluga, *supra* note 1.

[9] *See* Center for Racial & Disability Justice, https://www.crdjustice.org.

numerous well-placed and broadly cited articles and is much in demand as a participant in conferences and symposia in her field, as reflected on her curriculum vitae.[10]

An award-winning academic, Professor Morgan has been celebrated for her insightful and transformative analyses, especially on the constitutional implications of criminalizing disability identity and status. But beyond advancing scholarly discourse, her research and teaching inspire social activism. These contributions are of legitimate value to a law school; they engage students, energize alumni, and serve the broader community.

FASORP's real problem with Professor Morgan – and also with Professors Paul Gowder (AC ¶¶ 37) and Norrinda Brown (AC ¶¶ 85-96) — is that FASORP does not value the fields of study in which they are leading figures. To FASORP and America First, the study of race and the law (in its many iterations) is somehow illegitimate or less worthy than whatever legal disciplines they value. But a discrimination lawsuit is surely an odd vehicle for hashing out different views regarding what kinds of legal scholarship are worthy and important.

### 3. *Professor Myriam Gilles*

FASORP never specifies precisely what criteria it would employ in hiring, but it allegedly "seeks to restore meritocracy in academia." AC ¶ 98. And yet, on whatever definition of "merit" one might apply, Professor Gilles meets the standard.

[10] Professor Morgan's curriculum vitae is available at https://bit.ly/Morgan_cv.

One standard measure of academic distinction is the extent to which a scholar's published work is cited by others. *See* AC ¶ 15 (lauding Prof. Eugene Volokh, "whose academic works…are often cited by litigants, courts, and scholars"). According to the widely followed "Brian Leiter's Law School Reports," which tracks academic citations by discipline, Professor Gilles is either the fifth or sixth most cited civil procedure scholar in the U.S.[11] And that is out of *hundreds* of civil procedure scholars. Moreover, on these lists, Professor Gilles is by far the youngest of all the top scholars. On the 2021-22 listing, the civil procedure scholars with the highest cite counts were:

| Rank | Name | School | Age in 2021 |
|---|---|---|---|
| 1 | Arthur Miller | NYU | 87 |
| 2 | Judith Resnik | Yale | 71 |
| 3 | Steven Burbank | Penn | 74 |
| 4 | Kevin Clermont | Cornell | 73 |
| 5 | James Pfander | Northwestern | 65 |
| **6** | **Myriam Gilles** | **Cardozo** | **50** |
| 7 | William Rubinstein | Harvard | 61 |
| 8 | Deborah Hensler | Stanford | 79 |

Professor Gilles' work has also been cited by dozens of courts, especially with respect to class action procedural issues. *See, e.g.*, *Mullins v. Direct Dig., Ltd. Liab.*

[11] The list varies by year, but Gilles has consistently been recognized as fifth or sixth in citations. *See e.g.*, Brian Leiter's Law School Reports, Sept. 27, 2021, available at https://bit.ly/Leiter_2021.

*Co.*, 795 F.3d 654, 667 (7th Cir. 2015) (establishing that Seventh Circuit does not recognize an "ascertainability" requirement under Rule 23, citing Gilles). She is a member of the American Law Institute—a peer-driven accolade FASORP touts with respect to Professor Volokh (AC ¶ 16)—and is a highly sought-after speaker at conferences on complex litigation and civil procedure issues. Professor Gilles has also been called upon regularly to provide testimony to Congress, including seven appearances before the Senate and House Judiciary Committees. She is the co-author of a prominent Civil Procedure casebook, published by Aspen Publishing, and has won numerous teaching awards.[12] Over her 25 years of teaching at Cardozo Law School, she has declined offers of tenured professorship from top ten law schools.

Not surprisingly, after FASORP and America First filed and publicized their original complaint, numerous high-profile law professors from across the ideological spectrum came to her defense on X, citing her achievements and calling America First and FASORP out on their baseless race-baiting.[13]

And that is when America First and FASORP turned to the weaponized plagiarism playbook that they and their allies have used in other recent campaigns seeking to tarnish (mostly) Black professionals.[14] The process begins with a

---

[12] Professor Gilles's curriculum vitae is available at https://bit.ly/Gilles_CV.

[13] *See* tweets referencing "Myriam Gilles" on X.com mostly around July 5-6, 2024.

[14] America Firster and right-wing provocateur Chris Rufo is widely identified as the driving force behind the weaponized plagiarism inquiries into Vice President Harris, Claudine Gay and others. *See* Karissa Waddick, *Harris' Campaign Rebuts Plagiarism Claims*, USA TODAY, Oct. 16, 2024, available at https://bit.ly/Harris_plagiarism; *see also* An Historian, Rufo, *Plagiarism and the Strange Death of US News Media*, MEDIUM, Dec. 22, 2023, available at https://bit.ly/Rufo_Plagiarism. Here, Rufo posted the Amended Complaint

researcher feeding all of the author's published work through a system such as iThenticate® and seeing if it turns up pieces of similar text from other sources. At that juncture, a good faith plagiarism researcher would then look and see if those passages reflect an intent by the author to pass off the ideas of others as her own.

