**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES (FASORP), | |
| Plaintiff, | |
| v. | |
| NORTHWESTERN UNIVERSITY; HARI OSOFSKY, in her official capacity as dean of Northwestern University School of Law; SARAH LAWSKY, JANICE NADLER, AND DANIEL RODRIGUEZ, in their official capacities as professors of law at Northwestern University; DHEVEN UNNI, in his official capacity as editor in chief of the Northwestern University Law Review; JAZMYNE DENMAN, in her official capacity as senior equity and inclusion editor of the Northwestern University Law Review, | Case No. 24-cv-5558  District Judge Sara L. Ellis |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    FASORP LACKS ARTICLE III STANDING. ...............................................................2

    A.    FASORP Lacks Standing To Challenge The Law School's Faculty Hiring. ..........3

    B.    FASORP Lacks Standing To Challenge The Law Review's Member And Editor Selection...........................................................................................8

    C.    FASORP Lacks Standing To Challenge The Law Review's Article Selection......................................................................................................10

II.    FASORP FAILS TO STATE A CLAIM ON THE MERITS..........................................11

    A.    FASORP Fails To State A Title VI Claim............................................................12

    B.    FASORP Fails To State A Section 1981 Claim....................................................16

CONCLUSION....................................................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Ahern v. Bd. of Educ. of Chi.*,
 133 F.3d 975 (7th Cir. 1998) .................................................................................13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...................................................................................1, 2, 14

*Becker v. N.D. Univ. Sys.*,
 112 F.4th 592 (8th Cir. 2024) .................................................................................7

*Bond v. Utreras*,
 585 F.3d 1061 (7th Cir. 2009) ...............................................................................9

*Carney v. Adams*,
 592 U.S. 53 (2020)...........................................................................................3, 10, 19

*Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*,
 741 F.3d 769 (7th Cir. 2013) ...........................................................................1, 2

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013)...............................................................................................10

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
 589 U.S. 327 (2020)........................................................................................17, 18

*Doe v. N.Y.U. (NYU III)*,
 2024 WL 2847368 (S.D.N.Y. May 30, 2024) ........................................11, 12, 15, 16

*Earle Asphalt Co. v. Cnty. of Camden*,
 2023 WL 8711815 (3d Cir. Dec. 18, 2023) .............................................................3

*eBay Inc. v. MercExchange, LLC*,
 547 U.S. 388 (2006).................................................................................................18

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
 11 F.4th 200 (3d Cir. 2021) .....................................................................................7

*Farm Lab. Org. Comm. v. Stein*,
 56 F.4th 339 (4th Cir. 2022) ...................................................................................17

*FASORP v. Harv. L. Rev. Ass'n*,
 2019 WL 3754023 (D. Mass. Aug. 8, 2019) .......................................................4, 10

*FASORP v. N.Y.U.* (*NYU II*),
  11 F.4th 68 (2d Cir. 2021) ...................................................................5, 6, 9, 10

*FASORP v. N.Y.U. L. Rev.* (*NYU I*),
  2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020), *aff'd*, 11 F.4th 68 (2d Cir.
  2021) ...........................................................................................................4, 9

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)............................................................................................8

*Gress v. RTA*,
  2018 WL 3869962 (N.D. Ill. Aug. 15, 2018) ...................................................14

*Houser v. Pritzker*,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014)...................................................................7

*Hummel v. St. Joseph Cnty. Bd. of Comm'rs*,
  817 F.3d 1010 (7th Cir. 2016) ............................................................................3

*Ivens v. GK N. Childcare Corp.*,
  2022 WL 602913 (N.D. Ind. Mar. 1, 2022)......................................................19

*Jauquet v. Green Bay Area Cath. Educ., Inc.*,
  996 F.3d 802 (7th Cir. 2021) .........................................................................2, 11

*Kaminski v. Elite Staffing, Inc.*,
  23 F.4th 774 (7th Cir. 2022) .......................................................................15, 19

*Livingston v. City of Chicago*,
  2024 WL 245214 (N.D. Ill. Jan. 22, 2024).........................................................6

*Loffman v. Cal. Dep't of Educ.*,
  119 F.4th 1147 (9th Cir. 2024) .......................................................................6, 8

*Lowery v. Tex. A&M Univ.*,
  2024 WL 4614714 (5th Cir. Oct. 30, 2024).........................................................5

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)............................................................................................6

*Markakos v. Medicredit, Inc.*,
  997 F.3d 778 (7th Cir. 2021) ............................................................................18

*McKay v. City of Chi.*,
  2024 WL 3251349 (N.D. Ill. July 1, 2024)........................................................19

*Melendez v. Ill. Bell Tel. Co.*,
  79 F.3d 661 (7th Cir. 1996) ................................................................................6

*Menard v. CSX Transp., Inc.*,
    698 F.3d 40 (1st Cir. 2012) .................................................................................11

*Miller v. Abilene Christian Univ. of Dall.*,
    517 F. Supp. 437 (N.D. Tex. 1981) .....................................................................14

*Miller v. Phelan*,
    845 F. Supp. 1201 (N.D. Ill. 1993) .....................................................................13

*Moss v. Cont'l Tire The Ams., LLC*,
    2024 WL 5088370 (S.D. Ill. Dec. 12, 2024) .......................................................20

*Northeastern. Florida Chapter of Associated General Contractors of America v.
    City of Jacksonville*,
    508 U.S. 656 (1993) ..............................................................................................8

*Payne v. Abbott Lab'ys*,
    999 F. Supp. 1145 (N.D. Ill. 1998) .....................................................................19

*Plummer v. Am. Inst. of CPAs*,
    97 F.3d 220 (7th Cir. 1996) .................................................................................18