But while a real plagiarism inquiry would *begin* by identifying similar text, the weaponized-plagiarism hit-job *ends* there. The deliverable, for FASORP and America First, is simply the blotches of bright yellow highlighter they have used in the Amended Complaint to denote similar patches of text. The relevant inquiry to a scholar, by contrast, is whether the author has taken the ideas of another and passed them off as her own. And no one—not even FASORP or America First—has ever accused Professor Gilles of that.[15]

#### 4. *Professor Norrinda Brown*

FASORP and America First also use their weaponized plagiarism tool to defame Fordham Law School Professor Norrinda Brown. Professor Brown has no affiliation with Northwestern Law School but, in 2023, she published an article in the student-run Northwestern Law Review.

---

within minutes of its filing, firing off tweets at the law professors who had criticized FASORP and highlighting its new allegations regarding Professor Gilles.

[15] We can only scratch the surface here of the problems with FASORP's presentation. In many of the selections of text it reproduces from Professor Gilles, FASORP cuts off the excerpt before the footnote signifier (or number) and omits the footnote text which provides sourcing for Professor Gilles's assertions. And the selections it presents from *within* footnotes are, invariably, rote string citations which would in no way benefit from shuffling the word order or using quotation marks to create a quotation-of-quotations. And here again, a federal discrimination lawsuit is a bizarre forum for hashing out the fine-point norms for re-wording or attributing rote string citations and similar material in legal scholarship.

The allegations concerning Professor Brown's article reveal the fundamentally polemical and political nature of FASORP's filing as they have no bearing on any *legal* claim. They don't speak to Northwestern's hiring policies, or the selection of law review members. Nor do the allegations regarding Professor Brown speak to any racial bias on the part of students in selecting articles. What the allegations reveal is America First's deep resentment of the interest that academia shows in issues relating to the Black experience. And they show a callous willingness to destroy the reputation of a young Black scholar in the process.

**ARGUMENT**

**The Court Should Order FASORP to Show Cause Why Sanctions Should Not Be Imposed Under Fed. R. Civ. P. 11(b)(1) and 11(c)(3)**

Under Fed. R. Civ. P. 11(b)(1), FASORP "certified" to the Court that the Amended Complaint "is not being presented for any improper purpose." And while Amici do not claim standing to move this Court for the imposition of sanctions, this Court has the power, "[o]n its own," to "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." FED. R. CIV. P. 11(c)(3).

Rule 11(b)(1) prohibits the filing of legal pleadings for "an improper purpose." Numerous "courts have found an improper purpose based on [the] political motivations" of a plaintiff in bringing a lawsuit. *Teno v. Iwanski*, 464 F. Supp. 3d 924, 953-54 (E.D. Tenn. 2020). *See, e.g., Lake v. Fontes*, No. CV-22-00677-PHX-JJT, 2023 U.S. Dist. LEXIS 122594, at *4 (D. Ariz. July 14, 2023) (upholding sanctions

where plaintiffs, including politician Kari Lake, "brought this case for the improper purpose of sowing doubts about the reliability and trustworthiness of elections for their own financial and political benefit in violation of Rule 11(b)(1)") (cleaned up); *Collins v. Daniels*, 916 F.3d 1302, 1320-22 (10th Cir. 2019) (upholding finding of Rule 11(b)(1) violation where "plaintiff's counsel added the Legislator Plaintiffs [and a public interest group] as parties to this case for an improper purpose—namely, for political reasons to express their opposition to lawful bail reforms in the State of New Mexico rather than to advance colorable claims for judicial relief") (cleaned up); *King v. Whitmer*, 556 F. Supp. 3d 680, 689 (E.D. Mich. 2021) ("this case was never about fraud—it was about undermining the People's faith in our democracy and debasing the judicial process to do so" in violation of Rule 11(b)(1)); *Trump v. Clinton*, *supra* ("The rule of law is undermined by . . . efforts to advance a political narrative through lawsuits without factual basis or any cognizable legal theory.")

The relevant question, under Rule 11(b)(1), is whether "the litigation *preeminently* served a political aim." *Rawls v. Kegerise*, No. 1:13-cv-2867, 2014 U.S. Dist. LEXIS 179764, at *15 (M.D. Pa. Aug. 25, 2014) (emphasis added). Towards those ends, courts ask whether the relevant conduct "was part of a pattern of activity, or an isolated event" and "whether the person has engaged in similar conduct in other litigation," among other factors. FED. R. CIV. P. 11 Advisory Committee Notes.

Here, FASORP and America First are running the same slanderous playbook in courts across the country, indiscriminately impugning the professional integrity of

Black academics along with the student-run law reviews that publish their articles. See *FASORP v. Harvard Law Rev.*, *supra; FASORP v. NYU Law Review, supra*; *Lowery v. Texas A&M, supra*. By its own account, FASORP will continue advancing its libelous and fundamentally political lawsuits in the absence of a judicial check. Amici respectfully suggest that Rule 11(b)(1) provides such a check.

## CONCLUSION

Amici respectfully submit that the Motion of Northwestern Law School should be granted in full, and that the Court should give consideration to the application of Rule 11 in this matter.

Dated: November 8, 2024

Respectfully submitted,

By: /s/ *Matthew S. Wild*__________

Matthew S. Wild (Bar No. 2705457)
Gary B. Friedman
White Street Partners LLP
75 South Broadway, 4th Floor
White Plains NY 10601
(914) 690-8549
mwild@whitestreetpartners.com

*Counsel for Amici Curiae*