*Powers v. Ohio*,
    499 U.S. 400 (1991) ..............................................................................................9

*Regents of Univ. of Cal. v. Bakke*,
    438 U.S. 265 (1978) ..............................................................................................7

*Sanchez v. Tootsie Roll Indus., LLC*,
    2021 WL 4936240 (N.D. Ill. May 18, 2021) .......................................................17

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ..............................................................................................7

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ...............................................................................19

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) .........................................................................................14, 19

*Tashima v. Showroom Glob., Inc.*,
    2025 WL 36210 (N.D. Ill. Jan. 6, 2025) ...............................................................2

*Training Inst., Inc. v. City of Chi.*,
    1996 WL 31180 (N.D. Ill. Jan. 24, 1996), *aff'd*, 937 F. Supp. 743 (N.D. Ill.
    1996) ......................................................................................................................3

*Vang v. State Farm Mut. Auto. Ins. Co.*,
    2021 WL 5761002 (C.D. Ill. 2021)...................................................................15, 17

*Vaughn v. Walthall*,
    968 F.3d 814 (7th Cir. 2020) ...............................................................................18

*Veljkovic v. Bd. of Educ. of Chi.*,
    2020 WL 7626735 (N.D. Ill. Dec. 22, 2020)...................................................12, 13

*Wilson v. Bd. of Trs. of Cmty. Coll. Dist. 508*,
    2021 WL 1676601 (N.D. Ill. Apr. 28, 2021) ........................................................19

**STATUTES**

42 U.S.C. § 2000e-5(g)(2)(B)...................................................................................18

v

## INTRODUCTION

FASORP's opposition turns on the striking assertion that Rules 12(b)(1) and 12(b)(6) require nothing more than reciting "magic words." Dkt. 42 at 3 n.7. But as the Seventh Circuit has cautioned, simply "saying the magic words is not enough: [the plaintiff] must offer 'further factual enhancement.'" *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 775 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That factual enhancement is absent here.

On standing, FASORP's opposition regurgitates the First Amended Complaint's ("FAC") conclusory allegations and insists they are enough. For faculty hiring, FASORP's concession that it is not seeking a remedy for past injuries dooms any claim related to entry-level hiring, as Individuals A, B, and C are no longer eligible to apply for entry-level positions. As for FASORP's lateral-hiring claim, although FASORP asserts its members are "able and ready" to apply, it does not allege that they ever informed Northwestern's appointments committee of their interest or took any concrete steps toward applying. Moreover, FASORP offers only the barest of details concerning its members' qualifications, and falls far short of pleading that they fall within the realm of faculty a top-ten law school would even consider hiring. That is not enough to show a concrete, non-speculative injury for Article III standing. FASORP's standing allegations as to the Law Review also fall short. FASORP concedes it has no student members, much less one who was harmed or faces a substantial risk of harm by the Law Review's member- and editor-selection processes, and thus lacks standing to challenge those processes. And although FASORP once again asserts its faculty members are "able and ready" to submit manuscripts to the Law Review, it does not meaningfully describe any concrete steps they have taken to do so, thereby failing to show the kind of imminent injury needed for standing to challenge the article-selection process.

FASORP's merits arguments fare no better. FASORP now concedes that its claims against the Individual Defendants and under Title IX should be dismissed. FASORP cannot bring a Title

1

VI employment discrimination claim in these circumstances either, and its Title VI and Section 1981 allegations fail to state a claim in any event. In an effort to save those claims, FASORP relies primarily on its bare assertions that Northwestern is discriminating, but "vague," "conclusory," and "generalized allegations" of discrimination are not enough. *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 811 (7th Cir. 2021). While FASORP is correct that its well-pleaded *factual* allegations must be accepted as true at this stage, it fails to state "factual content sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Charleston*, 741 F.3d at 775 (quoting *Iqbal*, 556 U.S. at 678).

In fact, FASORP's allegations support the contrary inference. The very statistics alleged in the FAC show that white applicants for faculty positions received more offers than non-white applicants, and that white interviewees had a higher offer rate than non-white interviewees, during the relevant time period. Dkt. 25 ¶ 46; *see also* Dkt. 33 at 24 (discussing FASORP's statistics). FASORP is silent on this fatal point, and yet continues to groundlessly malign several Black Northwestern professors and insist, without factual support, that the process that led to *their* appointments must have been infected by discrimination. Those baseless broadsides may advance FASORP's political agenda, but they do nothing to state a claim under the law.

Left with no other choice, FASORP is compelled to repeatedly assert that Rule 8 is a low bar that does not require it to plead facts supporting any elements of its claims. That is wrong. *See Jauquet*, 996 F.3d at 811; *Tashima v. Showroom Glob., Inc.*, 2025 WL 36210, at *3 (N.D. Ill. Jan. 6, 2025) ("formulaic recitation of the elements" insufficient to plausibly state a claim) (citation omitted). The FAC should be dismissed.

## ARGUMENT

## I.  FASORP LACKS ARTICLE III STANDING.

A. **FASORP Lacks Standing To Challenge The Law School's Faculty Hiring.**

1. **FASORP's Concessions Doom Its Entry-Level Hiring Claims.**

FASORP lacks standing to challenge Northwestern's entry-level faculty hiring. FASORP now concedes that it does not seek retrospective relief for any prior harm and that allegations of "[p]ast injuries do not establish standing to seek prospective relief." Dkt. 42 at 13; *see also id.* at 2 (members' "past job allegations … have no bearing on standing"). This pivot reflects FASORP's recognition that it cannot demonstrate anything close to *past* injury sufficient to establish standing. But this pivot is also fatal to FASORP's *prospective* entry-level-hiring claims. Individuals A, B, and C are already tenured or tenure-track law professors, so they are ineligible to apply for an entry-level position. Dkt. 25 ¶¶ 100, 102, 104. And FASORP admits that the entry-level and lateral hiring processes are different. *Id.* ¶¶ 107-108. It necessarily follows that FASORP has no Article III standing to bring its entry-level faculty hiring claims.

2. **FASORP Does Not Allege Sufficient Facts To Establish Standing For Its Lateral Hiring Claims.**

As for its claims related to lateral faculty hiring, FASORP contends that, to establish standing, it "need[] only … allege that it has members who stand 'able and ready to apply' for a faculty appointment." Dkt. 42 at 2 (emphasis omitted). But "it is not enough just to mouth those words," as "[w]hether a party is 'able and ready' is a legal conclusion that depends on the facts." *Earle Asphalt Co. v. Cnty. of Camden*, 2023 WL 8711815, at *1 (3d Cir. Dec. 18, 2023) (citation omitted). Rather, FASORP must allege *facts* that, if true, would *show* its members are "ready and able" to apply and face a "substantial risk" of discrimination. *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016); *see Carney v. Adams*, 592 U.S. 53, 60-61 (2020) (that plaintiff "wants to be, and would apply to be" a judge is insufficient absent facts showing efforts to realize that desire); *Training Inst., Inc. v. City of Chi.*, 1996 WL 31180, at *1-2 (N.D. Ill.

3

Jan. 24, 1996) (Lefkow, M.J.) (that plaintiff was "ready and able to bid" on contracts is not enough absent facts showing the risk of harm is not speculative), *aff'd*, 937 F. Supp. 743 (N.D. Ill. 1996). FASORP has alleged no such facts as to lateral hiring. Dkt. 33 at 6-10.

> a. *FASORP Fails To Allege Its Members Have Concrete Application Plans Or Are "Ready" To Apply.*

Multiple courts have dismissed similar claims brought by FASORP and its counsel for failure to plausibly allege standing where those claims alleged only that its members are "ready" to apply for faculty positions. This Court should do the same.

First, a Massachusetts district court rejected FASORP's argument that it had standing to challenge Harvard Law School's faculty hiring based on the allegation that "at least one member" had "applied for [an] entry-level or lateral teaching position[] at Harvard Law School and intend[ed] to do so again in the future." *FASORP v. Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *6 (D. Mass. Aug. 8, 2019). As the court explained, that unadorned allegation lacked sufficient "concrete and particularized" facts to support FASORP's claim that its members "imminently face[d]" an injury in fact. *Id.* at *7. "Without additional detail, there [was] no way to discern" whether FASORP's members had taken any concrete steps to apply for a lateral position "in the reasonably foreseeable future." *Id.*

Second, a New York district court similarly rejected FASORP's argument that it had standing to challenge NYU's faculty hiring because its members had previously applied and "remain[ed] potential candidates for faculty positions." *FASORP v. N.Y.U. L. Rev. (NYU I)*, 2020 WL 1529311, at *6 (S.D.N.Y. Mar. 31, 2020), *aff'd*, 11 F.4th 68 (2d Cir. 2021). As the court explained, that bare assertion—relying only on "speculation" about what might happen in the future and devoid of "'concrete facts' showing a substantial risk of harm"—was insufficient. *Id.*

Third, the Fifth Circuit affirmed the dismissal of a complaint brought by FASORP's counsel against Texas A&M, which "alleg[ed] that applicants for professorships are discriminated against on the bases of race and sex." *Lowery v. Tex. A&M Univ.*, 2024 WL 4614714, at *1 (5th Cir. Oct. 30, 2024). Although the complaint alleged that the plaintiff was "'able and ready' to apply for lateral positions at the University," the Fifth Circuit found this assertion insufficient, as the plaintiff had "never submitted an application to substantiate his interest" and there was "little evidence" that doing so "would be a futile gesture." *Id.*

As in those three cases, FASORP does not adequately allege any concrete steps that its members have taken toward applying for lateral faculty positions. The closest it comes is the allegation that Individuals A and C—but not B—"informed at least one person on Northwestern's law faculty of their interest in a lateral faculty appointment." Dkt. 25 ¶¶ 107-108. But FASORP does not allege to whom or in what manner Individuals A and C expressed their interest, including whether they provided written materials to support their candidacy—much less whether they actually "convince[d]," or even asked, those faculty to pass their interest along to the appointments committee. *Id.* ¶ 108. Even accepting FASORP's allegations as true, Individuals A and C may have simply mentioned to a friend in passing that Northwestern seemed like a great school and they would love to work there one day. That is not enough—and if there were more to the story, FASORP surely would have told it. Accordingly, FASORP's allegations fail to establish that any of its members are ready to apply or that applying would be futile (indeed, they recognize many white male professors have been hired), and therefore fail to allege imminent injury. *FASORP v. N.Y.U.* (*NYU II*), 11 F.4th 68, 77 (2d Cir. 2021) ("Without any description of concrete plans to apply for employment, … FASORP's allegations exhibit the kind of some day intentions that cannot support a finding of [] actual or imminent injury.") (internal quotations omitted).

FASORP's allegation that Individuals A and C "intend to continue" informing "at least one person on Northwestern's law faculty of their interest" in a lateral appointment "each year" is likewise insufficient for standing. Dkt. 25 ¶ 108. As explained above, this allegation offers no details as to whom Individuals A and C plan to inform of their interest or how, including whether they plan to ask that their interest be communicated to the appointments committee or anyone in charge of hiring. "Such 'some day' intentions—without any description of concrete plans … —do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

### b. *FASORP Does Not Adequately Allege Its Members Are Qualified Or "Able" To Apply.*

FASORP contends that it does not need to allege its members are qualified to serve on Northwestern's law faculty. Dkt. 42 at 7-9. That is wrong. "The basis for this qualification requirement [for Article III standing] is apparent. Absent direct evidence showing that a plaintiff was not hired or promoted because of a discriminatory employment practice, we assume that an unqualified plaintiff was not hired or promoted for the obvious reason—that he was unqualified." *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996); *see also Livingston v. City of Chicago*, 2024 WL 245214, at *10 (N.D. Ill. Jan. 22, 2024) (Ellis, J.).

FASORP seeks to distinguish *Melendez* as a Title VII disparate-impact case and argues that all it needs to plead here is that its members are "able and ready" to apply. Dkt. 42 at 7-8. But as FASORP concedes, *Melendez*'s discussion of qualifications "is part of [its] Article III standing inquiry," not its assessment of whether the plaintiff stated a Title VII claim. *Id.* at 8. And regardless, the "able" prong of the "able and ready" requirement incorporates exactly the same qualifications requirement as *Melendez. See Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1161 (9th Cir. 2024) (in holding that plaintiffs lacked standing, explaining that they were not "able and

ready" to apply because they did not allege they met the "other [*i.e.*, non-challenged] requirements"); *cf. Becker v. N.D. Univ. Sys.*, 112 F.4th 592, 596 (8th Cir. 2024) (plaintiff was "able and ready" to apply, and therefore had standing, because she "ha[d] the skills to compete").

*Melendez*'s qualification requirement—and the corresponding "able" prong of the "ready and able" requirement that FASORP admits applies here—makes good sense. The law requires plaintiffs to plead that they meet the minimum qualifications to show they face a concrete injury. *See Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 208 (3d Cir. 2021) ("It would be futile for a student who has yet to enter medical school to apply for [physician] staff privileges, but we could not reasonably conclude that the student was thus able and ready to apply for those privileges."); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 236-37 (S.D.N.Y. 2014) (collecting cases holding that "to establish an injury-in-fact," the "plaintiff must at least demonstrate that he met the minimum qualifications for the position ultimately denied"). By failing to meet this requirement, FASORP has shown no such imminent injury and thus has no standing.[1]

In another effort to sidestep the qualification requirement, FASORP contends that *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ("*SFFA*"), held that the plaintiff had standing even though the complaint "never alleged that the plaintiff's members were 'qualified' to attend Harvard." Dkt. 42 at 8. That is wrong. The complaint there in fact alleged that an SFFA member denied admission to Harvard was valedictorian of his high school class; attended a high school ranked in the top 5% nationally; earned a perfect score on the

---

[1] Contrary to FASORP's suggestion (Dkt. 42 at 8), the requirement that a plaintiff plead and ultimately prove that he meets the minimum qualifications is different from a requirement that the plaintiff plead and ultimately prove that he would have been hired (or would have been admitted in an education case). *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 280 n.14 (1978). The latter is not required because it is effectively impossible to show; the former is required because the court lacks jurisdiction without it.

ACT and on multiple SAT II subject tests; was named an AP Scholar with distinction, a National Scholar, and a National Merit Scholarship semifinalist; was captain of his varsity tennis team; and engaged in numerous volunteer activities. Dkt. 42-1 at 8 (¶¶ 18-21). Those are precisely the sort of detailed, specific allegations lacking in FASORP's complaint.[2]

In a single sentence, FASORP contends that the Court must accept as true at this stage the complaint's bare assertion that Individuals A, B, and C are "qualified." Dkt. 42 at 9. But FASORP again confuses conclusions with well-pleaded factual allegations. The assertion that Individuals A, B, and C are "qualified" is a conclusion entitled to no deference. *See Loffman*, 119 F.4th at 1161 (allegation that plaintiff "meets or is capable of meeting" a program's requirements, and thus is "able and ready" to apply, is a "conclusory allegation[]" that is "'not entitled to be assumed true' at the motion to dismiss stage"). Only well-pleaded factual allegations pertaining to the qualifications of FASORP's members (*e.g.*, that Member A has published one book, Dkt. 25 ¶ 109) must be taken as true. And those allegations—even with FASORP's meager attempts to augment them in the FAC—are woefully insufficient to support the conclusion that Individuals A, B, and C are qualified to teach at a top-10 law school. Dkt. 33 at 8-10.

## B. FASORP Lacks Standing To Challenge The Law Review's Member And Editor Selection.

FASORP concedes that its membership "does not include Northwestern students who intend to apply for positions on the Law Review." Dkt. 42 at 2. That concession is fatal to FASORP's standing to challenge the Law Review's member and editor selection.

---

[2] The other cases cited by FASORP, *Gratz v. Bollinger*, 539 U.S. 244 (2003), and *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), are similar. Dkt. 42 at 2-3. In *Gratz*, the university itself described one plaintiff as "well qualified" and the other as "in the qualified range." 539 U.S. at 251. And in *Northeastern Florida*, the plaintiff alleged its members "regularly bid on and perform construction work" for the defendant city, showing they were qualified to obtain the set-aside contracts. 508 U.S. at 659.

FASORP nevertheless argues it has standing because (1) Individuals A, B, and C plan to submit manuscripts to the Law Review and (2) the Law Review's member- and editor-selection processes "dilute the quality of the students who decide whether to accept" those submissions. Dkt. 42 at 2. FASORP has trotted out this offensive argument in other suits to no avail. *See NYU II*, 11 F.4th at 73, 77; *NYU I*, 2020 WL 1529311, at *5-6. It fares no better here. Dkt. 33 at 10-11.

To support its position, FASORP cites *Powers v. Ohio*, which held that a criminal defendant could contest a prosecutor's use of peremptory challenges to exclude jurors based on race, regardless of whether the defendant and the excluded juror(s) were the same race. 499 U.S. 400, 402 (1991). But as the Second Circuit explained in rejecting FASORP's same argument, *Powers* "depended on special considerations relating to criminal justice that are inapplicable here," namely that "racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process,'" regardless of its effect on a trial's outcome. *NYU II*, 11 F.4th at 77 (quoting *Powers*, 499 at 411). The special considerations that, in *Powers* and other preemptory-challenge precedents, warranted granting third-party standing to criminal defendants and civil parties are entirely absent here. Instead, FASORP argues that its members have a right to have their submissions judged by students of (what it views as) a particular "quality" that is not "dilute[d]," Dkt. 42 at 2, and that is not an interest protected by Title VI. *See NYU I*, 2020 WL 1529311, at *6 (rejecting same argument on grounds law review member selection implicated no legal right of FASORP members).

FASORP objects to these holdings, arguing that the test for Article III standing is not whether it has a "legal right," but whether it has "an injury." Dkt. 42 at 12. But as the Seventh Circuit explained, "standing requires a claim of injury … to a legally cognizable right." *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (quotation marks omitted) (collecting cases). Here,

9

FASORP has no cognizable right relating to the composition of the Law Review's membership; rather, the *relevant* right, which is to be considered for membership without discrimination, belongs to prospective student members, not faculty who may someday submit manuscripts to those students.

### C. FASORP Lacks Standing To Challenge The Law Review's Article Selection.

As with its faculty hiring claims, FASORP concedes that its article selection claim is "seeking *only* prospective relief" and that "[p]ast injuries do not establish standing to seek prospective relief." Dkt. 42 at 12-13 (emphasis altered). Accordingly, the only question for standing purposes is whether FASORP has alleged a "certainly impending" future injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

It has not. As explained above, boilerplate assertions that Individuals A, B, and C stand "able and ready" to submit manuscripts do not suffice to establish a concrete, particularized, and imminent injury. *See supra* at 4-8; *Carney*, 592 U.S. at 66 (absent showing that he is "'able and ready' to apply in the imminent future," plaintiff did not show the required "'personal,' 'concrete,' and 'imminent' injury"). Therefore, FASORP lacks standing to challenge the Law Review's article-selection process. *See NYU II*, 11 F.4th at 76 (affirming dismissal of FASORP's challenge to article-selection process); *Harv. L. Rev. Ass'n*, 2019 WL 3754023, at *7 (same).

The same holds for FASORP's assertion that injury is "imminent" because the Law Review is likely to discriminate against FASORP's members in reviewing their submissions. Dkt. 42 at 14. In support, FASORP alleges that the "senior equity and inclusion editor" position was "created and exists for the very purpose of elevating submissions from authors with preferred demographic traits over better scholarship written by white men," Dkt. 25 ¶ 97; that the Law Review's nondiscrimination policy is "a bald-faced lie," *id.* ¶ 80, and that the Law Review "consistently

gives discriminatory preferences" to certain authors and "will continue" to do so absent an injunction, *id.* ¶ 97.

These conclusory assertions of discrimination do not establish the likelihood of injury necessary to standing. *See Doe v. N.Y.U.* (*NYU III*), 2024 WL 2847368, at *5 (S.D.N.Y. May 30, 2024) (allegation that NYU Law Review "give[s] preferential treatment to women, non-Asian racial minorities, homosexuals, and transgender people" and "intends to continue" doing so is too "conclusory" to support standing); *Jauquet*, 996 F.3d at 811 ("Without any factual support to show that female students are treated differently than male students on account of their sex, the complaint's conclusory allegations are insufficient … ."). Specifically as to FASORP's allegation about the senior equity and inclusion editor, allegations that are "nominally cast in factual terms" but are "so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint" do not suffice. *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). Here, FASORP does not allege any specific facts regarding what the senior equity and inclusion editor does, how (if at all) that editor is involved in the article-, member-, and editor-selection processes, or any other concrete facts that, taken as true, would support an inference that the existence of this position has resulted in discrimination.

## II.   FASORP FAILS TO STATE A CLAIM ON THE MERITS.

Even if FASORP had standing, the FAC still fails to state a viable claim. Because FASORP does not object to the dismissal of its claims against the Individual Defendants and admits that its Title IX claim is barred by binding precedent, those claims should be dismissed with prejudice. Dkt. 42 at 14 n.29, 24-25, 28.[3] The claims that FASORP does defend deserve the same fate.

---

[3] Dismissal of FASORP's Title IX claim renders irrelevant FASORP's allegations regarding gender, sexual-orientation, and gender-identity discrimination, as Title VI and Section 1981 are limited to claims of race, color, and national-origin discrimination.

### A. FASORP Fails To State A Title VI Claim.

As Defendants explained, FASORP cannot bring an employment discrimination claim under Title VI because it falls outside of Title VI's zone of interests; Title VI does not provide a remedy for employment discrimination here; and FASORP fails to state a plausible discrimination claim in any event. Dkt. 33 at 13-19. In response, FASORP argues that its members somehow fall within Title VI's zone of interests and that its employment discrimination claims are actionable under Title VI because its members are somehow the primary beneficiaries of the federal grants Northwestern receives. Those arguments are wrong and would stretch Title VI far beyond the bounds set by precedent.

### 1. FASORP Cannot Bring An Employment Claim Under Title VI.

#### a. FASORP Falls Outside Title VI's Zone Of Interests.

FASORP argues that its members fall within Title VI's zone of interests because they are "applicant[s] for … a federally funded program" on account of having applied to teach at Northwestern. Dkt. 42 at 15. As an initial matter, FASORP never actually alleges that its members "applied" for a lateral position; it alleges only that Individuals A and C told someone on Northwestern's law faculty that they were interested in a lateral position. *See supra* at 5. Regardless, applying for a faculty position is not enough to bring a plaintiff within the zone of interests. *See Doe*, 788 F.2d at 420 (physician not an applicant to or intended beneficiary of any federally funded program); *Veljkovic v. Bd. of Educ. of Chi.*, 2020 WL 7626735, at *3-4 (N.D. Ill. Dec. 22, 2020); *see also* Dkt. 33 at 14 (collecting cases).

FASORP argues that Title VI applies to the entire university, not just its federally funded aspects, so any applicant to a university job falls within Title VI's zone of interests. Dkt. 42 at 15. That conclusion does not follow from the premise. If it did, cases like *Veljkovic*, 2020 WL 7626735, at *3-4, would have come out the other way. There, the high school received federal

12

funding, bringing it under Title VI. But this Court still held that the teacher-plaintiff fell outside of Title VI's zone-of-interests because the funding was directed at students, not at helping employ teachers. *Id.*; *see Miller v. Phelan*, 845 F. Supp. 1201, 1207 (N.D. Ill. 1993) (applicant to board of transportation authority had no Title VI claim because funding was directed at riders). *SFFA* is not to the contrary. That case involved a student (to whom federal funding was directed) who had unsuccessfully sought admission to Harvard. *See supra* at 7-8 (citing complaint). *SFFA* says nothing about whether prospective *professors* can sue a university under Title VI.[4]

> b.    *Title VI Does Not Cover FASORP's Employment Discrimination Claim.*

Even if FASORP's members fell within Title VI's zone of interests, "Title VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." *Ahern v. Bd. of Educ. of Chi.*, 133 F.3d 975, 978 (7th Cir. 1998) (citation omitted). FASORP does not allege that providing employment is the primary objective of any federal aid Northwestern receives, Dkt. 42 at 16-18, nor could it, Dkt. 33 at 15-16 (collecting cases).

Instead, FASORP argues that its allegations bring it within *Ahern*'s second exception because (a) professors supposedly are the "primary beneficiaries" of the research grants Northwestern receives (some of which FASORP attached to its opposition) and (b) FASORP's members are being discriminated against. Dkt. 42 at 17. But caselaw makes clear that professors

---

[4] Indeed, FASORP's position is broader still. FASORP claims that it falls within Title VI's zone of interests because its members are the 'intended beneficiaries' of and 'participants in' the universities where they *currently* teach." Dkt. 42 at 16 (emphasis added). Under that view, FASORP and its members could sue *any* institution (federally funded or not) simply because they happen to work at a federally funded institution. That is as nonsensical as it sounds. Dkt. 33 at 14.

are not the intended beneficiaries of these grants, let alone the primary beneficiaries. Dkt. 33 at 14

(collecting cases). The *primary* beneficiary is the person or group who benefits *most* from the

federal aid, which is students, not professors, and FASORP does not allege any discrimination

against students. *See Miller v. Abilene Christian Univ. of Dall.*, 517 F. Supp. 437, 439-40 (N.D.

Tex. 1981) (professor was not a beneficiary of research grants where they were not used to pay

faculty salaries); *Gress v. RTA*, 2018 WL 3869962, at *2-3 (N.D. Ill. Aug. 15, 2018) (riders, not

bus drivers, were primary beneficiaries of transportation funding).

> c.   *In Any Event, FASORP Alleges Insufficient Facts To State A Plausible Employment Discrimination Claim.*

Finally, even assuming FASORP could theoretically bring an employment discrimination

claim, it does not allege facts sufficient to state one. Dkt. 33 at 6-10, 22-24. FASORP repeatedly

asserts that "conclusory allegations of discrimination" are enough, citing *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 514 (2002). But *Swierkiewicz* does not stand for that proposition; rather, it

holds only that there is no "*heightened* pleading standard for employment discrimination suits"

above and beyond what Rule 8 requires. *Id.* at 514-15 (emphasis added). Even under Rule 8,

"threadbare recitals of a cause of action's elements, supported by mere conclusory statements,"

are not enough to state a claim. *Iqbal*, 556 U.S. at 663.

Here, FASORP does not offer concrete, non-conclusory allegations showing its members

are "able and ready" to apply, and the facts it does allege suggest no discrimination is occurring.

As Defendants observed, the charts in the FAC show that white faculty applicants received a

majority of all offers and at least half of all offers each year, and white interviewees had a higher

offer rate than non-white interviewees. Dkt. 33 at 24. FASORP does not respond to this point,

which fatally undermines its claim that Northwestern is discriminating against white applicants in

faculty hiring. Instead, FASORP points to a bulleted list of allegations, Dkt. 42 at 19-20, that have nothing to do with FASORP's members and do not state a plausible claim.

### 2. FASORP Alleges Insufficient Facts To Support A Title VI Claim As To Law Review Editor, Member, Or Article Selection.

As to Law Review member and editor selection, FASORP relies primarily on its allegation that the Law Review uses "personal statements" to "award discriminatory preferences." Dkt. 42 at 21. But the New York district court recently dismissed a virtually identical suit brought by FASORP's counsel, holding that the bare assertion that NYU Law Review "'is using … statements of interest and résumés to give preferential treatment to [select minority groups]' and 'intends to continue' doing so" is "conclusory" and "undermined by the plain text of [the Law Review's] facially neutral policy." *NYU III*, 2024 WL 2847368, at *6.

The same is true here. FASORP's conclusory assertion of discrimination is not supported by concrete factual allegations, and in fact is undermined by the Law Review's nondiscrimination policy, which FASORP claims, without factual support, "is a bald-faced lie." Dkt. 25 ¶ 80. And while FASORP "repeatedly remark[s] [it] simply need[s] to plead 'plaintiffs have suffered discrimination,'" the law holds that "'parroting the elements of a claim' does not meet the *Iqbal* standard." *Vang v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5761002, at *10 (C.D. Ill. 2021) (citation omitted); *see Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) ("At a high level of generality, all agree [the plaintiff] alleges she lost her job because of her age, race, and national origin. But Rule 8 requires more.").

The only remotely concrete fact alleged by FASORP is that the Law Review rejected "a white male student" with a high GPA for membership, while accepting "female and minority students with much lower first-year grades." Dkt. 25 ¶ 83. But that student is not a FASORP member. And FASORP admits that students are selected on the basis not only of grades, but also

15

performance on a writing competition. *Id.* ¶¶ 80-81. As Defendants noted, FASORP does not allege that this student performed better than, or even equal to, his female and minority colleagues on that writing competition. Dkt. 33 at 17. FASORP offers no response, other than arguing that this single anecdote need not suffice to "*prove* race discrimination," but instead need only render its discrimination claims "*plausib[le]*." Dkt. 42 at 21. But without any allegation that the white student was better qualified than the minority students who were accepted, FASORP has not plausibly alleged that he was rejected based on race, rendering the anecdote irrelevant.

As for article selection, FASORP again falls back on generic assertions that the Law Review "gives discriminatory preferences to articles written by" certain groups. Dkt. 42 at 22. But such conclusory assertions do not suffice to state a claim. *See supra* at 11, 14. FASORP mainly relies on a single allegation that the editors of Volume 118 "decided" to "publish an entire issue that would consist only of articles written by black women." Dkt. 25 ¶ 84. But FASORP does not allege that Volume 118 rejected *any* article by *any* non-Black author that was of higher quality than the articles it did accept. Rather, FASORP finds it hard to believe that a single issue of the Law Review could be filled with quality articles written by qualified Black female authors. That unstated yet unmistakable assumption does not give rise to a plausible inference of discrimination, let alone support FASORP's assertion that its members face a non-speculative risk of harm in the future. *See NYU III*, 2024 WL 2847368, at *6 (dismissing Title VI claim where allegations were too conclusory to give rise to risk of discrimination).

## B. FASORP Fails To State A Section 1981 Claim.

For reasons similar to those discussed in connection with the Title VI claim, FASORP fails to state a Section 1981 claim.

### 1. FASORP Fails To Plead But-For Causation.

FASORP does not rebut Defendants' argument that the FAC fails to adequately plead but-for causation, instead arguing that it need not do so because it is seeking "forward-looking relief," not damages. Dkt. 42 at 26-28. The law establishes no such distinction. Rather, it holds that a Section 1981 plaintiff must "plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see Sanchez v. Tootsie Roll Indus., LLC*, 2021 WL 4936240, at *5 (N.D. Ill. May 18, 2021) (dismissing claim for failure to plead but-for causation). Thus, courts regularly dismiss Section 1981 claims for "fail[ure] to allege but-for causation" even where the plaintiffs seek only a forward-looking "permanent injunction enjoining [the defendant] from 'further violations of law.'" *Vang*, 2021 WL 5761002, at *3, *9 (noting that complaint did not seek "monetary damages"); *see also Farm Lab. Org. Comm. v. Stein*, 56 F.4th 339, 344, 352 n.3 (4th Cir. 2022) (affirming summary judgment in suit seeking only injunctive relief where plaintiff "d[id] not satisfy § 1981's but-for causation requirement").

FASORP does not identify any case law supporting its conjured distinction between forward-looking and backward-looking relief for purposes of requiring but-for causation under Section 1981. FASORP points to language in *Comcast* stating that plaintiffs must plead that their race was a but-for cause of their "loss of a legally protected right," Dkt. 42 at 26 (citation omitted), but *Comcast* nowhere limits its but-for causation rule to claims seeking retrospective relief. To the contrary, *Comcast* contrasted Section 1981's but-for causation test with Title VII's test, which *does* draw a distinction on the remedies a plaintiff seeks. Under Title VII, a "lack of but-for causation [is] an affirmative defense" to the backward-looking remedies of "damages and reinstatement," but a plaintiff can still obtain forward-looking declaratory relief and injunctive relief (other than reinstatement) by pleading that race was a "motivating factor" in the defendant's

decision. 589 U.S. at 337; *see* 42 U.S.C. § 2000e-5(g)(2)(B). As the Supreme Court made clear, that distinction between forward-looking and backward-looking relief has no analogue under Section 1981. *See Comcast*, 589 U.S. at 337 ("While this is all well and good for understanding Title VII, it's hard to see what any of it might tell us about § 1981.").

FASORP's suggestion that it "need only satisfy the four-part test [from *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)] for a permanent injunction" fares no better. Dkt. 42 at 27. The first part of that test is whether the plaintiff "has in fact succeeded on the merits." *Plummer v. Am. Inst. of CPAs*, 97 F.3d 220, 229 (7th Cir. 1996); *see Vaughn v. Walthall*, 968 F.3d 814, 824-25 (7th Cir. 2020) (vacating injunction because "the district court erred by ruling on the merits in favor of [the plaintiff]"). And to succeed on the merits of its Section 1981 claim, FASORP must "plead and ultimately prove" but-for causation. *Comcast*, 589 U.S. at 341.

Nor can FASORP avoid pleading but-for causation by seeking declaratory relief. FASORP recognizes that a plaintiff seeking declaratory relief must show the relief would "redress[] an injury in fact." Dkt. 42 at 27. But "[a]n injury in fact is 'an invasion of a legally protected interest,'" which is defined here by the scope of Section 1981, including its but-for causation requirement. *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021).

For all those reasons, FASORP must plead but-for causation. Because it has not, its Section 1981 claims should be dismissed.

## 2. FASORP Fails To Adequately Allege A Section 1981 Discrimination Claim Regarding Faculty Hiring.

FASORP argues that while it may ultimately be required to prove that its members took concrete steps to apply, or are qualified, for lateral faculty positions, it need not plead those facts. Dkt. 42 at 25-26. That is wrong. Although a plaintiff need not "plead a prima facie case of employment discrimination" or "allege facts aligning with her claim's every element," she still

must "allege enough facts to allow for a plausible inference that the adverse action suffered was connected to her protected characteristics." *Kaminski*, 23 F.4th at 777 (citing *Swierkiewicz*, 534 U.S. 506). To allege a plausible inference of *past* discrimination, a plaintiff must at least plead that "she applied and was qualified for [an open position], and that the job went to someone else." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *see also Wilson v. Bd. of Trs. of Cmty. Coll. Dist. 508*, 2021 WL 1676601, at *3 (N.D. Ill. Apr. 28, 2021) ("To survive a motion to dismiss, an employment discrimination plaintiff need not plead a prima facie case of discrimination. But the plaintiff must plead that he applied for a position, was qualified for it, and that the job went to someone else because of the plaintiff's protected characteristic.") (quotation marks omitted). For allegations of *future* discrimination, the same basic requirements hold, except that a plaintiff must plead she was "ready and able" to apply, meaning she took concrete steps to show an interest in applying and meets the basic qualifications. *Carney*, 592 U.S. at 59-66.

FASORP does not meet these requirements because it does not allege that its members actually applied for lateral positions in the past, have any concrete plans to apply for them in the future, or would be qualified for them if they were to apply. *See supra* at 4-8. Numerous courts have dismissed discrimination claims for precisely those pleading failures. *See Payne v. Abbott Lab'ys*, 999 F. Supp. 1145, 1152 (N.D. Ill. 1998) (dismissing complaint for failure to allege "specific instances or facts regarding when plaintiffs applied for promotions"); *Ivens v. GK N. Childcare Corp.*, 2022 WL 602913, at *2 (N.D. Ind. Mar. 1, 2022) (same); *Wilson*, 2021 WL 1676601, at *3-4 (dismissing failure-to-promote claim where plaintiff alleged that he "perform[ed] his current position well" but not "that he was qualified to be promoted"); *McKay v. City of Chi.*, 2024 WL 3251349, at *8 (N.D. Ill. July 1, 2024) (same where plaintiff "f[ell] short in alleging that she was qualified for the position she wanted").

Nor, of course, does FASORP plead facts sufficient to plausibly allege but-for causation. Indeed, FASORP's own discussion of Northwestern's law faculty hiring statistics (including its admission that Northwestern interviews and hires many white men—at greater rates than other groups) undermines any argument that its members face a risk of racial discrimination.

### 3. FASORP Alleges Insufficient Facts To Support A Section 1981 Claim Regarding Law Review Member, Editor, Or Article Selection.

FASORP asserts that it has "provide[d] all the factual detail needed" to state its Section 1981 claims. Dkt. 42 at 21. But, as explained above, FASORP's allegations are conclusory and unsupported by specific facts that, if true, could establish discrimination, including as to but-for causation. *See supra* at 16-18; *Moss v. Cont'l Tire The Ams., LLC*, 2024 WL 5088370, at *3 (S.D. Ill. Dec. 12, 2024) (holding that plaintiff must plead "more than a solitary utterance of a racial epithet by an unnamed coworker (was the individual a peer? A manager?) and general allegations of sexual harassment which lack details on the specifics of the conduct at issue" to state a discrimination claim). These claims should thus be dismissed.

Finally, as for member and editor selection specifically, FASORP's Section 1981 claim should be dismissed for the independent reason that it does not allege a contract between the students and the Law Review. Dkt. 33 at 24-25. FASORP insists it need not do so because its faculty members have contracts to publish their articles, and that is enough. Dkt. 42 at 28. While that contractual relationship could conceivably give FASORP's members the ability to challenge the Law Review's article selection, it does not create a contractual relationship sufficient to meet the statutory requirement for challenging the process of selecting members and editors.

### CONCLUSION

This Court should dismiss this lawsuit without leave to amend (if dismissed for lack of standing) or with prejudice (if dismissed on the merits).

Dated: January 28, 2025                          Respectfully submitted,

                                                 By: */s/ Danielle Conley*

                                                 Danielle Conley (*admitted pro hac vice*)
                                                 Jude Volek (*admitted pro hac vice*)
                                                 Christine C. Smith (*admitted pro hac vice*)
                                                 Jasmine D. Benjamin (*admitted pro hac vice*)
                                                 LATHAM & WATKINS LLP
                                                 555 Eleventh Street, NW, Suite 1000
                                                 Washington, D.C. 20004-1304
                                                 Phone: (202) 637-2200
                                                 Facsimile: (202) 637-2201
                                                 danielle.conley@lw.com
                                                 jude.volek@lw.com
                                                 christine.smith@lw.com
                                                 jasmine.benjamin@lw.com

                                                 Sean Berkowitz (ARDC No. 6209701)
                                                 LATHAM & WATKINS LLP
                                                 330 North Wabash Avenue, Suite 2800
                                                 Chicago, Illinois 60611-3695
                                                 Telephone: (312) 876-7700
                                                 Facsimile: (312) 993-9767
                                                 sean.berkowitz@lw.com

                                                 *Counsel for Defendants Northwestern*
                                                 *University, Hari Osofsky, Sarah Lawsky,*
                                                 *Janice Nadler, Daniel Rodriguez, Dheven*
                                                 *Unni, and Jazmyne Denman*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2025, I filed the foregoing with the Clerk of Court by using the CM/ECF system and sent via electronic transmission to all parties of record.


/s/ *Danielle Conley*
Danielle Conley (*admitted pro hac vice*)